UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
04/05/2011

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **Seahawk Drilling, Inc.,** *et al.*, | § | Case No.: 11-20089-RSS |
| | § | |
| **Debtors.** | § | Jointly Administered |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTORS' EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS TO HERCULES OFFSHORE, INC.; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) GRANTING RELATED RELIEF**
(Related to Docket No. 19)

On April 5, 2011, the Court held a final hearing (the "Final Sale Hearing") to consider the *Emergency Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure, for an Order (i) Scheduling an Expedited Hearing to Approve the Sale of Substantially All of the Debtors' Assets; (ii) Setting Deadlines for Filing Objections to (1) the Proposed Sale and (2) the Proposed Assumption and Assignment of Executory Contracts and the Payment of Cure Claims in Connection Therewith; and (iii) Approving the Form and Manner of Notice Thereof* [Dkt. No. 19] (the "Sale Motion") filed by Seahawk Drilling, Inc. ("Seahawk") and its affiliated debtors (collectively, the "Debtors")¹. This Court, having considered the evidence presented, the objections to the Sale Motion and replies thereto, and other pleadings related to the Sale Motion, and having heard and considered all arguments, evidence, and testimony at the Final Sale Hearing, and on the basis of the evidence presented, the Court makes the following findings of

---

¹ The debtor-subsidiaries of Seahawk are: Seahawk Drilling LLC, Energy Supply International LLC, Seahawk Global Holdings LLC, Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk Offshore Management LLC and Seahawk Drilling USA LLC. The subsidiaries of Seahawk that are incorporated in Mexico or have branches in Mexico are not a part of these chapter 11 cases.

fact and conclusions of law (the "Findings") in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure:[2]

1. **Jurisdiction and Venue.** This Court has jurisdiction over these chapter 11 cases and the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408.

2. **Statutory Predicates.** The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 2004, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of the United States Bankruptcy Court for the Southern District of Texas.

3. **Sale Motion Notice.** The Debtors, as Sellers, and Hercules Offshore, Inc. ("Hercules") and SD Drilling LLC (Hercules and SD Drilling LLC, the "Purchasers"), as Purchasers, entered into that certain Asset Purchase Agreement dated February 11, 2011 (the "APA"). As evidenced by the *Certificates of Service* [Docket Nos. 29, 186, 359, 374, 408, and 409], and the *Notices of Final Hearing* [Docket Nos. 60 and 148]; in addition, (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the APA and the Contemplated Transactions[3] has been provided to all creditors and interest holders entitled to notice under the notice procedures in these chapter 11 cases and other parties in interest, including, in particular, the state and federal governmental units and all creditors having a secured claim, lien or interest in the Purchased Assets which are subject to the Transfer Order; (ii) no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the

---

[2] Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

circumstances of these chapter 11 cases; and (iv) no other or further notice of the Sale Motion, the Final Sale Hearing or the Contemplated Transactions is or shall be required. The disclosures made by the Debtors concerning the Sale Motion, the APA, the Contemplated Transactions, and the Final Sale Hearing, and the notice thereof, were proper, timely, adequate, and sufficient in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure. A reasonable opportunity to object or to be heard regarding the relief requested in the Sale Motion has been afforded to all creditors, interest holders, and parties-in-interest.

4. **Cure Payment Notice**. As evidenced by the above-referenced *Certificates of Service* and *Notices of Final Hearing* referenced above, proper and timely notice was given to all counterparties of the potential assumption and assignment of their Assigned Contracts, their rights therein and the maximum amount that the Debtors must pay to cure all defaults (monetary and non-monetary) under the Assigned Contracts. The scope and manner of notice and service with respect to the Assigned Contracts were proper, timely, adequate, and sufficient in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure.

5. **Marketing Efforts**. Prior to the Petition Date, the Debtors conducted a full, fair and complete marketing process with respect to the Purchased Assets. As demonstrated by the evidence in support of the Sale Motion, prior to the Petition Date, the Debtors thoroughly marketed the Purchased Assets. Further marketing efforts would not likely result in any offers superior to the APA. The prepetition marketing efforts undertaken by the Debtors, including the methodology for selecting the Purchasers, were conducted in a manner that was reasonably

calculated to achieve the highest and best offer for the Purchased Assets. The APA embodies the highest and best offer received by the Debtors for the Purchased Assets.

6. **Arm's-Length Sale**. The APA was negotiated, proposed and entered into by the Debtors and the Purchasers without collusion, in good faith, and was the result of arm's length bargaining positions as between the Debtors and the Purchasers, both represented by independent counsel and advisors. Neither the Purchasers nor any of their affiliates or their respective representatives is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and no common identity of directors or controlling shareholders exists between the Purchasers and any of the Debtors. Neither the Debtors, the Purchasers, nor any of their respective representatives have engaged in any conduct that would cause or permit the Contemplated Transactions to be avoided under section 363(n) of the Bankruptcy Code. The Aggregate Consideration constitutes fair value for the Purchased Assets. The terms and conditions of the APA and the Contemplated Transactions (including without limitation the Aggregate Consideration) are fair and reasonable and shall not be avoided nor are subject to avoidance under section 363(n) of the Bankruptcy Code or otherwise.

7. **Good Faith Purchaser**. The Purchasers are good faith purchasers of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby. The Purchasers and their representatives have acted and proceeded in good faith and without collusion and will rely on entry of these Findings and the Transfer Order and this good faith determination in proceeding to Close the Contemplated Transactions.

8. **Authority; Consents**. The Debtors (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) have all of the

4

corporate power and authority necessary to consummate the Contemplated Transactions, and (iii) have taken, or will take, all corporate action necessary to authorize and approve the APA and the consummation of the Contemplated Transactions. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Contemplated Transactions.

9. **Consideration**. The Aggregate Consideration for the Purchased Assets (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets after a thorough marketing process, and (iii) constitutes reasonably equivalent value, fair value, and fair consideration for the Purchased Assets under the Bankruptcy Code, applicable federal law and applicable state law, including, but not limited to the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and under all applicable laws of the United States, any state, territory, possession, or the District of Columbia.

10. **No Fraudulent Transfer**. The APA was not entered into for the purpose of hindering, delaying or defrauding creditors of any of the Debtors. The Contemplated Transactions do not constitute a fraudulent transfer or fraudulent conveyance under the Bankruptcy Code, or the applicable laws of the United States, any State, territory, possession, or the District of Columbia. The Purchasers acted in complete good faith, and without any intention to enter into any transaction that would be fraudulent as to the Debtors and any creditors or parties in interest, and will pay adequate consideration and reasonably equivalent value.

11. **Sale Free and Clear**. As of the filing of the Sale Motion and as of this date, the Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title or interest therein. The sale of the Purchased Assets to the Purchasers

5

pursuant to the APA will be a legal, valid, and effective transfer of the Purchased Assets. Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to sell the Purchased Assets free and clear of all Claims (other than Assumed Liabilities), encumbrances (other than Permitted Encumbrances), liens[4], and Interests, and such sale shall vest the Purchasers with all of the Debtors' rights, title, and interest in and to the Purchased Assets. Those (i) holders of liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability, and (ii) non-Debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Contemplated Transactions or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. The objections of those (i) holders of liens, claims, and encumbrances, and (ii) non-Debtor parties to the Assigned Contracts who did object are overruled. To the extent any of the persons who objected has a valid and enforceable lien or encumbrance, such person is adequately protected by such lien or encumbrance, if any, attaching to the proceeds of the Contemplated Transactions (the "<u>Proceeds</u>") ultimately attributable to the property against or in which they assert a lien or encumbrance (with any such holder's Claim, encumbrance, lien or Interest attaching to the proceeds of the sale with the same nature, validity, and priority that such Claim, encumbrance, lien, or Interest encumbered the Purchased Assets prior to the proposed sale). One or more of the subsections of section 363(f) of the Bankruptcy Code has been satisfied with respect to each such interest, which is adequately protected herein. With respect to the DIP Lenders, the cash proceeds shall be used to indefeasibly pay all DIP Obligations in full in cash in immediately available funds and the commitments under the DIP Credit Agreement shall terminate in accordance with such DIP Credit Agreement on the Closing Date.

---

[4] As used herein, the term "liens" shall include, without limitation, "Liens" as defined in the APA.

12. **Assumption and Assignment of Assigned Contracts**. The assumption and assignment of the Assigned Contracts pursuant to these Findings and the terms of the Transfer Order are integral to the APA and are in the best interests of the Debtors, their estates, creditors, and interest holders, and represent a reasonable exercise of sound and prudent business judgment by the Debtors. The payment by the Debtors of the Cure Amounts set forth in **Exhibit 1** to the Final Hearing Notice [Dkt. No. 60] (the "Cure Exhibit") with respect to any Assigned Contracts actually assigned by the Debtors to the Purchasers is in full and final satisfaction of all obligations and is full compensation to the counterparties for any pecuniary losses under such Assigned Contracts pursuant to section 365(b)(1) of the Bankruptcy Code. Except as identified in the Cure Exhibit, the Debtors shall have no further liability or obligation under each Assigned Contracts actually assigned to the Purchasers and the Purchasers shall have no obligation to make any payment or provide any performance to cure any defaults or breaches arising on or before the Closing for the Assigned Contracts. The Purchasers have demonstrated adequate assurance of future performance of the Assigned Contracts within the meaning of section 365(b)(2) of the Bankruptcy Code.

13. **No Successor Liability**. The Purchasers would not have entered into the APA and would not consummate the Contemplated Transactions if either (i) the sale and the assignment of the Assigned Contracts were not free and clear of all Interests, liens, Claims and encumbrances of any kind or nature whatsoever, except for the Assumed Liabilities, or (ii) the Purchasers would, or in the future could, be liable for any such Interests, liens, Claims and encumbrances, including, but not limited to, any Claims against the Debtors based upon successor, transferee or vicarious liability or otherwise. The transfer of the Purchased Assets to the Purchasers under the APA shall not result in the Purchasers, or any of their affiliates,

successors or assigns, having any liability or responsibility (i) for any interest, or any other obligation, of or against the Debtors or their estates, and neither the Purchasers, nor any of their affiliates, successors and assigns, shall, as a result of the Contemplated Transactions or any action taken in connection with the Contemplated Transactions, be deemed to (1) be a successor (or other similarly situated party) to any of the Debtors or (2) have, de facto or otherwise, merged with or into any of the Debtors, or (ii) to the Debtors or to third parties except as is expressly set forth in the APA.  Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the Purchased Assets to the Purchasers does not and will not subject the Purchasers, or any of their affiliates, successors or assigns, or any of their respective properties (including the Purchased Assets) to any liability for interests against the Debtors or interests of the Debtors in such Purchased Assets by reason of such transfer under the laws of the United States or any State, territory or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk transfer laws, successor liability or similar theories.  Except as expressly provided for in the APA or the Transfer Order, the Purchasers are not acquiring or assuming any liability, warranty or other obligation of the Debtors.  For the avoidance of doubt, any liabilities as may be included at law under section 363 of the Bankruptcy Code provide the basis for the defined term "Interests" for all purposes herein.

14.     **Sale in the Best Interests of the Debtors' Estates and Creditors**.  Good and sufficient business reasons for approval of the APA and the Contemplated Transactions have been articulated, and the relief requested in the Sale Motion and granted herein is in the best interests of the Debtors, their estates, creditors and interest holders.

15. **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Contemplated Transactions outside of the ordinary course of business under sections 363(b) and 363(f) of the Bankruptcy Code in that, among other things, the immediate approval by this Court of the sale to the Purchasers is necessary and appropriate to maximize the value of the Purchased Assets, which will permit the Debtors to distribute cash and Hercules Shares generated from the Contemplated Transactions to creditors and interest holders pursuant to a Plan of Reorganization or pursuant to further orders of this Court. Entry of an order approving the APA and all of the provisions thereof is a necessary condition precedent to the Purchasers' consummation of the Contemplated Transactions set forth in the APA. Given all the circumstances of these chapter 11 cases and the adequacy and fair value of the Aggregate Consideration under the APA, the Contemplated Transactions constitute a reasonable and sound exercise of the Debtors' business judgment and should be approved.

16. **Compelling Circumstances for Immediate Sale**. The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA is reasonable and appropriate under the circumstances and does not impermissibly dictate the terms of any future plan of reorganization or liquidation that may be filed by the Debtors, individually or collectively, and is not a *sub rosa* plan. The Debtors have demonstrated sufficient and sound business justifications and compelling circumstances for the Contemplated Transactions outside of a plan of reorganization and the immediate consummation of the Contemplated Transactions to the Purchasers on the terms of the APA is necessary and appropriate to maximize the value of the Purchased Assets and the transfer of the Assumed Liabilities for the benefit of the Debtors, their estates, creditors and interest holders. Time is of the essence. The Contemplated Transactions

9

must be consummated within the time frame set forth in the APA to maximize the value of the Purchased Assets and to maintain and preserve the viability of the Purchased Assets. The Debtors will suffer immediate and irreparable harm if the relief requested in the Sale Motion is not granted on an expedited basis consistent with the provisions set forth in the Transfer Order and the APA.

17. **Distribution of Hercules Shares**. The APA contemplates the Debtors shall distribute the Hercules Shares in accordance with the APA and pursuant to a confirmed Plan of Reorganization in exchange for Claims and Interests in the Debtors. The consummation of the sale pursuant to the APA, these Findings and the Transfer Order are necessary preconditions to confirmation of a Plan of Reorganization. Accordingly, solely for purposes of sections 1125(e) and 1145(a) of the Bankruptcy Code, the Purchasers shall be deemed "successors" to the Debtors under a Plan of Reorganization.

18. **Privacy Policy**. The Debtors have never disclosed a policy to an individual prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Debtors, the Debtors have never had such a policy, and no such policy was in effect as of the Petition Date of the Debtors' chapter 11 cases. Thus, there is no requirement that the sale of the Purchased Assets contemplated hereunder be consistent with any privacy policy or that a consumer privacy ombudsman be appointed in connection with same under section 363(b)(1) of the Bankruptcy Code.

19. **Final Order**. The Transfer Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the provisions of Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the stay pursuant to such rules is hereby waived and the Transfer Order shall be effective and enforceable immediately upon entry. To the extent necessary under

Rule 9014 of the Federal Rules of Bankruptcy Procedure and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that cause exists not to delay the entry or implementation of the Transfer Order.

Signed this 5th day of April, 2011.

RICHARD SCHMIDT
UNITED STATES BANKRUPTCY JUDGE