

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
04/05/2011

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Seahawk Drilling, Inc., *et al.*, | § | Case No.: 11-20089-RSS |
| | § | |
| Debtors. | § | Jointly Administered |

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS TO HERCULES OFFSHORE, INC.; (II) APPROVING THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND (III) GRANTING RELATED RELIEF
(Related to Docket No. 19)

THIS MATTER came before the Court for hearing on April 5, 2011, upon the above-captioned Debtors'[1] *Emergency Motion, Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure, For an Order (i) Scheduling an Expedited Hearing to Approve the Sale of Substantially All of the Debtors' Assets; (ii) Setting Deadlines For Filing Objections to (1) the Proposed Sale and (2) the Proposed Assumption and Assignment of Executory Contracts and the Payment of Cure Claims in Connection Therewith; and (iii) Approving the Form and Manner of Notice Thereof* [Dkt. No. 19] (the "Sale Motion").[2]

The Debtors having determined that the highest and best offer for the purchase and sale of their assets was made by Hercules Offshore, Inc.,[3] with such sale to be made pursuant to an Asset Purchase Agreement (the "APA") by and among Seahawk Drilling, Inc., Seahawk Global Holdings LLC, Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk

---

[1] The Debtors in these cases are: Seahawk Drilling, Inc., Seahawk Drilling LLC, Energy Supply International LLC, Seahawk Global Holdings LLC, Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk Offshore Management LLC and Seahawk Drilling USA LLC.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Sale Motion.

[3] SD Drilling LLC is also a Purchaser under the APA.

1

Drilling LLC, Seahawk Offshore Management LLC, Energy Supply International LLC, and Seahawk Drilling USA, LLC (collectively, "Sellers") and Hercules Offshore, Inc. and SD Drilling LLC (collectively, the "Purchasers"); and the Court having held a Preliminary Hearing on February 14, 2011 and a Final Sale Hearing on April 5, 2011 to consider approval of the sale of the Purchased Assets pursuant to the terms and conditions of the APA; and the Court having considered (i) the Sale Motion, (ii) the APA, (iii) the objections to the Sale Motion (collectively, the "Sale Objections"), (iv) the arguments and statements of counsel, (v) the evidence submitted, proffered or adduced at the Final Sale Hearing, (vi) the record in these bankruptcy cases; and the Court having determined that the Sale Objections, to the extent not resolved or withdrawn by agreement, are overruled on the merits; and that the legal and factual bases set forth in the Sale Motion and at the Final Sale Hearing establish just cause for the relief granted herein; and that the relief requested in the Sale Motion and the sale to the Purchasers in accordance with the APA is in the best interests of the Debtors, their estates, their creditors, holders of equity interests and all other parties in interest; and it appearing that reasonable and adequate notice of the Sale Motion and the Final Sale Hearing have been provided to all persons required to be served in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules and orders of this Court, and that no other or further notice is required under the circumstances; after due deliberation thereon; and the Court having made the Findings of Fact and Conclusions of Law entered contemporaneously with this Order and adopted herein in all respects; and for good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. **Motion is Granted**. The Sale Motion and the relief requested therein are GRANTED and APPROVED, as set forth herein and on the record of the Final Sale Hearing, which is incorporated herein in its entirety.

2. **Objections Overruled**. All objections to the Sale Motion or to the Contemplated Transactions or to the relief granted herein or requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved, if any, are hereby DENIED and OVERRULED on the merits with prejudice.

3. **Approval of APA**. The APA and all of the terms and conditions thereof are hereby approved. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized and directed to sell the Purchased Assets to the Purchasers, to consummate the Contemplated Transactions in accordance with and subject to the terms and conditions of the APA, and to convey title to, and to transfer and assign all right, title and interest in and to the Purchased Assets to the Purchasers in accordance with and subject to the terms and conditions of the APA and this Order.

4. **Necessary Actions**. The Debtors, their officers, employees and agents are authorized and directed, without further order of the Court, to take any and all actions necessary and appropriate to execute and deliver, perform under, consummate, implement, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Contemplated Transactions, the APA and this Order, and to take all further actions as may be reasonably requested by the Purchasers for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchasers the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, or as may be necessary to effectuate the terms of this Order.

5. **Valid Transfer**. The Purchased Assets shall be transferred to the Purchasers in accordance with the APA. As of the Closing Date, the Contemplated Transactions under the APA effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to the Purchasers and will vest the Purchasers with all right, title and interest in and to the Purchased Assets. As of the Closing Date, the APA and the transactions and instruments contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Purchasers and Sellers and any trustee appointed in these bankruptcy cases or any successor bankruptcy case.

6. **Free and Clear**. Except as otherwise provided in the APA, at the Closing and pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, title to the Purchased Assets shall be transferred to the Purchasers free and clear of all:

- liens (including, without limitation, mechanics' liens, materialmens' and other consensual and non-consensual liens and statutory rights), mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, servitudes;

- interests, obligations, liabilities, demands, guaranties, options, restrictions, contractual or other commitments;

- rights, including, without limitation, rights of first refusal, rights of offset, contract rights, recoupment rights, and rights of recovery;

- decrees of any court or foreign or domestic governmental entity (to the fullest extent permitted by law);

- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation, consent of any person or entity to assign or transfer any of the Purchased Assets;

- debts arising in any way in connection with any agreements, acts or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

4

- claims (as that term is defined in the Bankruptcy Code), including but not limited to claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (including claims that may be secured or entitled to priority under the Bankruptcy Code), tax claims, reclamation claims, and pending litigation claims; and

- matters of any kind and nature, in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise.

Collectively, the foregoing shall be referred to herein as the "Interests or Claims". All such Interests or Claims shall attach to the proceeds of the sale with the same priority, validity, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

7. **Injunction**. On and after the Closing Date, no holder of any Interest or Claim against the Debtors or in the Purchased Assets shall interfere with the Purchasers' title to or use and enjoyment of the Purchased Assets based on or related to such Interest or Claim, or any actions that the Debtors may take in their chapter 11 cases. All persons and entities, (including, without limitation, all holders of Interests, Claims or other rights, debt security holders, equity security holders, governmental tax and regulatory authorities, lenders and trade creditors, litigation claimants and other creditors) holding Interests or Claims arising in any way in connection with any acts, or failure to act, of the Debtors or the Debtors' predecessors or affiliates, Claims, obligations, demands or guarantees, of any kind and nature against or in the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in

connection with or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchasers, are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such persons' or entities' Interest or Claims against the Purchasers, any of their affiliates, their successors or assigns, or their property, including the Purchased Assets.

8. **Release of Interests, Claims, and Liens**. This Order is and shall be effective as a determination that all Interests or Claims shall be, and hereby are, released with respect to the Debtors' interest in the Purchased Assets, as of the Closing Date. If any person or entity that has filed liens, financing statements, mortgages, mechanics' liens, lis pendens or other documents or agreements evidencing Interests or Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, unconditional releases of all Interests or Claims that the person or entity has with respect to the Purchased Assets, or otherwise (except as provided in this Order with respect to the proceeds of the sale), the Purchasers are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf and in the name of the person or entity with respect to the Purchased Assets or the Purchasers may file, register or record a certified copy of this Order in any place where such instruments would or could be filed, and such filing shall constitute conclusive evidence of the release of Interests or Claims on the Purchased Assets as of the Closing Date.

9. **Application of Sale Proceeds**. Any and all asserted Interests or Claims in Purchased Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on the Debtors' behalf) in the order of priority, and with the same validity, force and effect which they now have

against such Purchased Assets, subject to any rights, claims and defenses the Debtors, their estates or any trustee for any Debtor, and any competing creditor, as applicable, may possess with respect thereto. In accordance with the debtor-in-possession financing previously approved by this Court, the cash proceeds of the sale shall be used to indefeasibly pay all outstanding DIP Obligations in full in cash in immediately available funds at and concurrent with the Closing, and the commitments under the DIP Credit Agreement shall likewise terminate in accordance with such DIP Credit Agreement on the Closing Date. Notwithstanding anything herein to the contrary, in consideration of and only upon such full satisfaction of the DIP Obligations in cash, the liens and encumbrances upon the Purchased Assets to secure the DIP Obligations shall be cancelled, released and terminated.

10. **Payment of Certain Assumed Liabilities**. Pursuant to section 2.7 of the APA, Purchasers are responsible for making the payments of Assumed Liabilities. Since such payments will be made by the Purchasers and not from the Debtors' estates, such payments are (i) authorized under the Bankruptcy Code, including section 549 thereof, (ii) free and clear of any liens and encumbrances of the DIP Lenders and the Debtors' estates, and (iii) not be subject to avoidance, recovery, disgorgement or reduction as a result of the ultimate treatment and/ or payment of other claims or liabilities in the case, including the claims of the DIP Lender, in any chapter 11 or 7 case of the Debtors. Furthermore, the accounts payable to be paid by Purchasers pursuant to section 2.7(a) of the APA will be paid contemporaneously with the Closing to the extent that ownership of the claim is not disputed or, to the extent that ownership of such claims are disputed as of the Closing, immediately following resolution, settlement or adjudication of such dispute(s) by Final Order.

11. **Ad Valorem Tax Liens**. Pursuant to section 8.3 of the APA, the Debtors shall pay all pre-Closing 2011 ad valorem taxes due to Harris County, Dallas County, Fort Bend County, and Jefferson County (collectively, the "**Texas Taxing Entities**") and Purchasers shall pay all post-Closing 2011 ad valorem taxes due to the Texas Taxing Entities. The Texas Taxing Entities' statutory lien for 2011 ad valorem taxes shall attach to (i) the proceeds of the sale to secure payment of the Debtors' obligations to pay all pre-Closing taxes, and (ii) the Purchased Assets to secure payment of the Purchasers' obligations to pay all post-Closing taxes, pursuant to section 8.3 of the APA.

12. **Surrender of Possession**. All entities that currently or at Closing may be in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets either to (a) the Debtors before the Closing, or (b) to the Purchasers on or immediately after the Closing Date.

13. **Prohibition of Actions Against Purchasers**. Except for the Assumed Liabilities and all other obligations contained in the APA or otherwise expressly provided for in this Order, the Purchasers shall not have any liability or other obligation of the Debtors arising under or relating to the Purchased Assets and shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and shall have no successor, transferee or vicarious liabilities of any kind, character or nature whatsoever.

14. **Assumption and Assignment of Contracts**. The assumption and assignment of the Assigned Contracts is hereby approved and the Debtors are hereby authorized at Closing, in accordance with sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, to: (A) cure and provide compensation of any default existing prior to the Closing Date under any of the Assigned Contracts selected by Purchasers, within the meaning of sections 365(b)(1)(A) and

365(b)(1)(B) of the Bankruptcy Code; (B) assume the Assigned Contracts selected by Purchasers; (C) sell, assign and transfer to the Purchasers, each of the Assigned Contracts selected by Purchasers in each case free and clear of all Liens, Claims and Interests; and, (D) execute and deliver to the Purchasers, such assignment documents as may be necessary to sell, assign and transfer the Assigned Contracts selected by Purchasers. The Cure Payments of the Assigned Contracts selected by Purchasers shall be allowed and paid by the Debtors as an administrative claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code with priority over any and all other administrative expenses in the chapter 11 cases of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code. The Purchasers shall have no responsibility whatsoever with respect to the Cure Payments. With respect to the Assigned Contracts selected by Purchasers: (i) each Assigned Contract is an executory contract of the Debtors under section 365 of the Bankruptcy Code; (ii) the Assigned Contracts shall be transferred and assigned to, and following the Closing of the sale remain in full force and effect for the benefit of, the Purchasers in accordance with their respective terms; (iii) the assignment of the Assigned Contracts described in clause (ii) shall be effective notwithstanding any provision in any Assumed Contract that prohibits, restricts or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, each such provision constituting an unenforceable anti-assignment provision which is void and of no force or effect; (iv) the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchasers (other than the Cure Payments); (v) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchasers of each

Assumed Contract have been satisfied; and (vi) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchasers shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract selected by Purchasers. In addition to the foregoing, the Debtors shall assign and the Purchasers may assume all confidentiality agreements the Debtors or their representatives may have entered into with any interested parties related to the Purchased Assets. Thereafter, the Purchasers may enforce any such assigned confidentiality agreements pursuant to the applicable provisions of those agreements and this Order.

15.   **Ipso facto Clauses Ineffective**. Upon the Debtors' assignment of the Assigned Contracts to the Purchaser under the provisions of this Order and any additional order contemplated by the APA, no default shall exist under any of the Assigned Contracts, and no counterparty to any Assigned Contract shall be permitted to declare a default by the Purchaser under such Assigned Contract or otherwise take action against the Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract.

16.   **Fair Consideration**. The Aggregate Consideration provided by Purchasers in exchange for the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia. The Aggregate Consideration provided by Purchasers for the Purchased Assets under the APA is fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

17.   **Good Faith**. The Contemplated Transactions under the APA are being undertaken by the Purchasers without collusion and in good faith, as that term is used in section

363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization and approval provided herein to consummate the APA shall not affect the validity of the Contemplated Transactions, unless such authorization is duly stayed pending such appeal prior to the Closing Date. The Purchasers are good faith purchasers of the Purchased Assets, and are entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

18. **Issuance of Exempt Securities**. The Debtors shall distribute the Hercules Shares in accordance with the APA and pursuant to a confirmed Plan of Reorganization in exchange for Claims and Interests in the Debtors. The Hercules Shares transferred pursuant to the APA and the confirmed Plan of Reorganization shall be exempt from registration under section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security pursuant to section 1145(a) of the Bankruptcy Code. For purposes of section 1145(a) of the Bankruptcy Code, the Purchasers shall be deemed successors to the Debtors under the Plan of Reorganization. Except as expressly stated herein, with respect to section 1145(a) of the Bankruptcy Code, the Purchasers shall not be deemed to (i) be the successor or alter ego of the Debtors under doctrines of successor or transferee liability, alter ego or otherwise, (ii) have, de facto or otherwise, merged with or into the Debtors, or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprises of the Debtors.

19. **Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, all filing or recording officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, all deeds, bills of sale, mortgages, leasehold mortgages, deeds of trust, releases of the same, leasehold deeds of trust, memoranda of lease, notices of lease, assignments, leasehold assignment, security

agreements, financing statements, negative pledges and other instruments of absolute or collateral transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by federal, state, or local law.

20. **Release by Purchasers**. Except as expressly stated otherwise in the APA, effective as of the Closing Date, the Purchasers, to the extent permitted by applicable law, are hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Debtors and their respective past, present and future shareholders, members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever at law or in equity, known or unknown, which the Purchasers might now or subsequently have, based on, relating to or arising out of the APA, the transactions contemplated thereby, the ownership, use or operation of the Purchased Assets, or the condition, quality, status or nature of the Purchased Assets including breaches of statutory or implied warranties, nuisance or other tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Purchasers or any of their affiliates.

21. **Release by Debtors**. Except as expressly stated otherwise in the APA, effective as of the Closing Date, the Debtors and their affiliates (on behalf of themselves and their estates), to the extent permitted by applicable law, are hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Purchasers and their affiliates, and their respective past, present and future shareholders, members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities,

interest or causes of action whatsoever at law or in equity, known or unknown, which the Debtors and their affiliates might now or subsequently have, based on, relating to or arising out of the APA, the transactions contemplated thereby, the ownership, use or operation of the Purchased Assets, or the condition, quality, status or nature of the Purchased Assets including breaches of statutory or implied warranties, nuisance or other tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Debtors or any of their affiliates.

22. **Binding on Successors**. This Order and the APA (i) shall be binding in all respects upon (a) the Debtors, their direct and indirect subsidiaries and affiliates, their estates, all creditors (whether known or unknown) of the Debtors, any affected third parties, including, without limitation, all persons asserting a Claim or Interest relating to or in all or any portion of the Purchased Assets, any holders of equity interests in the Debtors, (b) Purchasers or their respective affiliates, successors and assigns, (c) any subsequent trustee or other fiduciary appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 of the Bankruptcy Code, and (ii) shall not be subject to rejection. This Order, the APA and the other agreements contemplated thereby shall inure to the benefit of the Debtors, their estates, their creditors, the Purchasers, and the successors and assigns of each of the foregoing.

23. **Non-material Modifications**. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in accordance with the terms thereof without further order of the Court.

24. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of a chapter 11

case of any of the Debtors to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

25. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the APA or the other agreements contemplated thereby in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and the other agreements contemplated thereby be authorized and approved in their entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

26. **Order Controls**. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these bankruptcy cases, the terms of this Order shall govern. To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

27. **Retention of Jurisdiction**. This Court shall retain jurisdiction to enforce the terms and provisions of this Order and the APA in all respects, including, but not limited to, deciding any dispute arising between the Debtors and the Purchasers and/or their respective successors and assigns, with respect thereto.

28. **No Stay of Order**. Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, or any Local Rules of this Court, this Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the Contemplated Transactions. The Debtors and the Purchasers intend to close as soon as practicable.

SIGNED this 5th day of April, 2011.

RICHARD SCHMIDT
UNITED STATES BANKRUPTCY JUDGE