**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Seahawk Drilling, Inc., *et al.*, | § | Case No.: 11-20089-RSS |
| | § | |
| Debtors. | § | Jointly Administered |

**NOTICE OF (1) ENTRY OF INTERIM ORDER AND (2) OF FINAL HEARING ON THE DEBTORS' EMERGENCY MOTION REQUESTING A FINAL ORDER AUTHORIZING POST-PETITION SECURED WIND DOWN FINANCING FROM HAYMAN CAPITAL MASTER FUND, L.P.**
[RELATES TO DOCKET NOS. 634 AND 653]

**PLEASE TAKE NOTICE** that on April 22, 2011, the above-captioned debtors (the "**Debtors**") filed the Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing Post-Petition, Secured Wind Down Financing from Hayman Capital Master Fund, L.P. and (II) Scheduling a Final Hearing Pursuant to Sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Wind Down DIP Motion**") [Docket No. 634].

**PLEASE TAKE FURTHER NOTICE** that on April 26, 2011, the Bankruptcy Court entered an Interim Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code (I) Authorizing the Debtors to Obtain Postpetition Secured Financing From Hayman Capital Master Fund, L.P., and (II) Granting Liens, Security Interests and Superpriority Claims (the "**Interim Wind Down DIP Order**") [Docket No. 653]. A copy of the Interim Wind Down Dip Order is attached as **Exhibit A** hereto.

**PLEASE TAKE FURTHER NOTICE** that the Interim Wind Down DIP Order set a final hearing on the Debtors' Wind Down DIP Motion for **May 10, 2011, at 10:00 a.m. (CST),** before the Honorable Richard S. Schmidt, United States Bankruptcy Judge, at the United States

Courthouse, 1133 North Shoreline Boulevard, Corpus Christi, Texas, 78401 (the "**Final Hearing**").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Interim Wind Down DIP Order, any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five (5) days prior to the Final Hearing by the following: (i) counsel to the Debtors, Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010 (Attn: Berry D. Spears and Johnathan C. Bolton) and (ii) counsel to Hayman Capital Master Fund, L.P., Jones Day, 717 Texas Street #3300, Houston, Texas 77002, Attn: Tom A. Howley.

Dated:  April 26, 2011
          Houston, Texas.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

By: /s/ *Berry D. Spears*
          Berry D. Spears
          State Bar No. 18893300
          Johnathan C. Bolton
          State Bar No. 24025260
1301 McKinney, Suite 4100
Houston, Texas 77010-3095
Telephone:  713/651-5151
Telecopier:  713/651-5246
bspears@fulbright.com
jbolton@fulbright.com

and

**JORDAN, HYDEN, WOMBLE,
CULBRETH & HOLZER P.C.**
Shelby A. Jordan
State Bar No. 11016700
Nathaniel Peter Holzer
State Bar No. 00793971
500 N. Shoreline Blvd., Suite 900
Corpus Christi, Texas 78401-0341
Telephone: (361) 653-6624
Facsimile:  (361) 888-5555
sjordan@jhwclaw.com
pholzer@jhwclaw.com

**ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION**

# EXHIBIT A
<u>The Interim Wind Down Dip Order</u>



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

ENTERED
04/26/2011

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Seahawk Drilling, Inc.,** *et al.* | § | **Case No.: 11-20089** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362,**
**363 AND 364 OF THE BANKRUPTCY CODE (I) AUTHORIZING**
**THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING**
**FROM HAYMAN CAPITAL MASTER FUND, L.P., AND (II) GRANTING**
**LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS**

Seahawk Drilling, Inc. ("Seahawk"), and certain of its direct and indirect subsidiaries (collectively, the "Debtors"),[1] having moved on April 22, 2011 (the "Motion") for an order authorizing them to incur post-petition secured indebtedness, to grant liens, security interests and superpriority claims pursuant to sections 105(a), 362, 363 and 364(c) and (d) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the following relief:

        (a)      the Court's authorization for the Debtors to obtain a post-petition secured term loan facility (the "Wind Down Facility") upon the terms set forth in that certain Debtor-In-Possession Loan, Security and Guaranty Agreement (the "Wind Down DIP Loan Agreement")[2] by and among Seahawk, as Borrower, the other Debtors, as Guarantors, and Hayman Capital Master Fund, L.P., as Lender ("Hayman" or the "Wind Down DIP Lender"), making available certain term loans to Borrower in an aggregate principal amount of up to $14,250,000

---

[1] Collectively, the Debtors are: Seahawk, Seahawk Drilling LLC; Energy Supply International LLC; Seahawk Global Holdings LLC; Seahawk Mexico Holdings LLC; Seahawk Drilling Management LLC; Seahawk Offshore Management LLC and Seahawk Drilling USA LLC.

[2] A copy of the form of the Wind Down DIP Loan Agreement is attached as Exhibit A to the Motion.

(the "Wind Down DIP Loans"), on the terms and conditions of the Wind Down DIP Loan Agreement (together with all documents, agreements, and instruments to be executed or to be filed in connection therewith, the "Wind Down DIP Loan Documents"), to pay for, among other things, (i) the orderly wind down of the Debtors' bankruptcy estates, (ii) the administration of claims and distributions to creditors and interest holders in accordance with the Wind Down Budget (as defined in the Wind Down DIP Loan Agreement), which shall be subject to the Variances (as defined in the Wind Down DIP Loan Agreement); and (iii) certain fees and expenses of professionals, provided that the funding of the amounts described in the immediately preceding clauses (i) through (iii) shall be subject to the terms of the Wind Down DIP Loan Agreement;

(b)      the Court's ordering, pursuant to sections 364(c)(1), (2) and 364(d) of the Bankruptcy Code, that the obligations of the Debtors under the Wind Down DIP Loan Documents (collectively, the "Wind Down DIP Obligations") are:

(i)      granted superpriority administrative claim status, effective upon the Initial Draw Date (as such term is defined in paragraph 3 below), having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, subject only to the payment of the Carve-Out (as defined in paragraph 11 hereof) on the terms and conditions set forth herein;

(ii)      secured, under section 364(d)(1) of the Bankruptcy Code, effective on the Initial Draw Date (as such term is defined in paragraph 3 below), by a fully perfected, first priority priming lien on and security interest in all of the Collateral (as defined in the Wind Down DIP Loan Agreement) that is subject to a Lien (as defined in the Wind Down DIP Loan

Agreement) as of the Initial Draw Date, such priming lien to be subject only to payment of the Carve Out; and

(iii)    secured, under section 364(c)(2) of the Bankruptcy Code, effective on the Initial Draw Date (as such term is defined in paragraph 3 below), by a fully perfected, first-priority lien on and security interest in all of the Collateral (as defined in the Wind Down DIP Loan Agreement) that is not subject to a Lien (as defined in the Wind Down DIP Loan Agreement) as of the Initial Draw Date, such unencumbered property lien to be subject only to payment of the Carve Out.

(c)    the Court's scheduling an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider entry of an interim order substantially in the form hereof (this "Interim Order") which, among other things, (i) approves, on an interim basis, the post-petition financing to be made pursuant to the Wind Down DIP Loan Agreement, (ii) authorizes the Debtors to obtain, on an interim basis in accordance with the Wind Down DIP Loan Agreement, Wind Down DIP Loans on the Initial Draw Date in an aggregate principal amount not to exceed $5.75 million (the "Interim Draw");

(d)    the Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") which, among other things, authorizes, on a final basis, the post-petition financing under the Wind Down DIP Loan Documents in an aggregate principal amount up to $14,250,000; and

(e)    the Court's finding, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Interim Hearing was sufficient and no other or further notice is or shall be required.

The Court having considered the Motion, all other pleadings filed with the Court and the evidence submitted at the Interim Hearing; and in accordance with Bankruptcy Rules 2002,

4001(b), (c), and (d), and 9014 and the Bankruptcy Local Rules of this Court, due and proper notice of the Motion and the Interim Hearing having been given; an Interim Hearing having been held on April 25, 2011 and concluded; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and there is adequate protection of the interests of any holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and after finding good and sufficient cause therefor:

**IT IS HEREBY FOUND:**[3]

    A.    <u>Petition Date</u>.  On February 11, 2011 (the "<u>Petition Date</u>"), the Debtors commenced the above-captioned bankruptcy cases (the "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under the Bankruptcy Code.  The debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

    B.    <u>Official Committees</u>.  On February 24, 2011, the United States Trustee for the Southern District of Texas (the "<u>US Trustee</u>") appointed an Official Committee of Equity Security Holders [Docket No. 106] (the "<u>Equity Committee</u>") and an Official Committee of Unsecured Creditors [Docket No. 107] (the "<u>Creditors' Committee</u>").

---

[3] To the extent that any finding of fact is more properly characterized as a conclusion of law, and to the extent that any conclusion of law is more properly characterized as a finding of fact, it is hereby adopted as such.

C.     <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D.     <u>Adequate Notice</u>.  The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion was provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery to certain parties in interest, including, but not limited to:  (i) the Office of the U.S. Trustee; (ii) counsel to the Equity Committee; (iii) counsel to the Creditors' Committee; (iv) all secured creditors of record; (v) counsel to Hercules Offshore, Inc.; (vi) D.E. Shaw and its counsel; and (vii) all parties requesting notice in these Chapter 11 Cases (collectively, the "<u>Notice Parties</u>").  Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is sufficient and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the Bankruptcy Local Rules of this Court.

E.     <u>Sale to Hercules</u>.  The Court entered an order on April 5, 2011 [Docket No. 489] (the "<u>Hercules Sale Order</u>"), authorizing the sale (the "<u>Hercules Sale</u>") of substantially all of the Debtors' assets to Hercules Offshore, Inc. ("<u>Hercules</u>") pursuant to the terms of an Asset Purchase Agreement between Hercules and the Debtors (the "<u>APA</u>").  The Hercules Sale has not yet closed.

F.     <u>Hercules Common Stock</u>.  Upon closing of the Hercules Sale, the Subject Hercules Common Stock (as defined in the Wind Down DIP Loan Agreement) will be held in an

escrow account (the "Escrow Account") at U.S. Bank National Association ("US Bank"), subject to an escrow agreement among Hercules, Seahawk and US Bank, as Escrow Agent.

G.    DE Shaw DIP Facility.    Seahawk is the borrower and the other Debtors are guarantors under that certain Debtor-in-Possession Credit Agreement (the "DE Shaw Credit Agreement"), dated as of February 11, 2011, among the Borrower, the lenders party thereto and D.E. Shaw Direct Capital Portfolios, L.L.C., as administrative agent (collectively, "DE Shaw"). Pursuant to the DE Shaw Credit Agreement and the other agreements and documents delivered pursuant thereto or in connection therewith (collectively with DE Shaw Credit Agreement, the "DE Shaw Loan Documents"), DE Shaw provided Seahawk with certain postpetition financing (the "DE Shaw DIP Facility") as approved by the Court in a final order entered on March 11, 2011 [Docket No. 295] (the "DE Shaw DIP Order").

H.    DE Shaw Liens.    In the DE Shaw Loan Documents, the Debtors, among other things, granted DE Shaw, pursuant to applicable sections of the Bankruptcy Code and as approved by the Court in the DE Shaw DIP Order, (i) certain liens (the "DE Shaw Liens") in the Debtors' real and personal property, and (ii) a superpriority administrative claim (the "DE Shaw Superpriority Claim").    Upon closing of the Hercules Sale, pursuant to the Hercules Sale Order, the terms of the APA and the DE Shaw Loan Documents, all of the Debtors' obligations to DE Shaw under the DE Shaw DIP Facility will be indefeasibly paid in full in cash and the DE Shaw Liens will be released.

I.    Debtors' Stipulations.    In requesting post-petition financing under the Wind Down DIP Loan Documents, the Debtors acknowledge, represent, stipulate and agree that:

(i)    all of the Debtors have obtained all authorizations, consents and approvals necessary in connection with the execution, delivery, performance, validity and

enforceability of the Wind Down DIP Loan Documents to which any Debtor is a party, which are required as a condition for the Initial Draw thereunder;

  (ii) in entering into the Wind Down DIP Loan Documents and as consideration therefor, the Debtors hereby agree that until such time as all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock (as defined in the Wind Down DIP Loan Agreement) or in cash, and the commitments are terminated in accordance with the terms of the Wind Down DIP Loan Agreement, the Debtors shall not (a) grant (other than as expressly set forth in the Wind Down DIP Loan Agreement) any liens or security interests in the Collateral without the written consent of the Wind Down DIP Lender, and (b) in any way prime or seek to prime (*i.e.,* cause to be subordinated) the liens and security interests provided to the Wind Down DIP Lender under this Interim Order by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise;

  J. <u>Cash Collateral</u>.  For purposes of this Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined by section 363 of the Bankruptcy Code, in which the Wind Down DIP Lender has any lien, security interest, or other interest whether arising pursuant to this Interim Order, the Wind Down DIP Loan Documents or otherwise.

  K. <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Motion to fund, among other things, the orderly wind down of the Debtors' bankruptcy estates, the administration of claims and distributions to creditors and interest holders and for other purposes permitted by the Wind Down DIP Loan Documents.  If Seahawk does not obtain authorization to borrow under the Wind Down Facility and the Wind Down DIP Loans are not approved, the Debtors will suffer immediate and irreparable harm.

L.       No Credit Available on More Favorable Terms.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the Wind Down DIP Loan Documents.  A loan facility in the amount of $14,250,000 is not available to the Debtors without granting Hayman superpriority claims, liens and security interests, pursuant to sections 364(c)(1) and (2) and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the Wind Down DIP Loan Documents.

M.       Relief Essential; Best Interest.  The relief requested in the Motion is necessary, essential and appropriate for orderly winding down of the Debtors' estates.  It is in the best interest of the Debtors' estates to be allowed to establish the Wind Down DIP Facility contemplated by the Wind Down DIP Loan Agreement.

N.       Business Judgment and Good Faith.  After considering all alternatives, the Debtors have concluded in the exercise of their prudent business judgment and consistent with their fiduciary duties that the Wind Down Facility represents the best financing available to them at this time and the terms of the Wind Down Facility are supported by reasonably equivalent value and fair consideration.  The Wind Down DIP Loan Documents have been negotiated in good faith and at arms' length by and among the Debtors, the Equity Committee and the Wind Down DIP Lender.  Any Wind Down DIP Loans and/or other financial accommodations made to the Debtors by the Wind Down DIP Lender pursuant to this Interim Order and/or the Wind Down DIP Loan Documents shall be deemed to have been extended by Hayman in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Wind Down DIP Lender shall be entitled to all protections afforded thereunder.

O.     Use of Cash Collateral.   The Debtors also require the use of Cash Collateral to wind down their businesses.   Without the use of Cash Collateral, the Debtors will not be able to otherwise meet their cash requirements for wind down needs.   The Wind Down DIP Lender consents to the use of Cash Collateral on the terms specified herein and in the Wind Down DIP Loan Agreement and in accordance with the Wind Down DIP Budget.

P.     Good Cause.   The ability of the Debtors to obtain sufficient financing to fund their wind-down is vital to the Debtors' estates and creditors.   The liquidity to be provided under the Wind Down DIP Loan Documents and through the use of the Cash Collateral will enable the Debtors to prosecute a plan of reorganization and make distributions to creditors and interest holders.   The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.   Good cause has, therefore, been shown for the relief sought in the Motion.

Q.     Consideration.   All of the Debtors will receive fair and reasonable consideration in exchange for access to the Wind Down DIP Loans, the use of Cash Collateral and all other financial accommodations provided under the Wind Down DIP Loan Documents and this Interim Order.

R.     Immediate Effectiveness of Interim Order.   The Debtors have requested that this Order be immediately effective upon entry.   The permission granted herein to enter into the Wind Down DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.   This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates, creditors and interest holders as its implementation will, among other things, allow for the Debtors to seek confirmation of a plan of reorganization and thereafter make distributions to creditors and interest holders thereunder.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.   <u>Disposition</u>.  The Motion is GRANTED on an interim basis.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Interim Order shall be valid and binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014(c).  The terms and provisions of the Wind Down DIP Loan Documents are approved.

2.   <u>Term of DIP Loan</u>.  The Wind Down DIP Loan Documents authorized hereunder shall expire, and the Wind Down DIP Loans made pursuant to the Wind Down DIP Loan Documents and this Interim Order will mature and, together with all interest thereon and other Wind Down DIP Obligations, become due and payable (unless such Wind Down DIP Loans and other Wind Down DIP Obligations become due and payable earlier pursuant to the terms of the Wind Down DIP Loan Documents by way of acceleration) on the earlier of (a) January 31, 2012, (b) two business days after the effective date of a confirmed plan of reorganization in the Debtors' bankruptcy cases, (c) May 10, 2011, if the Final Order (which shall be in form and substance satisfactory to the Wind Down DIP Lender) has not been entered by this Court on or prior to such date and (d) such other applicable date that is set forth in the definition of the term "Maturity Date" in the Wind Down DIP Loan Agreement.

3.   <u>Interim Borrowing</u>.  The Debtors are hereby authorized to negotiate, prepare and execute the Wind Down DIP Loan Documents and all such documents previously executed are hereby approved.  The Debtors are not authorized to obtain any portion of the Interim Draw, or

incur any liens contemplated under the Wind Down Facility, until (a) the Hercules Sale has closed, (b) the obligations under the DE Shaw DIP Facility have been indefeasibly paid in full in cash and (c) the DE Shaw Liens have been released.   Upon satisfaction of those conditions (the "Initial Draw Date"), the Debtors are immediately authorized, without need of further application to, or authorization of, this Court, to obtain the Interim Draw pursuant to the terms of the Wind Down DIP Loan Documents and this Interim Order, in an aggregate principal amount of up to $5.75 million upon the terms, and for the purposes, set forth in the Wind Down DIP Loan Agreement and in accordance with the Wind Down Budget.

     4.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms of this Interim Order and the Wind Down Budget, the Debtors are authorized to use Cash Collateral in which the Wind Down DIP Lender may have an interest, in accordance with the terms, conditions, and limitations set forth in the Wind Down DIP Loan Agreement.  Any dispute in connection with the use of Cash Collateral in accordance with the Wind Down DIP Loan Agreement shall be heard by the Court.  As set forth in the Wind Down DIP Loan Agreement and, notwithstanding anything in this Interim Order to the contrary, the Debtors' authority to use Cash Collateral shall terminate without any further action by this Court or the Wind Down DIP Lender, upon the earliest to occur of (the "Cash Collateral Termination Date"):  (i) the Debtors' breach of any negative covenant or affirmative covenant under the Wind Down DIP Loan Agreement or if an Event of Default shall have occurred under the Wind Down DIP Loan Agreement; (ii) May 10, 2011, if the Final Order (which shall be in form and substance satisfactory to the Wind Down DIP Lender) has not been entered by this Court on or prior to such date; and (iii) such other applicable date that is set forth in the definition of the term "Maturity Date" in the Wind Down DIP Loan Agreement.

5.     Fees and Deposit.    All fees paid and payable and costs and/or expenses reimbursed, as set forth in the Wind Down DIP Loan Documents, by the Debtors to the Wind Down DIP Lender, are hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs and expenses in accordance with the terms of the Wind Down DIP Loan Documents without the necessity of the Debtors or the Wind Down DIP Lender filing any further application with the Court for approval or payment of such fees or expenses.

6.     Authority to Execute and Deliver Necessary Documents.

(a)     The form of the Wind Down DIP Loan Agreement attached as Exhibit A to the Motion is hereby approved; provided, however, that section 9.01(b) of the Wind Down DIP Loan Agreement is hereby modified to read as follows:  "Debt of the Borrower and its Subsidiaries existing on the date hereof that is disclosed in the Bankruptcy Court Schedules or any claim filed or asserted against the Borrower or any of its Subsidiaries."

(b)     .  Each of the Debtors is authorized, as applicable, to negotiate, prepare, enter into and deliver the Wind Down DIP Loan Agreement and the other Wind Down DIP Loan Documents in each case including any amendments thereto, including UCC financing statements.

(c)     Each of the Debtors is hereby further authorized to (i) perform all of its obligations under the Wind Down DIP Loan Agreement, the other Wind Down DIP Loan Documents and such other agreements as may be required by the Wind Down DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim Order and (ii) perform all acts required under the Wind Down DIP Loan Agreement, the other Wind Down DIP Loan Documents and this Interim Order, including, without limitation, the payment of fees and the reimbursement of present and future reasonable costs and expenses

(including without limitation, reasonable and necessary attorneys' fees and legal expenses) paid or incurred by the Wind Down DIP Lender as provided for in this Interim Order and the Wind Down DIP Loan Documents. All such unpaid fees, commissions, costs and other expenses shall be included and constitute part of the principal amount of the Wind Down DIP Obligations and be secured by the Post-Petition Liens (as defined in paragraph **[9(a)(ii)]** hereof).

(d)   All obligations under the Wind Down DIP Loan Agreement and the other Wind Down DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order.

7.   <u>Amendments, Consents, Waivers, and Modifications</u>.   The Debtors, with the express written consent of the Wind Down DIP Lender, may enter into any amendments, consents, waivers or modifications to the Wind Down DIP Credit Agreement and the other Wind Down DIP Loan Documents without the need for further notice and hearing or any order of this Court, provided that such amendments, consents waivers or modifications do not materially and adversely affect the rights of any creditor or other party in interest unless any such affected creditor or party in interest consents to such modification or amendment.

8.   <u>Wind Down DIP Lender's Superpriority Claim</u>.   The Wind Down DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "<u>Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code that will become effective on the Initial Draw Date for all of the Wind Down DIP Obligations, having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien,

levy or attachment.  The Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve-Out (as defined in paragraph **[10]** hereof).

    9.    <u>Wind Down DIP Lender's Lien Priority.</u>

    (a)    To secure the Wind Down DIP Obligations, the Wind Down DIP Lender is hereby granted, effective on the Initial Draw Date:

    (i)    under section 364(d)(1) of the Bankruptcy Code, a first priority, fully perfected security interest in, and priming lien on (the "<u>Priming Liens</u>"), all of the Collateral that is subject to a Lien (as defined in the Wind Down DIP Loan Agreement) securing any Debtor's obligations (other than the Indebtedness and the Guaranteed Indebtedness, each as defined in the Wind Down DIP Loan Agreement) as of the Initial Draw Date, such Priming Liens to be subject only to payment of the Carve Out; and

    (ii)    under section 364(c)(2) of the Bankruptcy Code, a first priority, fully perfected security interest in, and first priority lien on (the "<u>Unencumbered Property Liens</u>" and collectively with the Priming Liens, the "<u>Post-Petition Liens</u>"), all of the Collateral that is not subject to a non-avoidable, valid and perfected Lien as of the Initial Draw Date, subject only to payment of the Carve Out.

    (b)    The Post-Petition Liens and the Superpriority Claim shall be effective on the Initial Draw Date; provided, however, that, the liens on and security interests in avoidance actions arising under chapter 5 of the Bankruptcy Code and the proceeds and all avoided payments resulting therefrom shall be effective only upon entry of the Final Order (as defined below).  The Post-Petition Liens are not subject to or junior the DE Shaw Liens, which will have been satisfied and released prior to the Initial Draw Date.

(c)     The Post-Petition Liens shall not at any time be (a) made subject or subordinated to, or made *pari passu* with any other lien or security interest existing as of the Initial Draw Date, or claim or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(d)     The Post-Petition Liens, when they become effective on the Initial Draw Date, shall be fully perfected liens and security interests, such that no additional steps need be taken by the Wind Down DIP Lender to perfect such interests.

(e)     The Post-Petition Liens, the Superpriority Claim and the other rights and remedies granted to the Wind Down DIP Lender under this Interim Order shall continue in this and in any superseding case or cases under the Bankruptcy Code and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the Wind Down DIP Obligations have been indefeasibly satisfied in full in Subject Hercules Common Stock or in cash, and the Wind Down DIP Lender's commitments have been terminated in accordance with the Wind Down DIP Loan Agreement.

10.     Priority Professional Expenses & UST/Clerk Fees Carve-Out.

Notwithstanding anything to the contrary contained herein or in any Wind Down DIP Loan Document, the Superpriority Claim and the Post-Petition Liens granted to secure the Wind Down DIP Obligations shall be subject only to an amount (the "Carve Out") sufficient for payment, following the occurrence and during the continuance of an Event of Default (as defined in the Wind Down DIP Loan Agreement), of (a) allowed professional fees and disbursements incurred by professionals (the "Professional Fees") retained by the Debtors, the Equity Committee and the Creditors' Committee in an aggregate amount not to exceed $2,250,000, and

(b) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court.

So long as no Event of Default has occurred, the Debtors shall be permitted to pay Professional

Fees allowed and payable under 11 U.S.C. § 330 and § 331 to the extent such Professional Fees

are specifically identified in the Wind Down Budget, and the payment shall not reduce the

Carve-Out.

11.    Use of Wind Down DIP Loan Proceeds and Restrictions on Use of Funds.  The

proceeds from the Wind Down DIP Loans shall be used only for the purposes permitted under

the Wind Down DIP Loan Agreement and, as applicable, must comply in all respects with the

Wind Down Budget (subject to permitted Variances) and this Interim Order.  None of (a) the

proceeds of the Wind Down DIP Loans, (b) the Collateral or proceeds thereof, and (c) the Cash

Collateral shall be used by the Debtors, the Equity Committee, the Creditors' Committee or any

other person or entity in connection with the investigation, assertion and prosecution of, or

joinder in, any claim, counterclaim, action, proceeding, application, motion, objection or other

contested matter, the purpose of which is to seek any order, judgment, determination or similar

relief:  (a) commencing or prosecuting any action asserting claims pursuant to sections 510, 542,

544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of

action (whether arising under state law, the Bankruptcy Code or other applicable law) of the

Debtors against the Wind Down DIP Lender, in any capacity, with respect to any transaction,

occurrence, omission, or action, including without limitation the validity and extent of the Wind

Down DIP Obligations or the extent and validity of the Post-Petition Liens; (b) avoiding, setting

aside, seeking to invalidate or subordinating, in whole or in part, the Post-Petition Liens;

(c) preventing, binding or delaying (whether directly or indirectly) the Wind Down DIP Lender

from taking any action in respect of their liens and security interests in the Collateral; or

(d) requesting authorization to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, or use Cash Collateral pursuant to section 363(c) without the Wind Down DIP Lenders' prior written consent, unless such loans or financial accommodations are sufficient and are used, immediately upon their effectiveness, to indefeasibly pay all Wind Down DIP Obligations in full in Subject Hercules Common Stock or in cash and terminate the commitments in accordance with the Wind Down DIP Loan Agreement.

      12.    <u>Limitation On Surcharges</u>.

      (a)    No action, inaction, or acquiescence by the Wind Down DIP Lender shall be deemed to be or shall be considered as evidence of any alleged consent by the Wind Down DIP Lender to a charge against the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code.  The Wind Down DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

      (b)    Effective upon entry of the Final Order, no party shall be entitled, directly or indirectly, to charge the Collateral, whether by operation of sections 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise.

      13.    <u>Additional Perfection Measures</u>.

      (a)    The Post-Petition Liens shall be perfected by operation of law immediately upon the Initial Draw Date.  Neither the Debtors nor the Wind Down DIP Lender shall be required to enter into deposit account control agreements, or to file or record financing statements, notices of lien or similar instruments in any jurisdiction, or obtain consents from any party-in-interest, or take any other action in order to validate and to perfect the Post-Petition Liens.  Notwithstanding the fact that the Subject Hercules Common Stock will be in the Escrow

Account, the Wind Down DIP Lender shall have a valid and perfected lien on the Subject Hercules Common Stock in accordance with this Interim Order and the Wind Down Loan Documents.

(b)      If the Wind Down DIP Lender, in its sole discretion, chooses to enter into deposit account control agreements, to file financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

(i)      all such documents shall be deemed to have been recorded and filed as of the Initial Draw Date and

(ii)      no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

14.      <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the Wind Down DIP Loan Documents, the Debtors are hereby authorized to remit to the Wind Down DIP Lender, collections on (in amounts as required in the Wind Down DIP Loan Agreement), and proceeds of, the Collateral, and all other cash or cash equivalents which shall at any time on or after the date of this Interim Order come into the possession or control of the Debtors, or to which Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Wind Down DIP Lender to retain and apply all collections, remittances and proceeds of the Collateral in accordance with this Interim Order, and the Wind Down Loan Documents.

15.      <u>Access to Information</u>.  The Debtors shall permit representatives, agents and/or employees of the Wind Down DIP Lender to have access to their books and records, upon reasonable notice, and shall cooperate, consult with, and provide to such persons all such non-privileged information as required or allowed under the Wind Down Loan Documents.

16.    _Cash Management Systems_.  The Debtors are authorized to maintain their cash management system in a manner consistent with the Wind Down DIP Loan Documents and this Interim Order.

17.    _Automatic Stay Modified_.

(a)    Subject to the provisions of subparagraphs (b) and (c) hereof, the automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated and modified to the extent necessary:

(i)    upon the occurrence of an Event of Default (as defined in the Wind Down DIP Loan Agreement) or a default by any of the Debtors of any of their obligations under this Interim Order, and subject to three (3) business days prior written notice (the "Waiting Period") to the Debtors, their counsel, counsel for the Equity Committee, counsel for the Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the Wind Down DIP Loan Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law to the extent permitted under the Wind Down DIP Loan Documents and this Interim Order without requiring prior authorization of this Court in order to exercise such rights and remedies;

(ii)    immediately upon the occurrence of an Event of Default or a default by any of the Debtors of any of their obligations under the Wind Down DIP Loan Documents, without providing any prior notice thereof (i) the Wind Down DIP Lender may charge interest at the default rate set forth in the Wind Down DIP Loan Agreement, (ii) the Wind Down DIP Lender shall have no further obligation to provide financing under the Wind Down DIP Loan Documents, this Interim Order or otherwise and may, at its discretion, terminate all

commitments with respect to the Wind Down DIP Loans, and (iii) any authorization to use Cash Collateral shall terminate.

(b)     During the Waiting Period, the Debtors shall not use any Cash Collateral or any Wind Down DIP Loan proceeds to pay any expenses without the consent of the Wind Down DIP Lender.  The Debtors, the Equity Committee, the Creditors' Committee and/or the US Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the only issue that may be raised at any such hearing shall be whether, in fact, an Event of Default or default under this Interim Order or under the Wind Down DIP Loan Agreement has occurred and is continuing.

(c)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code, or other injunctive relief requested.

18.     Binding Nature of Agreement.  The Wind Down DIP Loan Documents to which the Debtors are or will become a party, shall constitute legal, valid and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The rights, remedies, powers, privileges, liens and priorities of the Wind Down DIP Lender provided for in this Interim Order and in the Wind Down DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the Wind Down DIP Obligations have first been indefeasibly paid in full in Subject Hercules Common Stock or in cash and completely satisfied and the

commitment terminated in accordance with the Wind Down DIP Loan Agreement. The Wind Down DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Wind Down DIP Lender, the Debtors, and each of their respective successors and permitted assigns, including, without limitation, any trustee, responsible officer, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.

19.     <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the Wind Down DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the Wind Down DIP Lender prior to the date of receipt by the Wind Down DIP Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the Wind Down DIP Loan Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by any of the Debtors to the Wind Down DIP Lender prior to written notice to the Wind Down DIP Lender of the effective date of such action shall be governed in all respects by the original provisions of this Interim Order, and the Wind Down DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the Wind Down DIP Loan Documents with respect to all such indebtedness, obligations or liability.

20.     <u>Prohibition</u>.  Except as provided in the Wind Down DIP Loan Documents and/or this Interim Order, the Debtors shall be and hereby are, prohibited from applying to the Court for

an order authorizing the use of any Cash Collateral or other cash comprising Collateral, except in accordance with the Wind Down DIP Loan Agreement and this Interim Order.

21.     Conversion/Dismissal.  No order dismissing or converting these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee, shall be entered on motion filed by any of the Debtors for any such relief unless and until (i) the Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash, and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement or (ii) the Wind Down DIP Lender expressly consents to such requested relief in writing.  If an order dismissing any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (i) the Post-Petition Liens, the Superpriority Claim granted hereunder and the Wind Down DIP Loan Agreement shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Interim Order until all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Post-Petition Liens and the Superpriority Claim.

22.     Priority of Terms.  Prior to entry of the Final Order, to the extent of any conflict between or among (a) the express terms or provisions of any of the Wind Down DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Wind

Down DIP Loan Documents, the terms and provisions of this Interim Order shall govern. Notwithstanding the foregoing, this order is not intended to contravene, conflict with, alter, amend or take precedence over the terms and provisions of either the APA or the Hercules Sale Order.

23.     No Third Party Beneficiary.  Except with respect to the Wind Down DIP Lender or any of its delegates, successors and permitted assigns, and as otherwise expressly provided in the Wind Down DIP Loan Agreement, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

24.     Survival.  Except as otherwise provided herein, unless and until all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash, and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement, (a) the protections afforded to the Wind Down DIP Lender under this Interim Order, and any actions taken pursuant thereto shall survive the entry of an order (i) confirming a plan of reorganization or liquidation; (ii) dismissing any of these cases or (iii) converting any of these cases into a case pursuant to chapter 7 of the Bankruptcy Code and (b) the Post-Petition Liens and the Superpriority Claim shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal.  Except as otherwise provided herein, the Post-Petition Liens shall maintain their validity and priority as provided by this Interim Order or the Final Order and cannot be modified, altered or impaired in any way by (i) any other financing, extension of credit, incurrence of indebtedness, except with respect to any additional financing to be provided by the Wind Down DIP Lender in accordance with the Final Order, (ii) any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or (iii) any act or

omission until the Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash.

25.    <u>Final Hearing Date</u>.  The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on May 10, 2011 at 10:00 a.m. (as the same may be adjourned or continued by the Court) before the Honorable Richard S. Schmidt, United States Bankruptcy Judge, United States Courthouse, 1133 North Shoreline Boulevard, Corpus Christi, Texas 78401.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than five (5) days prior to the Final Hearing by the following:  (i) counsel to the Debtors, Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010 (Attn:  Berry D. Spears and Johnathan C. Bolton) and (ii) counsel to Hayman Capital Master Fund, L.P., Jones Day, 717 Texas Street #3300, Houston, Texas 77002, Attn:  Tom A. Howley.

26.    <u>Entry of Order; Effect</u>.  This Interim Order shall take effect immediately upon entry hereof, notwithstanding the possible application of FED. R. BANKR. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these cases.

27.    <u>Binding Effect of Order</u>.  The terms of this Interim Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated:        April 26, 2011
              Corpus Christi, Texas.

April 26, 2011                      UNITED STATES BANKRUPTCY JUDGE

DLI-6351774v9                            24