# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

ENTERED
05/10/2011

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Seahawk Drilling, Inc.**, *et al.* | § | **Case No.: 11-20089** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

## FINAL ORDER PURSUANT TO
## SECTIONS 105, 361, 362, 363 AND 364 OF
## THE BANKRUPTCY CODE (I) AUTHORIZING
## THE DEBTORS TO OBTAIN POSTPETITION SECURED
## FINANCING FROM HAYMAN CAPITAL MASTER FUND, L.P.,
## (II) GRANTING LIENS, SECURITY INTERESTS AND
## SUPERPRIORITY CLAIMS AND (III) MODIFYING THE AUTOMATIC STAY

Seahawk Drilling, Inc. ("Seahawk"), and certain of its direct and indirect subsidiaries (collectively, the "Debtors"),[1] having moved on April 22, 2011 (the "Motion") for, among other things, entry of a final order (the "Final Order") authorizing the Debtors to incur post-petition secured indebtedness, to grant liens, security interests and superpriority claims pursuant to sections 105(a), 362, 363 and 364(c) and (d) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the following relief:

(a)    the Court's authorization for the Debtors to obtain a post-petition secured term loan facility (the "Wind Down Facility") upon the terms set forth in that certain Debtor-In-Possession Loan, Security and Guaranty Agreement (the "Wind Down DIP Loan Agreement")[2] by and among Seahawk, as Borrower, the other Debtors, as Guarantors, and Hayman Capital Master Fund, L.P., as Lender ("Hayman" or the "Wind Down DIP Lender"), making available

---

[1]  Collectively, the Debtors are:  Seahawk, Seahawk Drilling LLC; Energy Supply International LLC; Seahawk Global Holdings LLC; Seahawk Mexico Holdings LLC; Seahawk Drilling Management LLC; Seahawk Offshore Management LLC and Seahawk Drilling USA LLC.

[2]  A copy of the form of the Wind Down DIP Loan Agreement is attached as Exhibit A to the Motion.

certain term loans to Borrower in an aggregate principal amount of up to $14,250,000 (the "Wind Down DIP Loans"), on the terms and conditions of the Wind Down DIP Loan Agreement (together with all documents, agreements, and instruments to be executed or to be filed in connection therewith, the "Wind Down DIP Loan Documents"), to pay for, among other things, (i) the orderly wind down of the Debtors' bankruptcy estates, (ii) the administration of claims and distributions to creditors and interest holders in accordance with the Wind Down Budget (as defined in the Wind Down DIP Loan Agreement), which shall be subject to the Variances (as defined in the Wind Down DIP Loan Agreement); and (iii) certain fees and expenses of professionals, provided that the funding of the amounts described in the immediately preceding clauses (i) through (iii) shall be subject to the terms of the Wind Down DIP Loan Agreement;

(b)     the Court's ordering, pursuant to sections 364(c)(1), (2) and 364(d) of the Bankruptcy Code, that the obligations of the Debtors under the Wind Down DIP Loan Documents (collectively, the "Wind Down DIP Obligations") are:

(i)     granted superpriority administrative claim status, having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, subject only to the payment of the Carve-Out (as defined in paragraph 10 hereof) on the terms and conditions set forth herein;

(ii)     secured, under section 364(d)(1) of the Bankruptcy Code, effective as of the Initial Draw Date (as such term is defined in paragraph I below), by a fully perfected, first priority priming lien on and security interest in all of the Collateral (as defined in the Wind

Down DIP Loan Agreement) that is subject to a Lien (as defined in the Wind Down DIP Loan Agreement), such priming lien to be subject only to payment of the Carve Out;

        (iii)    secured, under section 364(c)(2) of the Bankruptcy Code, effective as of the Initial Draw Date (as such term is defined in paragraph I below), by a fully perfected, first-priority lien on and security interest in all of the Collateral (as defined in the Wind Down DIP Loan Agreement) that is not subject to a Lien (as defined in the Wind Down DIP Loan Agreement), such unencumbered property lien to be subject only to payment of the Carve Out;

        (c)    vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Wind Down DIP Loan Documents and this Final Order; and

        (d)    waive the fourteen day stay provisions of Bankruptcy Rule 6004(h).

The Court having considered the Motion, all other pleadings filed with the Court; the evidence submitted at the hearing held on April 25, 2011 (the "Interim Hearing") to approve the relief requested in the Motion on an interim basis; and the evidence submitted at the hearing held on May 10, 2011 (the "Final Hearing") to approve the relief requested in the Motion on a final basis; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Bankruptcy Local Rules of this Court, due and proper notice of the Motion and the Final Hearing having been given; the Final Hearing having been held on May 10, 2011 and concluded; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and there is adequate protection of the interests of any holders of liens on the property of the estates on which liens are to be granted;

and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and after finding good and sufficient cause therefor:

**IT IS HEREBY FOUND:**[3]

A.      Petition Date.   On February 11, 2011 (the "Petition Date"), the Debtors commenced the above-captioned bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under the Bankruptcy Code.  The debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

B.      Official Committees.  On February 24, 2011, the United States Trustee for the Southern District of Texas (the "US Trustee") appointed an Official Committee of Equity Security Holders [Docket No. 106] (the "Equity Committee") and an Official Committee of Unsecured Creditors [Docket No. 107] (the "Creditors' Committee").

C.      Jurisdiction; Venue.  The Court has jurisdiction over these Chapter 11 Cases, the parties and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

D.      Adequate Notice.  The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2.  Notice of the Final Hearing and the relief requested in the Motion was provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery to certain parties in interest, including, but not limited to:  (i) the Office of the U.S. Trustee; (ii) counsel to the Equity Committee; (iii) counsel to the Creditors'

---

[3]  To the extent that any finding of fact is more properly characterized as a conclusion of law, and to the extent that any conclusion of law is more properly characterized as a finding of fact, it is hereby adopted as such.

Committee; (iv) all secured creditors of record; (v) counsel to Hercules Offshore, Inc.; (vi) D.E. Shaw and its counsel; and (vii) all parties requesting notice in these Chapter 11 Cases (collectively, the "Notice Parties"). Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion is sufficient and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the Bankruptcy Local Rules of this Court.

E.     Sale to Hercules. The Court entered an order on April 5, 2011 [Docket No. 489] (the "Hercules Sale Order"), authorizing the sale (the "Hercules Sale") of substantially all of the Debtors' assets to Hercules Offshore, Inc. ("Hercules") pursuant to the terms of an Asset Purchase Agreement between Hercules and the Debtors (the "APA"). The Hercules Sale closed on April 27, 2011.

F.     Hercules Common Stock. Upon closing of the Hercules Sale, the Subject Hercules Common Stock (as defined in the Wind Down DIP Loan Agreement) was placed in an escrow account (the "Escrow Account") at U.S. Bank National Association ("US Bank"), subject to an escrow agreement among Hercules, Seahawk and US Bank, as Escrow Agent.

G.     DE Shaw DIP Facility. Seahawk was the borrower and the other Debtors were guarantors under that certain Debtor-in-Possession Credit Agreement (the "DE Shaw Credit Agreement"), dated as of February 11, 2011, among the Borrower, the lenders party thereto and D.E. Shaw Direct Capital Portfolios, L.L.C., as administrative agent (collectively, "DE Shaw"). Pursuant to the DE Shaw Credit Agreement and the other agreements and documents delivered pursuant thereto or in connection therewith (collectively with DE Shaw Credit Agreement, the "DE Shaw Loan Documents"), DE Shaw provided Seahawk with certain postpetition

financing (the "DE Shaw DIP Facility") as approved by the Court in a final order entered on March 11, 2011 [Docket No. 295] (the "DE Shaw DIP Order").

H.      DE Shaw Liens.  In the DE Shaw Loan Documents, the Debtors, among other things, granted DE Shaw, pursuant to applicable sections of the Bankruptcy Code and as approved by the Court in the DE Shaw DIP Order, (i) certain liens (the "DE Shaw Liens") in the Debtors' personal property, and (ii) a superpriority administrative claim (the "DE Shaw Superpriority Claim").  Upon the closing of the Hercules Sale, all of the Debtors' obligations to DE Shaw under the DE Shaw DIP Facility were indefeasibly paid in full in cash and the DE Shaw Liens were released.

I.      Interim Order.  Based upon the Motion and the evidence submitted by the Debtors at the Interim Hearing, the Court entered an order [Dkt. No. 653] (the "Interim Order"), which, among other things, authorized the Debtors' entry into and performance of the Wind Down DIP Loan Documents pending the Final Hearing, and scheduled the Final Hearing for May 10, 2011. In addition, the Interim Order authorized the Debtors to borrow up to $5,750,000 under the Wind Down DIP Loan Documents when (the "Initial Draw Date"), among other conditions, (a) the Hercules Sale had closed, (b) the obligations under the DE Shaw DIP Facility had been indefeasibly paid in full in cash, and (c) the DE Shaw Liens had been released.  Each of the foregoing conditions was satisfied and the Initial Draw Date occurred on April 27, 2011.

J.      Debtors' Stipulations.  In requesting post-petition financing under the Wind Down DIP Loan Documents, the Debtors acknowledge, represent, stipulate and agree that:

(i)      all of the Debtors have obtained all authorizations, consents and approvals necessary in connection with the execution, delivery, performance, validity and enforceability of the Wind Down DIP Loan Documents to which any Debtor is a party;

(ii)     in entering into the Wind Down DIP Loan Documents and as consideration therefor, the Debtors hereby agree that until such time as all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash, and the commitments are terminated in accordance with the terms of the Wind Down DIP Loan Agreement, the Debtors shall not (a) grant any liens or security interests in the Collateral without the written consent of the Wind Down DIP Lender, and (b) in any way prime or seek to prime (*i.e.,* cause to be subordinated) the liens and security interests provided to the Wind Down DIP Lender under this Final Order by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise;

K.     <u>Cash Collateral</u>.  For purposes of this Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined by section 363 of the Bankruptcy Code, in which the Wind Down DIP Lender has any lien, security interest, or other interest whether arising pursuant to this Final Order, the Wind Down DIP Loan Documents or otherwise.

L.     <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Motion to fund, among other things, the orderly wind down of the Debtors' bankruptcy estates, the administration of claims and distributions to creditors and interest holders and for other purposes permitted by the Wind Down DIP Loan Documents.

M.     <u>No Credit Available on More Favorable Terms</u>.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the Wind Down DIP Loan Documents.  A loan facility in the amount of $14,250,000 is not available to the Debtors without granting Hayman

superpriority claims, liens and security interests, pursuant to sections 364(c)(1) and (2) and 364(d) of the Bankruptcy Code, as provided in this Final Order and the Wind Down DIP Loan Documents.

N.      Relief Essential; Best Interest.   The relief requested in the Motion is necessary, essential and appropriate for orderly winding down of the Debtors' estates.  It is in the best interest of the Debtors' estates to be allowed to establish the Wind Down Facility contemplated by the Wind Down DIP Loan Agreement.

O.      Business Judgment and Good Faith.   After considering all alternatives, the Debtors have concluded in the exercise of their prudent business judgment and consistent with their fiduciary duties that the Wind Down Facility represents the best financing available to them at this time and the terms of the Wind Down Facility are supported by reasonably equivalent value and fair consideration.  The Wind Down DIP Loan Documents have been negotiated in good faith and at arms' length by and among the Debtors, the Equity Committee and the Wind Down DIP Lender.  Any Wind Down DIP Loans and/or other financial accommodations made to the Debtors by the Wind Down DIP Lender pursuant to this Final Order and/or the Wind Down DIP Loan Documents shall be deemed to have been extended by Hayman in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Wind Down DIP Lender shall be entitled to all protections afforded thereunder.

P.      Use of Cash Collateral.   The Debtors also require the use of Cash Collateral to wind down their businesses.  Without the use of Cash Collateral, the Debtors will not be able to otherwise meet their cash requirements for wind down needs.  The Wind Down DIP Lender consents to the use of Cash Collateral on the terms specified herein and in the Wind Down DIP Loan Agreement and in accordance with the Wind Down DIP Budget.

Q.     Good Cause.  The ability of the Debtors to obtain sufficient financing to fund their wind down is vital to the Debtors' estates and creditors.  The liquidity to be provided under the Wind Down DIP Loan Documents and through the use of the Cash Collateral will enable the Debtors to prosecute a plan of reorganization and make distributions to creditors and interest holders.  The Debtors' estates will be immediately and irreparably harmed if this Final Order is not entered.  Good cause has, therefore, been shown for the relief sought in the Motion.

R.     Consideration.  All of the Debtors will receive fair and reasonable consideration in exchange for access to the Wind Down DIP Loans, the use of Cash Collateral and all other financial accommodations provided under the Wind Down DIP Loan Documents and this Final Order.

S.     Immediate Effectiveness of Final Order.  The Debtors have requested that this Final Order be immediately effective upon entry.  This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates, creditors and interest holders as its implementation will, among other things, allow for the Debtors to seek confirmation of a plan of reorganization and thereafter make distributions to creditors and interest holders thereunder.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.     Disposition.  The Motion is GRANTED on a final basis and in accordance with the terms and conditions set forth in this Final Order and the Wind Down DIP Loan Agreement.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Final Order shall be valid and binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of

Bankruptcy Rules 6004(h), 7062, and 9014(c). The terms and provisions of the Wind Down DIP Loan Documents are approved.

2.     <u>Term of DIP Loan</u>. The Wind Down DIP Loan Documents authorized hereunder shall expire, and the Wind Down DIP Loans made pursuant to the Wind Down DIP Loan Documents and this Final Order will mature and, together with all interest thereon and other Wind Down DIP Obligations, become due and payable (unless such Wind Down DIP Loans and other Wind Down DIP Obligations become due and payable earlier pursuant to the terms of the Wind Down DIP Loan Documents by way of acceleration) on the earlier of (a) January 31, 2012, (b) two business days after the effective date of a confirmed plan of reorganization in the Debtors' bankruptcy cases, and (c) such other applicable date that is set forth in the definition of the term "Maturity Date" in the Wind Down DIP Loan Agreement.

3.     <u>Authorization to Borrow</u>. The Debtors are hereby authorized to negotiate, prepare and execute the Wind Down DIP Loan Documents and all such documents previously executed are hereby approved.   The Debtors are immediately authorized, without need of further application to, or authorization of, this Court, to borrow up to an aggregate principal amount of $14,250,000 under the Wind Down Facility subject to the terms of the Wind Down DIP Loan Documents and this Final Order for the purposes set forth in the Wind Down DIP Loan Agreement and in accordance with the Wind Down Budget.

4.     <u>Authorization to Use Cash Collateral</u>. Subject to the terms of this Final Order and the Wind Down Budget, the Debtors are authorized to use Cash Collateral in which the Wind Down DIP Lender may have an interest, in accordance with the terms, conditions, and limitations set forth in the Wind Down DIP Loan Agreement. Any dispute in connection with the use of Cash Collateral in accordance with the Wind Down DIP Loan Agreement shall be

heard by this Court.  Notwithstanding anything in this Final Order to the contrary, the Debtors'

authority to use Cash Collateral shall automatically terminate without any further action by this

Court or the Wind Down DIP Lender, upon the earliest to occur of (the "Cash Collateral

Termination Date"): (i) the Debtors' breach of any negative covenant or affirmative covenant

under the Wind Down DIP Loan Agreement or if an Event of Default shall have occurred under

the Wind Down DIP Loan Agreement; and (ii) such other applicable date that is set forth in the

definition of the term "Maturity Date" in the Wind Down DIP Loan Agreement.

     5.     Fees and Deposit.  All fees paid and payable and costs and/or expenses

reimbursed, as set forth in the Wind Down DIP Loan Documents, by the Debtors to the Wind

Down DIP Lender, are hereby approved.  The Debtors are hereby authorized and directed to pay

all such fees, costs and expenses in accordance with the terms of the Wind Down DIP Loan

Documents without the necessity of the Debtors or the Wind Down DIP Lender filing any further

application with the Court for approval or payment of such fees or expenses.

     6.     Authority to Execute and Deliver Necessary Documents.

     (a)     The form of the Wind Down DIP Loan Agreement attached as Exhibit A

to the Motion is hereby approved.  Each of the Debtors is authorized, as applicable,  to negotiate,

prepare, enter into and deliver the Wind Down DIP Loan Agreement and the other Wind Down

DIP Loan Documents in each case including any amendments thereto, including UCC financing

statements; and all such documents previously executed or delivered are hereby approved.

     (b)     Each of the Debtors is hereby further authorized to (i) perform all of its

obligations under the Wind Down DIP Loan Agreement, the other Wind Down DIP Loan

Documents and such other agreements as may be required by the Wind Down DIP Loan

Documents to give effect to the terms of the financing provided for therein and in this Final

Order and (ii) perform all acts required under the Wind Down DIP Loan Agreement, the other Wind Down DIP Loan Documents and this Final Order, including, without limitation, the payment of fees and the reimbursement of present and future reasonable costs and expenses (including without limitation, reasonable and necessary attorneys' fees and legal expenses) paid or incurred by the Wind Down DIP Lender as provided for in this Final Order and the Wind Down DIP Loan Documents. All such unpaid fees, commissions, costs and other expenses shall be included and constitute part of the principal amount of the Wind Down DIP Obligations and be secured by the Post-Petition Liens (as defined in paragraph 9(a)(ii) hereof).

(c)     All obligations under the Wind Down DIP Loan Agreement and the other Wind Down DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Final Order.

7.     _Amendments, Consents, Waivers, and Modifications._  The Debtors, with the express written consent of the Wind Down DIP Lender, may enter into any amendments, consents, waivers or modifications to the Wind Down DIP Credit Agreement and the other Wind Down DIP Loan Documents without the need for further notice and hearing or any order of this Court, provided that such amendments, consents waivers or modifications do not materially and adversely affect the rights of any creditor or other party in interest unless any such affected creditor or party in interest consents to such modification or amendment.

8.     _Wind Down DIP Lender's Superpriority Claim._  The Wind Down DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code for all of the Wind Down DIP Obligations, having priority over any and all administrative expenses of the kinds specified in or

arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve-Out (as defined in paragraph 10 hereof).

9.  <u>Wind Down DIP Lender's Lien Priority</u>.

(a)  To secure the Wind Down DIP Obligations, the Wind Down DIP Lender is hereby granted, effective as of the Initial Draw Date:

(i)  under section 364(d)(1) of the Bankruptcy Code, a first priority, fully perfected security interest in, and priming lien on (the "<u>Priming Liens</u>"), all of the Collateral that is subject to a Lien (as defined in the Wind Down DIP Loan Agreement), such Priming Liens to be subject only to payment of the Carve Out; and

(ii)  under section 364(c)(2) of the Bankruptcy Code, a first priority, fully perfected security interest in, and first priority lien on (the "<u>Unencumbered Property Liens</u>" and collectively with the Priming Liens, the "<u>Post-Petition Liens</u>"), all of the Collateral that is not subject to a Lien, subject only to payment of the Carve Out.

(b)  The Post-Petition Liens shall not at any time be (a) made subject or subordinated to, or made *pari passu* with any other lien or security interest, or claim or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(c)     The Post-Petition Liens shall be fully perfected liens and security interests, such that no additional steps need be taken by the Wind Down DIP Lender to perfect such interests.

(d)     The Post-Petition Liens, the Superpriority Claim and the other rights and remedies granted to the Wind Down DIP Lender under this Final Order shall continue in this and in any superseding case or cases under the Bankruptcy Code and such liens and security interests shall maintain their first priority as provided in this Final Order until all the Wind Down DIP Obligations have been indefeasibly satisfied in full in Subject Hercules Common Stock or in cash, and the Wind Down DIP Lender's commitments have been terminated in accordance with the Wind Down DIP Loan Agreement.

10.     <u>Priority Professional Expenses & UST/Clerk Fees Carve-Out</u>.

Notwithstanding anything to the contrary contained herein or in any Wind Down DIP Loan Documents, the Superpriority Claim and the Post-Petition Liens granted to secure the Wind Down DIP Obligations shall be subject only to an amount (the "<u>Carve Out</u>") sufficient for payment, following the occurrence and during the continuance of an Event of Default (as defined in the Wind Down DIP Loan Agreement), of (a) allowed professional fees and disbursements incurred by professionals (the "<u>Professional Fees</u>") retained by the Debtors, the Equity Committee and the Creditors' Committee in an aggregate amount not to exceed $2,250,000, and (b) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court. So long as no Event of Default has occurred, the Debtors shall be permitted to pay Professional Fees allowed and payable under 11 U.S.C. § 330 and § 331 to the extent such Professional Fees are specifically identified in the Wind Down Budget, and the payment shall not reduce the Carve-Out.

11.    <u>Use of Wind Down DIP Loan Proceeds and Restrictions on Use of Funds</u>.  The proceeds from the Wind Down DIP Loans shall be used only for the purposes permitted under the Wind Down DIP Loan Agreement and, as applicable, must comply in all respects with the Wind Down Budget (subject to permitted Variances) and this Final Order.  None of (a) the proceeds of the Wind Down DIP Loans, (b) the Collateral or proceeds thereof, and (c) the Cash Collateral shall be used by the Debtors, the Equity Committee, the Creditors' Committee or any other person or entity in connection with the investigation, assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief:  (a) commencing or prosecuting any action asserting claims pursuant to sections 510, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other applicable law) of the Debtors against the Wind Down DIP Lender, in any capacity, with respect to any transaction, occurrence, omission, or action, including without limitation the validity and extent of the Wind Down DIP Obligations or the extent and validity of the Post-Petition Liens; (b) avoiding, setting aside, seeking to invalidate or subordinating, in whole or in part, the Post-Petition Liens; (c) preventing, binding or delaying (whether directly or indirectly) the Wind Down DIP Lender from taking any action in respect of their liens and security interests in the Collateral; or (d) requesting authorization to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, or use Cash Collateral pursuant to section 363(c) without the Wind Down DIP Lenders' prior written consent, unless such loans or financial accommodations are sufficient and are used, immediately upon their effectiveness, to indefeasibly pay all Wind Down DIP Obligations in full in Subject Hercules

Common Stock or in cash and terminate the commitments in accordance with the Wind Down DIP Loan Agreement.

12.    <u>Limitation On Surcharges</u>.

(a)    No action, inaction, or acquiescence by the Wind Down DIP Lender shall be deemed to be or shall be considered as evidence of any alleged consent by the Wind Down DIP Lender to a charge against the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code. The Wind Down DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

(b)    No party is entitled, directly or indirectly, to charge the Collateral, whether by operation of sections 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise.

13.    <u>Additional Perfection Measures</u>.

(a)    The Post-Petition Liens are perfected as of the Initial Draw Date by operation of law and neither the Debtors nor the Wind Down DIP Lender shall be required to enter into deposit account control agreements, or to file or record financing statements, notices of lien or similar instruments in any jurisdiction, or obtain consents from any party-in-interest, or take any other action in order to validate and to perfect the Post-Petition Liens. Notwithstanding the fact that the Subject Hercules Common Stock will be in the Escrow Account, the Wind Down DIP Lender shall have a valid and perfected lien on the Subject Hercules Common Stock in accordance with this Final Order and the Wind Down DIP Loan Documents.

(b)    If the Wind Down DIP Lender, in its sole discretion, chooses to enter into deposit account control agreements, to file financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

(i)      all such documents shall be deemed to have been recorded and filed as of the Initial Draw Date; and

(ii)      no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

14.      <u>Application of Collateral Proceeds</u>.  To the extent required by this Final Order and the Wind Down DIP Loan Documents, the Debtors are hereby authorized to remit to the Wind Down DIP Lender, collections on (in amounts as required in the Wind Down DIP Loan Agreement), and proceeds of, the Collateral, and all other cash or cash equivalents which shall at any time on or after the date of this Final Order come into the possession or control of the Debtors, or to which Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Wind Down DIP Lender to retain and apply all collections, remittances and proceeds of the Collateral in accordance with this Final Order, and the Wind Down DIP Loan Documents.

15.      <u>Access to Information</u>.  The Debtors shall permit representatives, agents and/or employees of the Wind Down DIP Lender to have access to their books and records, upon reasonable notice, and shall cooperate, consult with, and provide to such persons all such non-privileged information as required or allowed under the Wind Down DIP Loan Documents.

16.      <u>Cash Management Systems</u>.  The Debtors are authorized to maintain their cash management system in a manner consistent with the Wind Down DIP Loan Documents and this Final Order.

17.     <u>Automatic Stay Modified</u>.

(a)     Subject to the provisions of subparagraphs (b) and (c) hereof, the automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated and modified to the extent necessary:

(i)     upon the occurrence of an Event of Default (as defined in the Wind Down DIP Loan Agreement) or a default by any of the Debtors of any of their obligations under this Final Order, and subject to three (3) business days prior written notice (the "<u>Waiting Period</u>") to the Debtors, their counsel, counsel for the Equity Committee, counsel for the Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the Wind Down DIP Loan Documents, this Final Order or under other applicable bankruptcy and non-bankruptcy law to the extent permitted under the Wind Down DIP Loan Documents and this Final Order without requiring prior authorization of this Court in order to exercise such rights and remedies;

(ii)     immediately upon the occurrence of an Event of Default or a default by any of the Debtors of any of their obligations under the Wind Down DIP Loan Documents, without providing any prior notice thereof (a) the Wind Down DIP Lender may charge interest at the default rate set forth in the Wind Down DIP Loan Agreement, (b) the Wind Down DIP Lender shall have no further obligation, if any such obligation exists at the time, to provide financing under the Wind Down DIP Loan Documents, this Final Order or otherwise and may, at its discretion, terminate all commitments with respect to the Wind Down DIP Loans, and (c) any authorization to use Cash Collateral shall terminate.

(b)     During the Waiting Period, the Debtors shall not use any Cash Collateral or any Wind Down DIP Loan proceeds to pay any expenses without the consent of the Wind

Down DIP Lender. The Debtors, the Equity Committee, the Creditors' Committee and/or the US Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the only issue that may be raised at any such hearing shall be whether, in fact, an Event of Default or default under this Final Order or under the Wind Down DIP Loan Agreement has occurred and is continuing.

(c)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code, or other injunctive relief requested.

18.     <u>Binding Nature of Agreement</u>. The Wind Down DIP Loan Documents to which the Debtors are or will become a party, shall constitute legal, valid and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. The rights, remedies, powers, privileges, liens and priorities of the Wind Down DIP Lender provided for in this Final Order and in the Wind Down DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the Wind Down DIP Obligations have first been indefeasibly paid in full in Subject Hercules Common Stock or in cash and completely satisfied and the commitment terminated in accordance with the Wind Down DIP Loan Agreement. The Wind Down DIP Loan Documents and the provisions of this Final Order shall be binding upon the Wind Down DIP Lender, the Debtors, and each of their respective successors and permitted

assigns, including, without limitation, any trustee, responsible officer, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.

19.    <u>Subsequent Reversal or Modification</u>.  This Final Order is entered pursuant to section 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), granting the Wind Down DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the Wind Down DIP Lender prior to the date of receipt by the Wind Down DIP Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Final Order or pursuant to the Wind Down DIP Loan Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by any of the Debtors to the Wind Down DIP Lender prior to written notice to the Wind Down DIP Lender of the effective date of such action shall be governed in all respects by the original provisions of this Final Order, and the Wind Down DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the Wind Down DIP Loan Documents with respect to all such indebtedness, obligations or liability.

20.    <u>Disgorgement</u>.  Any amounts actually paid, within the limits set forth in the Wind Down Budget, prior to the Maturity Date (as defined in the Wind Down DIP Loan Agreement) or the date of the written notice of an Event of Default delivered to the Debtors shall not be subject to a disgorgement motion (or the granting of such relief) on the grounds that the Wind Down DIP Lender was not paid in whole or in part with respect to the Wind Down DIP

Obligations. The Wind Down DIP Lender shall retain its rights to object to any claim of a professional for payment of fees or reimbursement of expenses.

21.   <u>Prohibition</u>. Except as provided in the Wind Down DIP Loan Documents and/or this Final Order, the Debtors shall be and hereby are, prohibited from applying to the Court for an order authorizing the use of any Cash Collateral or other cash comprising Collateral, except in accordance with the Wind Down DIP Loan Agreement and this Final Order.

22.   <u>Conversion/Dismissal</u>. No order dismissing or converting these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee, shall be entered on motion filed by any of the Debtors for any such relief unless and until (i) the Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash, and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement or (ii) the Wind Down DIP Lender expressly consents to such requested relief in writing. If an order dismissing any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (i) the Post-Petition Liens, the Superpriority Claim granted hereunder and the Wind Down DIP Loan Agreement shall continue in full force and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as provided in this Final Order until all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Post-Petition Liens and the Superpriority Claim.

23.  <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the Wind Down DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the Wind Down DIP Loan Documents, the terms and provisions of this Final Order shall govern.  Notwithstanding the foregoing, this order is not intended to contravene, conflict with, alter, amend or take precedence over the terms and provisions of either the APA or the Hercules Sale Order.

24.  <u>No Third Party Beneficiary</u>.  Except with respect to the Wind Down DIP Lender or any of its delegates, successors and permitted assigns, and as otherwise expressly provided in the Wind Down DIP Loan Agreement, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

25.  <u>Survival</u>.  Except as otherwise provided herein, unless and until all Wind Down DIP Obligations are indefeasibly paid in full in Subject Hercules Common Stock or in cash, and the commitments under the Wind Down DIP Loan Agreement are terminated in accordance with such Wind Down DIP Loan Agreement, (a) the protections afforded to the Wind Down DIP Lender under this Final Order, and any actions taken pursuant thereto shall survive the entry of an order (i) confirming a plan of reorganization or liquidation; (ii) dismissing any of these cases or (iii) converting any of these cases into a case pursuant to chapter 7 of the Bankruptcy Code and (b) the Post-Petition Liens and the Superpriority Claim shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal.  Except as otherwise provided herein, the Post-Petition Liens shall maintain their validity and priority as provided by this Final Order and cannot be modified, altered or impaired in any way by (i) any other financing,

extension of credit or incurrence of indebtedness, (ii) any conversion of any of these Chapter 11

Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these

Chapter 11 Cases, or (iii) any act or omission until the Wind Down DIP Obligations are

indefeasibly paid in full in Subject Hercules Common Stock or in cash.

      26.    <u>Entry of Order; Effect</u>.  This Final Order shall take effect immediately upon entry

hereof, notwithstanding the possible application of FED. R. BANKR. P. 6004(g), 7062, 9014, or

otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's

docket in these cases.

      27.    <u>Binding Effect of Order</u>.  The terms of this Final Order shall be binding on any

trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated:     May 10, 2011
            Corpus Christi, Texas.

                                        _____
                                    UNITED STATES BANKRUPTCY JUDGE