**THE COURT HAS NOT YET APPROVED THIS PLAN FOR SOLICITATION TO PARTIES ENTITLED TO VOTE ON THE PLAN.  THE DEBTORS ARE NOT SOLICITING YOUR VOTE ON THIS PLAN AT THIS TIME**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Seahawk Drilling, Inc., *et al.*[1], | § | Case No. 11-20089-RSS |
| | § | |
| Debtors. | § | Jointly Administered |

---

**JOINT PLAN OF REORGANIZATION OF THE DEBTORS AND DEBTORS-IN-POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated:  May 20, 2011

**FULBRIGHT & JAWORSKI L.L.P.**
BERRY D. SPEARS
JOHNATHAN C. BOLTON
1301 MCKINNEY, SUITE 5100
HOUSTON, TEXAS 77010-3095
TELEPHONE: (713) 651-5151
FACSIMILE:  (713) 651-5246

and

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER P.C.**
SHELBY A. JORDAN
NATHANIAL PETER HOLZER
500 N. SHORELINE BLVD., SUITE 900
CORPUS CHRISTI, TEXAS 78401-0341
TELEPHONE: (361) 653-6624
FACSIMILE:  (361) 888-5555

**ATTORNEYS FOR THE DEBTORS AND THE DEBTORS-IN-POSSESSION**

---

[1] The Debtors in these jointly-administered chapter 11 cases are:  Seahawk Drilling, Inc., Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk Offshore Management LLC, Energy Supply International LLC, Seahawk Drilling LLC, Seahawk Global Holdings, LLC and Seahawk Drilling USA, LLC.

## <u>INTRODUCTION</u>

Seahawk Drilling, Inc. ("<u>Seahawk</u>" or the "<u>Company</u>"), Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk Offshore Management LLC, Energy Supply International LLC, Seahawk Drilling LLC, Seahawk Global Holdings, LLC and Seahawk Drilling USA, LLC (collectively, the "<u>Debtors</u>"), as Debtors and Debtors-in-Possession in the above-captioned chapter 11 reorganization case pending before the Bankruptcy Court, hereby propose this *Joint Plan of Reorganization of the Debtors and Debtors-in-Possession Under Chapter 11 of the Bankruptcy Code* (the "<u>Plan</u>") for the resolution of the outstanding claims against and interests in the Debtors.  Capitalized terms used herein shall have the meanings ascribed to such terms in Article I.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3019, the Debtors expressly reserves their rights to alter, amend, modify, revoke or withdraw this Plan, one or more times, prior to its substantial consummation.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ ii

PLAN SCHEDULES ................................................................................................... vi

ARTICLE I DEFINED TERMS .................................................................................. 1

ARTICLE II RULES OF INTERPRETATION AND COMPUTATION OF TIME.................. 11

2.1    Rules of Interpretation ...................................................................... 11

2.2    Computation of Time........................................................................ 12

ARTICLE III ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................ 12

3.1    Administrative Claims ...................................................................... 12

3.2    Priority Tax Claims........................................................................... 12

ARTICLE IV CLASSIFICATION OF CLAIMS AND INTERESTS  AND
             IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
             IMPAIRED AND NOT IMPAIRED UNDER THE PLAN ......................... 13

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS ............... 14

5.1    Provisions For Treatment of Claims And Interests............................ 14

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN......................................... 18

6.1    Classes Entitled to Vote .................................................................... 18

6.2    Class Acceptance Requirement.......................................................... 18

6.3    Special Provision Regarding Unimpaired Claims .............................. 18

6.4    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ................... 18

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 18

7.1    Sale of Assets .................................................................................... 18

7.2    Revesting of Assets ........................................................................... 19

7.3    Transfer of Hercules Common Stock by Escrow Agent on behalf of the
       Debtors .............................................................................................. 19

7.4    Substantive Consolidation ................................................................. 19

7.5    Establishment of the Liquidating Trust.............................................. 20

7.6    Corporate Existence .......................................................................... 20

7.7    Cancellation of Existing Interests in Seahawk.................................... 21

7.8    Issuance of New Shares in Seahawk................................................... 21

7.9    Liquidating Trustee's Ability to Operate ........................................... 21

7.10   Authority ........................................................................................... 21

7.11   Employee Benefits ............................................................................ 21

Table of Contents
(continued)

Page

7.12   Exemption from Certain Transfer Taxes ............................................ 22

7.13   Exemption from Securities Laws ....................................................... 22

7.14   Preservation of Rights of Action; Settlements .................................. 23

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS ...................................... 24

8.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 24

8.2    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ................................................................................... 24

8.3    Contracts and Leases After Petition Date .......................................... 25

8.4    Reservation of Rights ......................................................................... 25

8.5    Additional Cure Provisions ................................................................ 25

8.6    Disputed Cure Reserve ....................................................................... 25

8.7    Claims Based on Rejection of Executory Contracts and Unexpired Leases ....... 25

8.8    Survival of Indemnification and Corporation Contribution .................. 26

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS ............................ 26

9.1    Distributions for Claims and Interests Allowed as of Effective Date ............... 26

9.2    Disbursements to Classes of Claims and Interests .............................. 27

9.3    Record Date for Distributions to Holders of Claims ........................... 27

9.4    Record Date for Distributions to Holders of Interests ........................ 27

9.5    Valuation of Hercules Common Stock for Purposes of Distributions by the Escrow Agent on Behalf of the Reorganized Debtors .......................... 27

       1.    Distributions of Hercules Common Stock to Holders of Allowed Claims ........................................................................................ 27

       2.    Distributions of Hercules Common Stock to Holders of Allowed Interests ..................................................................................... 28

9.6    Distributions of Cash by the Liquidating Trustee ............................... 28

       1.    Distributions of Cash to Holders of Allowed Claims ............... 28

       2.    Distributions of Cash to Holders of Allowed Interests ............ 29

9.7    Means of Cash Payment ..................................................................... 29

9.8    Delivery of Distributions ................................................................... 29

9.9    Claims Paid or Payable by Third Parties ........................................... 30

9.10   Applicability of Insurance Policies .................................................... 30

Table of Contents
(continued)

9.11    Withholding and Reporting Requirements ........................................................ 31
ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
            UNLIQUIDATED CLAIMS ............................................................................ 31
10.1    Expunging of Certain Claims........................................................................... 31
10.2    Objections to Claims ........................................................................................ 31
10.3    Estimation of Claims ........................................................................................ 31
10.4    Distributions Pending Allowance of Disputed Claim....................................... 32
10.5    Disputed Claims Reserves ............................................................................... 32
10.6    Late Filed Claims ............................................................................................ 32
10.7    Distributions After Allowance ......................................................................... 32
10.8    Compliance with Tax Requirements/Allocations ............................................. 33
ARTICLE XI ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
            CLAIMS ...................................................................................................... 33
11.1    Professional Fee Claims................................................................................... 33
11.2    Administrative Claims ...................................................................................... 34
11.3    Administrative Ordinary Course Liabilities...................................................... 34
11.4    Administrative Tax Claims ............................................................................... 34
ARTICLE XII LIQUIDATING TRUST AND LIQUIDATING TRUSTEE............................ 35
12.1    Generally.......................................................................................................... 35
12.2    Establishment of the Liquidating Trust............................................................ 35
12.3    Purpose of the Liquidating Trust ..................................................................... 35
12.4    Appointment and Powers of the Liquidating Trust Board................................. 35
12.5    Appointment and Powers of the Liquidating Trustee ........................................ 36
12.6    Payment of Expenses Incurred by the Liquidating Trust................................... 38
12.7    Exculpation; Indemnification........................................................................... 38
12.8    Retention of Funds Prior to Distribution ......................................................... 39
12.9    Distributions to Liquidating Trust Beneficiaries ............................................. 39
12.10   Representation of Liquidating Trust ................................................................. 39
12.11   Termination of the Liquidating Trust ............................................................... 40
12.12   Resignation of the Liquidating Trustee............................................................. 40

Table of Contents
(continued)

Page

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE PLAN ...................... 40

13.1   Conditions Precedent to Confirmation................................................ 40

13.2   Conditions Precedent to Effective Date ............................................. 41

13.3   Substantial Consummation ................................................................. 41

13.4   Waiver of Conditions.......................................................................... 41

13.5   Revocation, Withdrawal, Non-Consummation................................... 42

ARTICLE XIV EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ........................... 42

14.1   Compromise and Settlement ............................................................... 42

14.2   Satisfaction of Claims ........................................................................ 42

14.3   Exculpation and Limitation of Liability ............................................ 43

14.4   Good Faith .......................................................................................... 43

14.5   Discharge of Liabilities ...................................................................... 43

14.6   Permanent Injunction ......................................................................... 44

14.7   Releases by the Debtors and their Estates.......................................... 45

14.8   Release by Purchaser .......................................................................... 45

14.9   Releases by Holders of Claims and Interests..................................... 46

14.10  Setoffs ................................................................................................ 46

14.11  Recoupment ........................................................................................ 47

14.12  Release of Liens ................................................................................. 47

14.13  Satisfaction of Subordination Rights ................................................. 48

14.14  Rights of Defendants in Avoidance Actions...................................... 48

ARTICLE XV RETENTION OF JURISDICTION .............................................................. 48

ARTICLE XVI MISCELLANEOUS PROVISIONS ............................................................ 50

16.1   Amendments and Modification........................................................... 50

16.2   Payment of Statutory Fees ................................................................. 50

16.3   Binding Effect..................................................................................... 50

16.4   Term of Injunctions or Stay ............................................................... 50

16.5   Dissolution of Committees ................................................................. 50

16.6   No Admissions.................................................................................... 51

16.7   Governing Law ................................................................................... 51

-iv-

Table of Contents
(continued)

Page

16.8    Subordination ........................................................................................... 51

16.9    Plan Supplements .................................................................................... 51

16.10   Notices .................................................................................................... 51

16.11   Severability of Plan Provisions ............................................................. 52

16.12   U.S. Trustee Quarterly Reports .............................................................. 52

16.13   Default under the Plan ............................................................................ 52

**PLAN SCHEDULES**

Plan Schedule I:        Retained Causes of Action

Plan Schedule II:      List of Assumed and Assigned Executory Contracts and Unexpired Leases

Plan Schedule III:     Liquidating Trust Agreement

Plan Schedule IV:     List of Litigation and Other Contingent Unsecured Claims

# ARTICLE I
# DEFINED TERMS

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1. **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, any (a) actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtors (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, (c) fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, and (d) DIP Lender Claims to the extent not already paid or satisfied under the terms of the Plan.

1.2. **"Administrative Claims Bar Date"** means, except as modified by Section 11.2 of the Plan, the deadline for filing motions seeking payment of Administrative Claims which shall be thirty (30) days after the occurrence of the Effective Date.

1.3. **"Administrative Tax Claim"** means an Unsecured Claim asserted by a Governmental Unit for taxes (and for any interest, penalties or other charges related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.4. **"Affiliates"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

1.5. **"Aggregate Consideration"** shall have the meaning ascribed to it in the APA.

1.6. **"Allowed Claim"** means a Claim, or any portion thereof, that either:

(a)  if no proof of Claim has been timely filed on or before the Claims Bar Date, (i) has been scheduled by the Debtors in a liquidated amount, <u>and</u> (ii) such Claim is not disputed or contingent, <u>and</u> (iii) no objection has been filed to the Claim by an Interested Party within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, and (iv) which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(b)  if a proof of Claim has been timely filed on or before the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to a Final Order, the amount of the Claim (i) as to which any Interested Party has not filed an objection within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, <u>and</u> (ii) that is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(c)  has been allowed by a Final Order of the Bankruptcy Court; or

(d)        is expressly allowed in a liquidated amount in this Plan.

**1.7.** **"Allowed Class … Claim"** means an Allowed Claim in the particular Class described.

**1.8.** **"Allowed Interest"** means, with respect to any Interest, an Interest held by a party who was listed as a stockholder of record of Seahawk on the Distribution Record Date or as allowed by Final Order of the Bankruptcy Court.

**1.9.** **"APA"** means the Asset Purchase Agreement, dated as of February 11, 2011, by and between the Debtors and Hercules.

**1.10.** **"Assets"** means all assets of the Estate as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.11.** **"Available Cash"** means all Cash held by the Debtors or Liquidating Trustee, as the case may be, less (i) any Cash held in Reserves; (ii) Cash used to pay Claims in Classes 1 through 7; and (iii) Cash used to pay fees and expenses incurred by the Liquidating Trust.

**1.12.** **"Avoidance Actions"** means all Causes of Action arising under chapter 5 of the Bankruptcy Code, including under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or arising under similar state or federal statutes and common law, including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, or similar state laws, whether or not litigation is commenced to prosecute such Causes of Action.

**1.13.** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

**1.14.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.

**1.15.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

**1.16.** **"Bar Date"** means the deadline for Creditors to file proofs of claim, established by the Bankruptcy Court as April 22, 2011, for non-governmental claimants, and August 10, 2011 for Governmental Units, and any supplemental bar dates established by the Bankruptcy Court pursuant to a Final Order.

**1.17.** **"Benefit Plans"** means any pre-petition plan providing benefits to employees of the Debtors on account of their employment with the Debtors.

**1.18.** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.19.** "**Case(s)**" or "**Chapter 11 Case(s)**" means each individual bankruptcy case and the jointly-administered bankruptcy cases filed under chapter 11 of the Bankruptcy Code commenced by Seahawk and the Subsidiary Debtors on February 11, 2011, styled *In re Seahawk Drilling, Inc., et al*., pending in the Bankruptcy Court under Jointly-Administered Case No. 11-20089 - RSS.

**1.20.** "**Cash**" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**1.21.** "**Causes of Action**" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, of the Debtors, including Avoidance Actions, and such other actions as may be listed on Plan Schedule I (including those claims and causes of action against Pride) unless otherwise waived by the Debtors or the Reorganized Debtors.

**1.22.** "**Claim**" means a claim, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.23.** "**Claims, Notice and Balloting Agent**" means Kurtzman Carson Consultants, LLC, who shall act as the Clerk of the Bankruptcy Court with respect to handling the receipt of Proofs of Claim, maintenance of the Claims Register, mailing notice to parties in interest, providing notice to holders of Impaired Claims and Interests entitled to vote on the Plan, receiving and tabulating ballots and reporting the results of the votes on the Plan.

**1.24.** "**Claims Objection Deadline**" means, as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is one hundred and eighty (180) days after the Effective Date, and (ii) as to proofs of claim filed after the Bar Date (excluding Claims that are expressly permitted herein to be filed after the Confirmation Date), the first Business Day that is one hundred and eighty (180) days after a Final Order is entered deeming the late-filed claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court as may be requested by the Debtors or the Reorganized Debtors.

**1.25.** "**Claims Register**" means the list of Claims maintained by the Claims, Notice and Balloting Agent.

**1.26.** "**Class**" means a category of holders of Claims or Interests as described in Article IV of this Plan.

**1.27.** "**Closing**" means the closing and consummation by the Debtors and the Purchaser of the transactions set forth in the APA.

**1.28.** "**Closing Date**" means, April 27, 2011, the date the Debtors and the Purchaser closed and consummated the transactions set forth in the APA.

**1.29.** **"Collateral"** means any property or interest in property of the Estate that is subject to a valid and enforceable lien or security interest to secure a Claim.

**1.30.** **"Committee"** means any official committee appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case.

**1.31.** **"Confirmation Date"** means the date the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.32.** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan as such hearing may be adjourned or continued from time to time.

**1.33.** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.34.** "**Creditor**" means a holder of an Allowed Claim.

**1.35.** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee to represent holders of Unsecured Claims in the Cases.

**1.36.** **"Cure"** means the distribution of Cash or Hercules Common Stock, or such other property (i) as may be agreed upon by the Debtors, on the one hand, and the holders of Cure Claims, on the other hand or (ii) as ordered by the Bankruptcy Court, required to be made in connection with the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations required to be paid pursuant to the provisions of section 365 of the Bankruptcy Code, without interest, or such other amount as may be agreed upon by the Debtors and the holders of Cure Claims, as the case may be, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.37.** "**Cure Claims**" means Claims relating to Cure.

**1.38.** **"Debtors"** means Seahawk and the Subsidiary Debtors.

**1.39.** **"DIP Lenders"** means those entities identified as "Lenders" in any approved DIP Loan and their successors and assigns.

**1.40.** **"DIP Loan"** means (i) until April 27, 2011, the Debtor-In-Possession Credit Agreement, dated as of February 11, 2011, by and among the Debtors, as Borrowers, and the DIP Lenders, as the Lenders, and the DIP Loan Agent (the "First DIP Financing Agreement") (ii) on and after April 27, 2011, the Debtor-In-Possession Loan, Security and Guaranty Agreement (the "Wind Down DIP Financing Agreement") dated as of April 27, 2011, by and among Seahawk, as Borrower, the Debtors (other than Seahawk), as Guarantors, and Hayman Capital Master Fund, L.P., as the Lender (iii) and/or such other loan agreement(s) to the Debtors-in-possession as approved by the Bankruptcy Court.

**1.41.** **"DIP Loan Agent"** means until April 27, 2011, DE Shaw Direct Capital Portfolios, L.L.C., in its capacity as administrative agent under the First DIP Financing Agreement DIP Loan and, thereafter, any such other agent under any other DIP Loan.

**1.42.** **"Disallowed Claim"** means a Claim, or any portion thereof that, either (a) has been disallowed by a Final Order or pursuant to a settlement with the Debtors, or (b) is (i) scheduled by the Debtors at $0.00 or as either contingent, disputed or unliquidated <u>and</u> (ii) no proof of claim has been timely filed on or before the established Bar Date or is deemed timely filed by Final Order of the Bankruptcy Court.

**1.43.** **"Disclosure Statement"** means the written disclosure statement (including all schedules and attachments thereto) relating to the Plan, that was approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code on [_____, 2011], as such disclosure statement may be amended, modified or supplemented from time to time.

**1.44.** "**Disclosure Statement Order**" means the order of the Bankruptcy Court, pursuant to section 1125 of the Bankruptcy Code, approving the Disclosure Statement.

**1.45.** **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) have <u>not</u> been Scheduled by the Debtors or have been Scheduled at $0.00, or as contingent, unliquidated or disputed, or (b) are the subject of a pending objection filed in the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order.

**1.46.** **"Disputed Claims Reserve"** means a reserve created by the Reorganized Debtors or the Liquidating Trustee of Cash and/or Hercules Common Stock for Distribution to holders of Allowed Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

**1.47.** **"Disputed Cure Reserve"** means a reserve of Cash and/or Hercules Common Stock for Distribution to parties whose Cure Claim is disputed, to be reserved pending a determination of the proper amount of the Cure Claim in accordance with Article X of the Plan.

**1.48.** "**Disputed Pride Claims**" means all Claims of Pride against the Debtors, which are Disputed Claims.

**1.49.** **"Distribution"** means any transfer under this Plan of Cash, Hercules Common Stock, or other property of the Debtor to any Person.

**1.50.** **"Distribution Date"** means the date or dates, as determined by the Reorganized Debtors or the Liquidating Trustee, upon which Distributions are made to holders of Allowed Claims entitled to receive Distributions under the Plan.

**1.51.** **"Distribution Record Date"** means the record date set in the Disclosure Statement Order for purposes of making Distributions under the Plan on account of Allowed Claims.

90441977.7

**1.52.** "**Effective Date**" means the date on which substantial consummation of the transactions contemplated by the Plan take place.

**1.53.** "**Equity Committee**" means the official committee appointed by the United States Trustee to represent holders of Interests in the Cases.

**1.54.** "Escrow Agent" means U.S. Bank National Association, as Escrow Agent appointed under the APA with whom the Hercules Common Stock was deposited for the benefit of the Debtors following the closing of the APA.

**1.55.** "**Estate**" means the bankruptcy estates of the Debtors as created under section 541 of the Bankruptcy Code.

**1.56.** "**Exchange Act**" means the Securities and Exchange Act of 1934, as amended.

**1.57.** "**Excluded Assets**" means those assets of the Debtors that are not sold to the Purchaser pursuant to the APA.

**1.58.** "**Exhibit**" means an exhibit annexed to either the Plan or as an appendix to the Disclosure Statement.

**1.59.** "Federal Judgment Rate" means the interest rate applicable to judgments in civil and bankruptcy courts pursuant to 28 U.S.C. § 1961.

**1.60.** "**Final Order**" means an order, decree or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reconsideration or rehearing thereof has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.61.** "**Fractional Cash Payment**" means the amount of Cash, calculated in accordance with Article IX of the Plan, which may be distributed by the Liquidating Trustee to a holder of an Allowed Claim in lieu of a fractional share of Hercules Common Stock when necessary to ensure the payment in full of an Allowed Claim.

**1.62.** "**General Unsecured Claim**" means a Claim, however arising, including from the rejection of an executory contract or an unexpired lease, that is not a Secured Claim and which is not an Administrative Claim, Priority Tax Claim, Secured Tax Claim, Other Secured Claim, Priority Non-Tax Claim, Litigation and Other Contingent Unsecured Claims, Disputed Pride Claim or Subordinated Claim.

**1.63.** "**Governmental Unit**" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

**1.64.** "**Hercules**" means Hercules Offshore, Inc.

**1.65.** "**Hercules Common Stock**" means the shares of common stock of Hercules Offshore, Inc. provided as part of the Aggregate Consideration from Purchaser under the APA.

**1.66.** **"Hercules Common Stock Escrow Account"** means the escrow account established pursuant to the Hercules Common Stock Escrow Agreement into which the Hercules Common Stock portion of the Aggregate Consideration received by the Debtors under the APA was deposited.

**1.67.** "**Hercules Common Stock Escrow Agreement**" means that certain escrow agreement, by and among Seahawk, Hercules and U.S. Bank National Association, as Escrow Agent, dated as of April 27, 2011.

**1.68.** **"Hercules Common Stock Value"** means the value of the Hercules Common Stock calculated in accordance with Section 9.5 of the Plan for purposes of Distributions of Hercules Common Stock to creditors in exchange for and payment of their Allowed Claims.

**1.69.** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.70.** **"Interest"** means the rights of any holder or owner of any shares of common stock or any other equity securities (as defined in the Bankruptcy Code) of Seahawk issued, authorized and outstanding prior to the Petition Date.

**1.71.** **"Interests Register"** means the list of the holders of Interests in Seahawk on the Distribution Record Date prepared by Seahawk's transfer agent charged with maintaining the official registry of holders of such Interests which the Reorganized Debtors shall use as the official register of holders of Interests for purposes of Distributions of Hercules Common Stock to holders of Interests pursuant to the Plan.

**1.72.** **"IRS"** means the Internal Revenue Service of the United States of America.

**1.73.** **"Liquidating Trust"** means that certain trust that may be created pursuant to this Plan to be administered by the Liquidating Trustee as set forth in Article XII that shall be named the "Seahawk Drilling Liquidating Trust."

**1.74.** **"Liquidating Trust Agreement"** means that certain Liquidating Trust Agreement that is to govern the Liquidating Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, governs the administration of the Liquidating Trust Assets for the benefit of the holders of the beneficial interests in the Liquidating Trust, as set forth in, and in a manner consistent with the terms of the Plan.

**1.75.** **"Liquidating Trust Assets"** means (i) the Excluded Assets, (ii) the Retained Causes of Action, (iii) Cash remaining on the Effective Date, (iv) the New Common Stock of Reorganized Seahawk, (v) Debtors' rights under the APA to the extent they survive the Closing, (vi) any and all other assets belonging to the Debtors' Estates, and (vii) the proceeds of each of the foregoing, including, without limitation, any interest earned thereon, less any assets distributed or Trust Administrative Expenses incurred by the Liquidating Trustee. The Liquidating Trust Assets do not include Hercules Common Stock.

**1.76.** **"Liquidating Trust Board"** means the advisory committee established pursuant to the Liquidating Trust.

**1.77.** **"Liquidating Trustee"**  means the trustee of the Liquidating Trust.

**1.78.** **"Litigation and Other Contingent Unsecured Claim"** means a Claim that is currently the subject of litigation between the Debtors and the holder of such a Claim or that is subject to some other contingency relating to the Debtors' liability and scope of damages, if any, including, but not limited to, a Claim arising under commercial law, employment law or personal injury law, that is identified on Plan Schedule IV and is not otherwise classified under the Plan.

**1.79.** **"New Common Stock of Reorganized Seahawk"** means the shares of common stock of Reorganized Seahawk issued pursuant to the Plan.

**1.80.** **"Other Secured Claim"** means any Secured Claim that is not a Secured Tax Claim and is not otherwise classified under the Plan.

**1.81.** **"Person"** means a natural person, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

**1.82.** **"Petition Date"** means February 11, 2011.

**1.83.** **"Plan"** means this joint plan of reorganization for the Debtors under chapter 11 of the Bankruptcy Code as herein proposed, including all supplements, appendices and schedules hereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

**1.84.** **"Plan Agent"** means the Liquidating Trustee in his or her capacity as sole officer and director of each of the Reorganized Debtors.

**1.85.** "**Plan Objection Deadline**" means the deadline set by the Bankruptcy Court for filing objections to confirmation of the Plan, ___, 2011.

**1.86.** **"Plan Schedule"** means a schedule annexed either to this Plan or as an appendix to the Disclosure Statement, as the same may be altered, amended or modified from time to time.

**1.87.** **"Plan Supplement"** means the supplement(s) to the Plan filed in connection with the Plan prior to the Confirmation Hearing.

**1.88.** **"Post-Petition Interest"** means interest on the principal amount of a certain specified Allowed Claims, from the Petition Date through and including five (5) business days immediately prior to the date a Distribution is made on account of such Allowed Claim, and after the Effective Date, interest on any unpaid portion of such Allowed Claim and any unpaid post-petition interest.

**1.89.** "**Pride**" means Pride International, Inc. and its subsidiaries, its Affiliates and their respective directors, officers, employees and agents.

**1.90.** **"Pride Agreements"** means the various contracts and agreements by and between the Debtors, on the one hand, and Pride, on the other hand, entered into in connection with the spin-off of the Debtors from Pride to form two independent, publicly-traded companies as of August 24, 2009.

**1.91.** **"Pride Causes of Action"** means any and all causes of action against Pride owned by or through the Debtors, whether arising out of the Pride Agreements or otherwise, all of which shall be Retained Causes of Action under the Plan.

**1.92.** **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.93.** **"Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.94.** **"Professional"** means any professional employed in the Case pursuant to section 327, 328 or 1103 of the Bankruptcy Code.

**1.95.** **"Professional Fee Claim"** means a Claim under sections 327, 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for professional services rendered or expenses incurred in the Case on or prior to the Effective Date.

**1.96.** **"Professional Fee Order"** means the order entered by the Bankruptcy Court on February 14, 2011, authorizing the interim payment of Professional Fee Claims, as may be amended from time to time prior to the entry of the Confirmation Order.

**1.97.** **"Purchased Assets"** shall have the meaning ascribed to it in the APA.

**1.98.** **"Purchaser"** means SD Drilling LLC and Hercules Offshore, Inc.

**1.99.** **"Released Parties"** means (i) all former and current directors, officers and employees of the Debtors but only to the extent they served in such a capacity after the Spin-off Date, (ii) the Committee(s) and each member of the Committee(s) in its representative capacity, (iii) Professionals retained by the Debtors and the Committee(s), (iv) the DIP Loan Agent and the DIP Lenders, and (v) the Purchaser, and, with respect to each of the foregoing, such Person's respective officers, directors, partners, members, employees, attorneys, restructuring and financial advisors, accountants, investment bankers, agents, professionals and representatives retained by such Person.

**1.100.** **"Reorganized Debtors"** means the Debtors after the Effective Date.

**1.101.** **"Reorganized Seahawk"** means Seahawk after the Effective Date.

**1.102.** **"Retained Causes of Action"** means all Causes of Action which any Debtor or its estate may hold against any Person, other than (i) any Causes of Action against a Released Party, and (ii) any Causes of Action which are Purchased Assets. Retained Causes of Action are listed on Plan Schedule I.

90441977.7

1.103. "**Sale Order**" means the order of the Bankruptcy Court approving the sale of the Purchased Assets to the Purchaser under the APA.

1.104. "**Sale Proceeds**" means the Aggregate Consideration received by the Debtors, including Cash and Hercules Common Stock, in connection with the sale of the Purchased Assets under the APA.

1.105. "**Scheduled**" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

1.106. "**Schedules**" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed in the Cases by the Debtors, as such Schedules have been or may be further modified, amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or a Final Order of the Bankruptcy Court.

1.107. "**Seahawk**" means Seahawk Drilling, Inc., a Delaware corporation.

1.108. "**Secured Claim**" means a Claim that is secured by a security interest in or lien upon property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Creditor's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.109. "**Secured Tax Claim**" means a Secured Claim arising before the Effective Date that is due and owing to a Governmental Unit on account of taxes.

1.110. "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

1.111. "**Solicitation Order**" means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

1.112. "**Spin-off Date**" means, August 24, 2009, the date on which Seahawk, a former subsidiary of Pride, became an independent public company pursuant to the Master Separation Agreement between Seahawk and Pride described in the Disclosure Statement.

1.113. "**Subordinated Claim**" means (a) any Claim that is not Allowed under any provision of section 502 of the Bankruptcy Code, including, without limitation, any Claim for indemnity, contribution, or reimbursement that is not Allowed on or before the Confirmation Date; and (b) any Claim that is subordinated by Final Order of the Bankruptcy Court pursuant to section 510 of the Bankruptcy Code.

1.114. "**Subsidiary Debtors**" means Seahawk Mexico Holdings LLC, Seahawk Drilling Management LLC, Seahawk Offshore Management LLC, Energy Supply International LLC, Seahawk Drilling LLC, Seahawk Global Holdings, LLC and Seahawk Drilling USA, LLC.

**1.115. "Substantial Contribution Claim"** means a Claim under section 503(b)(3) or (4) of the Bankruptcy Code and in accordance with applicable bankruptcy law.

**1.116. "Tax Reserve"** means, as applicable, one or more reserves of Cash for distribution to holders of Allowed Tax Claims to be reserved pending allowance of Disputed Claims in accordance with Article X of the Plan.

**1.117. "Trust Administrative Expenses"** means professional fees and expenses incurred by the Liquidating Trust in carrying out the purposes of the Trust.

**1.118. "Trustee"** means the trustee of the Liquidating Trust.

**1.119. "Unclaimed Property"** means any funds or property distributed to creditors or shareholders of the Debtors (together with any interest earned thereon) which are unclaimed as of one hundred eighty (180) days after a Distribution.  Unclaimed Property will include, without limitation, Cash, Hercules Common Stock and any other property which is to be distributed pursuant to this Plan which has been returned as undeliverable without a proper forwarding address, or which was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**1.120. "Unimpaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.121. "Unsecured Claim"** means any Claim to the extent such Claim is not a Secured Claim.

**1.122. "U.S. Trustee"** means the Office of the United States Trustee, or a representative thereof.

**1.123. "Voting Deadline"** means ___, 2011, the last day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.124. "Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those holders of Claims against the Debtors entitled to vote on the Plan.

**ARTICLE II**
**RULES OF INTERPRETATION AND COMPUTATION OF TIME**

**2.1    Rules of Interpretation**

For purposes of this Plan:  a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or contain substantially such terms and conditions; c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document

or exhibit, as it may have been or may be amended, modified or supplemented; d) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; g) "after notice and a hearing," or a similar phrase has the meaning ascribed in section 102 of the Bankruptcy Code; h) "includes" and "including" are not limiting; i) "may not" is prohibitive, and not permissive; and j) "or" is not exclusive.

### 2.2    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE III
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### 3.1    Administrative Claims

Subject to the provisions of Article XI of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any Assumed Contract, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement and discharge of such Allowed Administrative Claim:  (a) Cash equal to the unpaid portion of such Allowed Administrative Claim; (b) in the case of the Allowed Administrative Claim of Hayman Capital Master Fund, L.P., the distribution of Hercules Common Stock or Cash pursuant to this Plan not later than two (2) business days after the Effective Date and in the amount determined pursuant to the terms of the Wind Down DIP Financing Agreement, or (c) such other treatment as agreed to in writing by the Debtors or the Liquidating Trustee and the holder of an Allowed Administrative Claim; provided, however, that holders of Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during these Cases will be paid in the ordinary course of business in accordance with the terms and conditions of any written agreement relating thereto.

### 3.2    Priority Tax Claims

On, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or the Liquidating Trustee, as the case may be, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other treatment as agreed to in writing with the Debtors or the Liquidating Trustee and the holder of a Priority Tax Claim.  To the extent the Debtors elect under section 1129(a)(9)(C) of the Bankruptcy Code to make regular installment

payments in Cash, the holder of an Allowed Priority Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half (6½ %) percent per annum (or such other interest rate that the Bankruptcy Court sets in the Confirmation Order) with the final payment due on or before _____ ___, 2017.  The first installment will be made at the end of the first full quarter after the Effective Date.

**ARTICLE IV**
**CLASSIFICATION OF CLAIMS AND INTERESTS**
**AND IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS**
**IMPAIRED AND NOT IMPAIRED UNDER THE PLAN**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is the Plan's designation of classes of Claims against and Interests in the Debtors.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below and the status of those Classes as impaired or unimpaired is also indicated below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article III above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving distributions pursuant to, the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

(a)    Class 1.    Secured Tax Claims.

(Unimpaired under the Plan.)

(b)    Class 2    Other Secured Claims.

(Impaired under the Plan.)

(c)    Class 3.    Priority Non-Tax Claims.

(Impaired under the Plan.)

(d)    Class 4.    General Unsecured Claims.

(Impaired under the Plan.)

(e)    Class 5.    Litigation and Other Contingent Unsecured Claims.

(Impaired under the Plan.)

(f)    Class 6.    Disputed Pride Claims.

(Impaired under the Plan.)

90441977.7

(g)     Class 7.        Subordinated Claims.

(Impaired under the Plan.)

(h)     Class 8.        Interests.

(Impaired under the Plan.)

# ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1     Provisions For Treatment of Claims And Interests**

(a)     Class 1 Secured Tax Claims.  Each holder of an Allowed Class 1 Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, as will have been determined by the Debtors or the Liquidating Trustee, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Secured Tax Claim, (ii) treatment in a manner consistent with section 1129(a)(9)(D) of the Bankruptcy Code, or (iii) such other treatment as agreed to in writing by the holder of the Class 1 Allowed Secured Tax Claim and the Debtors or the Liquidating Trustee, as applicable.  To the extent the Debtors elect under section 1129(a)(9)(D) of the Bankruptcy Code to make regular installment payments in Cash, the holder of an Allowed Secured Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half percent (6½ %) per annum with the final payment due on or before _____ __, 2017.  The first installment will be made at the end of the first full quarter after the Effective Date.  Each holder of an Allowed Secured Tax Claim shall retain the liens securing such Allowed Secured Tax Claim.

(b)     Class 2 Other Secured Claims.  Each holder of an Allowed Class 2 Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Claim, on, or as soon as reasonably practicable thereafter, the later of  the Effective Date or the date on which such Claim becomes an Allowed Claim, at the option of the Debtors or the Liquidating Trustee, as applicable, (i) turnover of the collateral securing such Allowed Other Secured Claim, (ii) Hercules Common Stock and a Fractional Cash Payment, if applicable, in an amount equal to the outstanding principal amount of the Allowed Secured portion of such Other Secured Claim, plus pre-petition and post-petition interest on the Allowed Secured portion of the Other Secured Claim at the contract rate, if any, and reasonable and necessary attorney's fees and but only to the extent allowed by the Court under applicable non-bankruptcy law, or (iii) such other treatment as agreed to in writing by the holder of an Allowed Other Secured Claim and the Debtors or the Liquidating Trustee.  Any unsecured deficiency remaining after the treatment of an Allowed Other Secured Claim under this article 5.1(b) will be treated as a Class 4 Claim.

(c)     Class 3 Priority Non-Tax Claims. Each holder of an Allowed Class 3 Priority Non-Tax Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (i) on, or as soon as

reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, (A) a Distribution of Hercules Common Stock and a Fractional Cash Payment, if applicable, equal to the due and unpaid portion of such Allowed Priority Non-Tax Claim plus (B) pre-petition and post-petition interest on the Allowed portion of the Claim at either the applicable contract rate, if any, or, in the absence of a contract rate, the Federal Judgment Rate, and (C) reasonable and necessary attorney's fees but only to the extent allowed by the Court under applicable non-bankruptcy law or (ii) such other treatment as agreed to in writing by the holder of an Allowed Priority Non-Tax Claim and the Debtors or the Liquidating Trustee.

(d)    Class 4 Allowed General Unsecured Claims.    After Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1 – 3 have been paid in full, each holder of an Allowed General Unsecured Claim will receive on account of the Allowed portion of its Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, (A) a Distribution of Hercules Common Stock and a Fractional Cash Payment, if applicable, in an amount equal to the outstanding principal amount of such Allowed Claim, plus (B) pre-petition and post-petition interest on the Allowed portion of the Claim at either the applicable contract rate, if any, or, in the absence of a contract rate, the Federal Judgment Rate, and (C) reasonable and necessary attorney's fees but only to the extent allowed by the Court under applicable non-bankruptcy law until such Allowed Claim is paid in full, or (ii) such other treatment as agreed to in writing by the Debtors or the Liquidating Trustee and the holder of an Allowed General Unsecured Claim (provided, however, that such treatment shall not be more favorable than the treatment provided to other holders of Class 4 Claims under the Plan).    For purposes of Distributions under the Plan, Allowed Claims in Class 4, Class 5 and Class 6 will be treated as one Class and will receive Distributions *pari passu* until all Allowed Class 4, Class 5 and Class 6 Claims have been paid in full.  If the amount of Allowed Claims in Class 4, Class 5 and Class 6 exceeds the Hercules Common Stock Value and the value of the Liquidating Trust Assets (after they have been liquidated) such that there will be insufficient assets to pay all Allowed Class 4, Class 5 and Class 6 Claims in full, then a *pro rata* Distribution of the remaining Hercules Common Stock and the Cash proceeds from the liquidation of the Liquidating Trust Assets will be made to each holder of Allowed Claims in Class 4, Class 5 and Class 6 based on such holder's percentage of the total of all Allowed Claims in Class 4, Class 5 and Class 6.

(e)    Class 5 Litigation and Other Contingent Unsecured Claims.    After Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1 – 3 have been paid in full, each holder of an Allowed Litigation and Other Contingent Unsecured Claim[2] will receive on account of the Allowed portion of its Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, and after the application of any and all insurance proceeds or other third party payments applicable to such

---

[2] Personal injury tort and wrongful death claims against the Debtors pursuant to the Jones Act and related laws shall be classified and treated as Class 5 claims.  The Debtors reserve the right to estimate and/or seek an order compelling the holders of such claims against the Debtors to mandatory mediation of such claims.  The Debtors further reserve the right to object to any proofs of claim filed by personal injury tort and wrongful death claimants and seek final orders from the Bankruptcy Court disallowing such claims as a matter of law.

Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, (A) a Distribution of Hercules Common Stock and a Fractional Cash Payment, if applicable, in an amount equal to the outstanding principal amount of such Allowed Claim, plus (B) pre-petition and post-petition interest on the Allowed portion of the Claim at either the applicable contract rate, if any, or, in the absence of a contract rate, the Federal Judgment Rate, and (C) reasonable and necessary attorney's fees but only to the extent allowed by the Court under applicable non-bankruptcy law until such Allowed Claim is paid in full, or (ii) such other treatment as agreed to in writing by the Debtors or the Liquidating Trustee and the holder of an Allowed General Unsecured Claim (provided, however, that such treatment shall not be more favorable than the treatment provided to other holders of Class 5 Claims under the Plan).  For purposes of Distributions under the Plan, Allowed Claims in Class 4, Class 5 and Class 6 will be treated as one Class and will receive Distributions *pari passu* until all Allowed Class 4, Class 5 and Class 6 Claims have been paid in full.  If the amount of Allowed Claims in Class 4, Class 5 and Class 6 exceeds the Hercules Common Stock Value and the value of the Liquidating Trust Assets (after they have been liquidated) such that there will be insufficient assets to pay all Allowed Class 4, Class 5 and Class 6 Claims in full, then a *pro rata* Distribution of the remaining Hercules Common Stock and the Cash proceeds from the liquidation of the Liquidating Trust Assets will be made to each holder of Allowed Claims in Class 4, Class 5 and Class 6 based on such holder's percentage of the total of all Allowed Claims in Class 4, Class 5 and Class 6.

        (f)      <u>Class 6 Disputed Pride Claims.</u>  Class 6 is comprised of all Claims asserted by Pride against the Debtors.  Pride has asserted various Claims against the Debtors, including certain claims under the Pride Agreements.  The Debtors assert various counterclaims against Pride.  After Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1 – 3 have been paid in full, a holder of a Disputed Pride Claim will receive on account of the Allowed portion of its Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, (A) a Distribution of Hercules Common Stock and a Fractional Cash Payment, if applicable, in an amount equal to the outstanding principal amount of such Allowed Claim, plus (B) pre-petition and post-petition interest on the Allowed portion of the Claim at either the applicable contract rate, if any, or, in the absence of a contract rate, the Federal Judgment Rate, and (C) reasonable and necessary attorney's fees but only to the extent allowed by the Court under applicable non-bankruptcy law until such Allowed Claim is paid in full, or (ii) such other treatment as agreed to in writing by the Debtors or the Liquidating Trustee and the holder of an Allowed Pride Claim (provided, however, that such treatment shall not be more favorable than the treatment provided to other holders of Class 6 Claims under the Plan).  For purposes of Distributions under the Plan, Allowed Claims in Class 4, Class 5 and Class 6 will be treated as one Class and will receive Distributions *pari passu* until all Allowed Class 4, Class 5 and Class 6 Claims have been paid in full.  If the amount of Allowed Claims in Class 4, Class 5 and Class 6 exceeds the Hercules Common Stock Value and the value of the Liquidating Trust Assets (after they have been liquidated) such that there will be insufficient assets to pay all Allowed Class 4, Class 5 and Class 6 Claims in full, then a *pro rata* Distribution of the remaining Hercules Common Stock and the Cash proceeds from the liquidation of the Liquidating Trust Assets will be made to each holder of Allowed Claims in Class 4, Class 5 and Class 6 based on such holder's percentage of the total of all Allowed Claims in Class 4, Class 5 and Class 6.

(g)    Class 7 Subordinated Claims.    Class 7 is comprised of all holders of Subordinated Claims.   After Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1 – 6 have been paid in full, each holder of an Allowed Subordinated Claim shall receive a Distribution of Hercules Common Stock and a Fractional Cash Payment, if applicable, in an amount equal to the outstanding principal amount of such Allowed Claim, plus pre-petition and post-petition interest on the Allowed portion of the Claim at the contract rate, if any, and reasonable and necessary attorney's fees and but only to the extent allowed by the Court under applicable non-bankruptcy law until such Allowed Claims are paid in full, or (ii) such other treatment as agreed to in writing by the Debtors or the Liquidating Trustee and the holder of an Allowed Subordinated Claim (provided, however, that such treatment shall not be more favorable than the treatment provided to other holders of Class 7 Claims under the Plan).   If the amount of Allowed Claims in Class 7 exceeds the Hercules Common Stock Value and the value of the Liquidating Trust Assets (after they have been liquidated) such that there will be insufficient assets to pay all Allowed Class 7 Claims in full, then a *pro rata* Distribution of the remaining Hercules Common Stock and the Cash proceeds from the liquidation of the Liquidating Trust Assets will be made to each holder of Allowed Claims in Class 7 based on such holder's percentage of the total of all Allowed Claims in Class 7.   Notwithstanding the above, however, pursuant to 11 U.S.C. § 510(b), to the extent an Allowed Subordinated Claim arises from the rescission of a purchase or sale of the common stock of Seahawk or for damages arising from the purchase or sale of the common stock of Seahawk, or for reimbursement or contribution allowed under section 502 on account of such a claim (an "Allowed Subordinated 510(b) Common Stock Claim") that claim shall have the same priority as a Class 8 Interest, shall be added to the Interests Register and shall be treated, for purposes of Distributions under the Plan, as an Interest in Seahawk.

(h)    Class 8 Interests.    Class 8 is comprised of all holders of Interests in Seahawk listed on the Interests Register prepared on the Distribution Record Date and holders, if any, of Allowed Subordinated 510(b) Common Stock Claims.   On the Effective Date all existing Interests shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, and all such shares shall immediately be delisted from all exchanges and other trading facilities.   If, as the result of Distributions made by the Debtor, the Escrow Agent on behalf of the Reorganized Debtors, or the Liquidating Trustee, all Allowed Claims are paid in full, then each holder of an Allowed Interest listed on the Interests Register, will receive, after the payment of all operating expenses and all costs associated with the administration of the Liquidating Trust Assets and all operating expenses and all costs of the Escrow Agent on behalf of the Reorganized Debtors, their *pro rata* share of (i) any remaining Cash proceeds from the liquidation of the Liquidating Trust Assets and (ii) any remaining Hercules Common Stock in proportion to each holder's percentage of ownership of Seahawk as reflected on the Interests Register, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 8 Interest.   No Distributions will be made to any holders of Allowed Class 8 Interests until after the amounts due to the holders of Allowed Claims in Classes 1 through 7 have been paid in full in accordance with the terms of the Plan.

# ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

**6.1     Classes Entitled to Vote**

Each Impaired Class of Claims shall be entitled to vote separately to accept or to reject the Plan.  Any unimpaired Class of Claims or Equity Interests shall not be entitled to vote to accept or to reject the Plan and are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**6.2     Class Acceptance Requirement.**

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  The Class of Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds of the Allowed Interests in the Class that have voted on the Plan. Only holders of Allowed Claims and Interests that are Impaired are entitled to vote as a class to accept or reject the Plan.

**6.3     Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' and the Liquidating Trustee's, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoff Claims or recoupments against Unimpaired Claims.

**6.4     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Class of Claims or Interests entitled to vote on the Plan does not vote to accept the Plan, the Debtors shall be permitted to (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code (b) withdraw the Plan or (c) amend or modify the Plan.  With respect to any Class of Claims or Interests that rejects the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1     Sale of Assets**

Pursuant to prior orders of the Bankruptcy Court, the Debtors, on April 27, 2011, sold substantially all of their assets (except for the Excluded Assets, including Retained Causes of Action) to the Purchaser pursuant to the APA.  The assets of the Debtors-in-possession now consist of the Sale Proceeds, the Excluded Assets and cash.  Pursuant to the terms of this Plan, the Sale Proceeds and the proceeds from the liquidation of the Excluded Assets will be distributed to holders of Allowed Claims and Interests.

90441977.7

**7.2     Revesting of Assets**

On the Effective Date all of the rights and assets of the Debtors and their estates owned as of the Effective Date shall revest in the Reorganized Debtors.

**7.3     Transfer of Hercules Common Stock by Escrow Agent on behalf of the Debtors**

On the Effective Date, the Debtors' interest in the Hercules Common Stock shall vest in the Reorganized Debtors, subject to the liens of Hayman Capital Master Fund, L.P. until the DIP Loans have been indefeasibly paid in full pursuant to the terms of the Wind Down DIP Financing Agreement.  The Escrow Agent shall continue to hold the shares of Hercules Common Stock on behalf of the Reorganized Debtors and, when so instructed by the Reorganized Debtors in accordance with the Plan, shall distribute shares of Hercules Common Stock on behalf of the Reorganized Debtors to creditors and stockholders in exchange for Allowed Claims against the Debtors, Allowed Interests in the Debtors, or Allowed Administrative Expenses, including the claim of Hayman Capital Master Fund, L.P., in the Debtors' bankruptcy cases.

**7.4     Substantive Consolidation**

**1.     Substantive Consolidation of the Debtors**

The Debtors and their respective Estates shall be substantively consolidated for the purposes of Distributions under the Plan.  As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of the Debtors; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against all of the Debtors; (d) any Interest in any of the Debtors will be deemed an Interest in each of the Debtors; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.  The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtors are subject in the absence of substantive consolidation under this Plan; provided, however, this substantive consolidation shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any one of the Debtors concerning the obligations of any other of the Debtors shall be discharged, released, and without any further force or effect.  Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to only a single satisfaction of such Claims or Interests.

2.        **Order Granting Substantive Consolidation**

This Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases, as described and to the extent set forth in this Section 7.4.  Unless an objection to such substantive consolidation is made in writing by any Creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court.  However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order.  In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

**7.5     Establishment of the Liquidating Trust**

On the Effective Date, the Liquidating Trust will be established pursuant to the Plan and the Liquidating Trust Assets will be transferred by the Reorganized Debtors to the Liquidating Trust.  The Liquidating Trustee will be appointed as trustee of the Liquidating Trust with all powers set forth in the Liquidating Trust Agreement.

On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee shall transfer sufficient Liquidating Trust Assets to a segregated account to establish the Administrative Claims Reserve for the benefit of the holders of Allowed Administrative Claims, wherein the Liquidating Trustee shall deposit Cash in the amount necessary to pay such Allowed Administrative Claims in full upon entry of a Final Order.  The Allowed Administrative Claim of Hayman Capital Master Fund, L.P. shall be paid by the Reorganized Debtors, not later than two (2) business days after the Effective Date, by directing the Escrow Agent to distribute a number of shares of Hercules Common Stock determined in accordance with the terms of the Wind Down DIP Financing Agreement to Hayman Capital Master Fund, L.P. in exchange for such claim.

**7.6     Corporate Existence**

1.        **Corporate Existence**

After the Effective Date, each Reorganized Debtor shall continue to maintain its corporate existence solely for the purpose of implementing the Plan and until Distributions by the Reorganized Debtors in cooperation with the Escrow Agent of all Hercules Common Stock to creditors and interest holders in exchange for their Claims and Interests have been made.  Thereafter, the Reorganized Debtors shall be dissolved and shall, in accordance with applicable non-bankruptcy law, file with the appropriate governmental or regulatory authorities any necessary certificates of dissolution.

2.        **Other General Corporate Matters**

On or before the Effective Date, the Debtors and the Liquidating Trustee may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the sale and the Plan, including: (1) the execution and delivery of appropriate agreements or other documents that are consistent

with the terms of the sale and the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the sale and the Plan; (3) the filing of appropriate certificates with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Debtors determine is necessary or appropriate.

**7.7   Cancellation of Existing Interests in Seahawk**

On the Effective Date, all Interests in Seahawk shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, except as otherwise set forth in this Plan and all such shares shall immediately be delisted from all exchanges and other trading facilities.

**7.8   Issuance of New Shares in Seahawk**

On the Effective Date, after the Interests in Seahawk are cancelled, Reorganized Seahawk shall issue 100 shares of New Common Stock of Reorganized Seahawk to the Liquidating Trust to be held and voted in accordance with the terms and provisions of the Plan.  The Plan Agent shall be the sole officer and director of the Reorganized Debtors and shall take any and all actions in accordance with the Plan in order to implement the terms and provisions of the Plan which the Plan requires be carried out by the Reorganized Debtors.

**7.9   Liquidating Trustee's Ability to Operate**

From and after the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and settle and compromise Claims or Interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court, pay fees incurred after the Effective Date for professional fees and expenses reasonably and necessarily incurred in carrying out his duties.

**7.10   Authority**

Until the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Debtors, their Assets and their operations.  Following the Closing, the Bankruptcy Court shall retain jurisdiction over the Debtors and the Purchaser for the purposes of interpreting the terms and provisions of the APA and for determination of any breach(es) thereunder.

**7.11   Employee Benefits**

1.   **Generally**

On the Effective Date, all Benefit Plans will be rejected and terminated if not earlier terminated or assumed by a Debtor before the Confirmation Date.  Any such terminations will be completed according to the terms and conditions of each Benefit Plan and effected in conformity

with all statutory and regulatory requirements including any applicable notice provisions. Any undistributed, vested benefits of the terminated Benefit Plans will be distributed to the participants as provided by statute, the applicable regulations, and the Benefit Plans' provisions.

2.     **Regulatory Approvals**

In order to ensure that the Benefit Plans' terminations comply with the terms of the Benefit Plans, applicable statutes, and regulations, the Debtors or the Reorganized Debtors will obtain any necessary approvals of the relevant regulatory agencies, such as the Pension Benefit Guaranty Corporation, the IRS, and the U.S. Department of Labor, in respect of such terminations. The Bankruptcy Court will retain jurisdiction to hear and determine any disputes relating to the termination of any Benefit Plans.

3.     **Retirees**

If any Claim of a retiree against a Debtor gives a Debtor an indemnification claim under an agreement between a Debtor and any Person, the Reorganized Debtors will, if necessary or appropriate, assign the indemnification claim to the retiree.  Notwithstanding anything in this article or elsewhere in this Plan to the contrary, Reorganized Debtors will continue to honor all obligations of the Debtors owed to any retiree under any Benefit Plan as of the Confirmation Date solely to the extent, and for the duration of the period, the Debtor is contractually or legally obligated to provide those benefits, subject to any rights of the Debtors under applicable law.

**7.12    Exemption from Certain Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from or by the Reorganized Debtors or the Liquidating Trust or to any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**7.13    Exemption from Securities Laws**

Hercules does not intend to file a registration statement under the Securities Act or any state securities laws relating to the Distribution by the Reorganized Debtors of the Hercules Common Stock to holders of Allowed Claims against and Interests in the Debtors pursuant to the Plan.

The Debtors believe that the provisions of section 1145(a)(l) of the Bankruptcy Code exempt the distribution of the Hercules Common Stock to holders of Claims and Equity Interests on and after the Effective Date from federal and state securities registration requirements.

The Debtors and Hercules believe that Hercules qualifies as a successor to the Debtors under the Plan for purposes of section 1145 and that the distribution of the Hercules Common Stock to holders of Allowed Claims and Interests against the Debtors also satisfies the other

90441977.7

requirements of section 1145(a)(l) of the Bankruptcy Code and is therefore exempt from registration under the Securities Act and state securities laws.

In connection with the confirmation of the Plan, the Debtors currently intend to seek an order from the Bankruptcy Court to the effect that the Distribution of the Hercules Common Stock is exempt from registration under the Securities Act and state securities laws under section 1145(a)(l) of the Bankruptcy Code

In general, all re-sales and subsequent transactions involving Hercules Common Stock after the Distributions will be exempt from registration under the Securities Act under section 4(1) of the Securities Act, unless the holder is deemed to be an "underwriter" under section 1145(b) of the Bankruptcy Code with respect to such securities, an "affiliate" of the issuer of such securities or a "dealer."  However, the Debtors recommend that any Person who receives Hercules Common Stock consult his or her own counsel concerning whether he or she may freely trade such securities.

**7.14    Preservation of Rights of Action; Settlements**

1.    **Retention of Causes of Action**

Except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are Purchased Assets, are otherwise dealt with in the Plan, or are expressly and specifically released in connection with the Plan, the Confirmation Order or any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code:  (1) any and all rights, claims, Causes of Action (including the Avoidance Actions), the Pride Causes of Action, defenses, and counterclaims of, or accruing to, the Debtors or their Estates shall be retained by and vest in the Reorganized Debtors and be transferred to the Liquidating Trust (to the extent that they constitute Excluded Assets) whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, Causes of Action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) the Reorganized Debtors and the Liquidating Trustee, as applicable, do not waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, claim, Cause of Action, defense, or counterclaim is currently known to the Debtors, and (c) whether or not a party in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN

90441977.7

THE PLAN, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING TRUSTEE, TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE LIQUIDATING TRUSTEE, AS APPLICABLE, HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.  The Excluded Assets, including the Retained Causes of Action, will be transferred to the Liquidating Trust on the Effective Date.

2.    **Retention of Subsequent Causes of Action**

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop the Debtors, the Reorganized Debtors, the Liquidating Trustee or their privies, as successors in interest to the Debtors and their privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in these Chapter 11 Cases, the present litigation, and those which may be asserted in any subsequent litigation brought by any Interested Party. Moreover, the failure to commence any of the Retained Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel.

**ARTICLE VIII**
**TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS**

**8.1    Assumption and Rejection of Executory Contracts and Unexpired Leases**

On or before the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected by the Debtors unless such executory contract or unexpired lease:  (a) is expressly being assumed (or assumed and assigned) pursuant to the Plan or is identified on Plan Schedule II as an Assumed Contract pursuant to the Plan; (b) is the subject of a motion to assume pursuant to section 365(a) of the Bankruptcy Code filed on or before the Confirmation Hearing; or (c) has been previously assumed, assumed and assigned, or rejected.

**8.2    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Liquidating Trustee expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued maintenance obligations on goods or services previously purchased by the Debtors from counterparties to rejected or repudiated executory contracts or unexpired leases.  Additionally, the Reorganized

Debtors and the Liquidating Trustee, as may be applicable, reserve the right to collect any amounts owed to the Debtors under such executory contracts or unexpired leases.

### 8.3    Contracts and Leases After Petition Date

Executory contracts and leases with third parties entered into after the Petition Date by any of the Debtors, and any executory contracts and unexpired leases assumed by any Debtor during the Chapter 11 Cases, may be performed by the Reorganized Debtors or the Liquidating Trustee, as the case may be, in the ordinary course of business.

### 8.4    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is, in fact, an executory contract or unexpired lease or that any of the Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is executory or is expired as of the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### 8.5    Additional Cure Provisions

Except as otherwise provided under the Plan, any monetary amounts that must be paid as a "cure" requirement for assumption and/or assignment of any executory contract or unexpired lease by any of the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code, (i) shall be effected or otherwise satisfied by prompt payment of such monetary amount in Cash as contemplated by section 365(b)(1)(A) of the Bankruptcy Code, or (ii) shall otherwise be satisfied through a written agreement between the parties.  If there is any dispute regarding (a) the timing of any payment required in order to meet the promptness requirements of 365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtors', the Liquidating Trustee's or any assignees' ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, the Cure will occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute.

### 8.6    Disputed Cure Reserve

A Disputed Cure Reserve shall be established for the purpose of effectuating Distributions to parties whose Cure Claims are subject to dispute.  The Disputed Cure Reserve shall be equal to 100% of the (a) amount of the Disputed Cure Claim or (b) such estimated amount as approved in an order by the Bankruptcy Court.  The Debtors or the Liquidating Trustee may request estimation for any Cure Claim.

### 8.7    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any proofs of claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan, or otherwise, must be filed with the Claims, Notice and Balloting

Agent no later than thirty (30) days after the later of (a) the Effective Date or (b) entry of an order of the Bankruptcy Court approving the rejection.

Any proofs of claim arising from the rejection of any of the Debtors' executory contracts or unexpired leases that are not timely filed in accordance with this Section shall (1) be disallowed automatically, (2) be forever barred from assertion, (3) shall not be enforceable against any of the Debtors or the Liquidating Trust, (4) be deemed fully satisfied, released, discharged, and expunged, notwithstanding anything in the Schedules or in any proof of claim to the contrary.

Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as a General Unsecured Claims; provided, however, if the holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, the Allowed Claim for rejection damages shall be treated as an Allowed Other Secured Claim to the extent of the value of such holder's interest in the Collateral, with the unsecured portion, if any, treated as an Allowed General Unsecured Claim.

Any claim based upon the rejection of an unexpired lease of real property shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  Nothing contained herein shall be deemed an admission by the Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors of any objections to such Claim if asserted.

### 8.8    Survival of Indemnification and Corporation Contribution

Except as otherwise specifically provided herein or in the Plan, any obligations or rights of the Debtors to indemnify, defend or advance expenses to its present and former directors, officers, employees, agents or representatives under its certificate of incorporation, bylaws, policies, any agreement or under state law, or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall survive confirmation of the Plan and shall continue as obligations of the Reorganized Debtors until they are dissolved pursuant to applicable state law and the provisions of the Plan.   Allowed Claims against the Debtors for pre-petition indemnifications shall be classified under the Plan as General Unsecured Claims and are payable as Class 4 Allowed General Unsecured Claims.

### ARTICLE IX
### PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1    Distributions for Claims and Interests Allowed as of Effective Date

Subject to establishing the reserves required herein and except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, the Liquidating Trustee and the Reorganized Debtors, as soon as practicable after the Effective Date, shall make an initial Distribution to (i) holders of Interests as reflected on the Interests Register, and (ii) holders of Claims that are Allowed Claims as of the Effective Date.  Subsequent Distribution Date(s) shall be determined and Distributions made as set forth herein and in the Liquidating Trust Agreement.

90441977.7

**9.2     Disbursements to Classes of Claims and Interests**

On the Effective Date, the Reorganized Debtors shall deliver all of the Liquidating Trust Assets to the Liquidating Trust for the beneficial interest of holders of Allowed Claims and Interests under the Plan.  Additionally, on the Effective Date, the Escrow Agent shall continue to hold the Hercules Common Stock on behalf of the Reorganized Debtors for later Distribution to holders of Allowed Claims and Interests.  Thereafter, (i) the Liquidating Trustee shall make all Distributions of Cash to the holders of Allowed Claims and Interests, as applicable, in accordance with the provisions of this Plan and the Liquidating Trust Agreement and (ii) the Escrow Agent, on behalf of the Reorganized Debtors, shall make all Distributions of Hercules Common Stock to the holders of Allowed Claims and Interests, as applicable, in accordance with the provisions of this Plan.

**9.3     Record Date for Distributions to Holders of Claims**

As of the close of business on the Distribution Record Date, the Claims Register will be closed.  Except as otherwise permitted by the Plan or by final order of the Bankruptcy Court, after the Distribution Record Date, there shall be no further additions to the Claims Register or changes in the holder of record of any Claim.  Except as to Claims filed or determined after the Confirmation Date that are permitted by the Plan, the Reorganized Debtors and the Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the Claims Register as of the close of business on the Distribution Record Date for Distributions under the Plan.

**9.4     Record Date for Distributions to Holders of Interests**

As of the close of business on the Distribution Record Date, the Interests Register will be prepared.  Except as otherwise permitted by the Plan or applicable non-bankruptcy law, after the Distribution Record Date, there shall be no further changes in the holders of record of any Interest.  The Reorganized Debtors and the Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of an Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those holders of record stated on the Interests Register for distributions under the Plan.

**9.5     Valuation of Hercules Common Stock for Purposes of Distributions by the Escrow Agent on Behalf of the Reorganized Debtors**

1.     **Distributions of Hercules Common Stock to Holders of Allowed Claims**

When shares of Hercules Common Stock are to be distributed under the Plan in exchange for Claims against the Debtors or Administrative Claims in the bankruptcy cases of the Debtors, the number of shares to be distributed to a holder of such an Allowed Claim shall be calculated in the following manner, excluding the Administrative Claim of Hayman Capital Master Fund, L.P., which claim will be paid in Hercules Common Stock pursuant to the terms of the DIP Loan.  Five business days in advance of any Distribution Date set by the Plan or later declared by

the Reorganized Debtors or the Liquidating Trustee (each such date a "Hercules Common Stock Value Date"), the Hercules Common Stock Value shall be calculated by determining the average closing price of the common stock of Hercules as quoted on the NASDAQ Global Select Market exchange[3] for the twenty (20) trading days preceding such Hercules Common Stock Value Date. The total dollar amount of any Allowed Claim to be paid in Hercules Common Stock shall be divided by the Hercules Common Stock Value, that figure shall be rounded down to the nearest whole share, and the Reorganized Debtors shall direct the Escrow Agent to distribute that number of shares to the holder of the Allowed Claim on behalf of the Reorganized Debtors. No fractional shares of Hercules Common Stock will be distributed.

<blockquote>2.    <strong>Distributions of Hercules Common Stock to Holders of Allowed Interests</strong></blockquote>

When shares of Hercules Common Stock are to be distributed under the Plan in exchange for Allowed Interests in the Debtors, the number of shares to be distributed to a holder of such an Interest, shall be calculated in the following manner. After the Liquidating Trustee and the Escrow Agent, on behalf of the Reorganized Debtors, have made distributions of Hercules Common Stock and Fractional Cash Payments to holders of Allowed Claims such that all Allowed Claims have been paid in full, the remaining shares of Hercules Common Stock shall be distributed by the Escrow Agent, on behalf of the Reorganized Debtors, *pro rata* to the holders of Allowed Interests in proportion to each holder's percentage of ownership of Seahawk as reflected on the Interests Register.

**9.6    Distributions of Cash by the Liquidating Trustee**

Distributions of Cash and Fractional Cash Payments pursuant to the Plan, shall be made by the Liquidating Trustee.

<blockquote>1.    <strong>Distributions of Cash to Holders of Allowed Claims</strong></blockquote>

All Claims that must be paid in Cash will be paid by the Liquidating Trustee out of the Liquidating Trust Assets on the later of the Effective Date, the date the Claim becomes an Allowed Claim or as otherwise provided in the Plan. Payment of an Allowed Claim that the Plan provides may be paid with Hercules Common Stock and a Fractional Cash Payment, if applicable, shall first be paid by the distribution of shares of Hercules Common Stock by the Escrow Agent, on behalf of the Reorganized Debtors, and thereafter, by the payment in Cash by the Liquidating Trustee of a Fractional Cash Payment equal to any incremental amount still owed on an Allowed Claim, if any, after the Distribution of Hercules Common Stock to the holder of an Allowed Claim, to the extent required in order to pay the Allowed Claim in full.

---

[3] Or, on such other exchange or over-the-counter market on which Hercules' common stock is traded on or before a Distribution Date. The Bankruptcy Court shall retain jurisdiction to determine any dispute over the valuation of the Hercules Common Stock.

2.   **Distributions of Cash to Holders of Allowed Interests**

After (i) the Liquidating Trustee and the Escrow Agent, on behalf of the Reorganized Debtors, have made Distributions of Hercules Common Stock and Fractional Cash Payments, if applicable, to holders of Allowed Claims such that all Allowed Claims have been paid in full, (ii) the Liquidating Trustee has liquidated or abandoned the Liquidating Trust Assets and all Hercules Common Stock has been distributed by the Escrow Agent on behalf of the Reorganized Debtors, and (iii) all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid, the Liquidating Trustee shall make a *pro rata* Distribution of any remaining Cash to the holders of Allowed Interests in proportion to each holder's percentage of ownership of Seahawk as reflected on the Interests Register.

**9.7   Means of Cash Payment**

Any payment of Cash made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement between the parties, in a commercially reasonable manner as the payor determines in its sole discretion.

**9.8   Delivery of Distributions**

Except as otherwise provided in the Plan, Distributions of Cash or Hercules Common Stock to record holders of Allowed Claims and Allowed Interests shall be made by the Escrow Agent, on behalf of the Reorganized Debtors, or the Liquidating Trustee, as the case may be, (a) at the addresses set forth on the Proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Reorganized Debtors or the Liquidating Trustee have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors, or the Liquidating Trustee, as applicable, after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Reorganized Debtors, or the Liquidating Trustee, as applicable, have not received a written notice of a change of address, (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) in the case of holders of Allowed Interests, to the holder at the address set forth on the Interests Register.  Distributions to holders of Allowed Interests shall be deemed to have been made when delivered to the record holder of said interest without regard to whether the Allowed Interest is held directly by the beneficial owner or by the beneficial owner's agent in a "street name."  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtors or the Liquidating Trustee, as applicable, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable Distributions made by the Reorganized Debtors, the Liquidating Trustee or the indenture trustee, agent, or servicer, shall be returned to such party until such distributions are claimed.  All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all Unclaimed Property shall be free of any restrictions thereon, except as provided in the Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged and

forever barred, notwithstanding any federal or state escheat laws to the contrary and all Unclaimed Property otherwise attributable to that Claim or Interest shall be held by the Reorganized Debtors or the Liquidating Trust as the case may be for re-distribution to other holders of Allowed Claims or Allowed Interests.  To the extent there remains, after Distributions by the Reorganized Debtors and/or the Liquidating Trustee and the payment of all expenses of administration, property of *de minimus* value such that the expense of distributing such property would exceed the reasonable benefit to the recipients, the Reorganized Debtors and/or the Liquidating Trustee shall Distribute such property as set forth in the Liquidating Trust Agreement.

### 9.9    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid by Third Parties

The Reorganized Debtors or the Liquidating Trustee, as applicable, shall reduce a Claim, and such Claim shall be disallowed without the necessity of a Claim objection being filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full or in part on account of such Claim from a party that is not one of the Reorganized Debtors or the Liquidating Trustee.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not one of the Debtors or the Liquidating Trustee on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors or the Liquidating Trustee, as applicable, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtors or the Liquidating Trustee, as applicable, annualized interest at the Plan Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid in full.

#### 2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any policies of insurance until the holder of such Allowed Claim has exhausted all remedies with respect to any such insurance policy.  To the extent that one or more of the applicable insurers agrees to satisfy in full a Claim (if, and to the extent, adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 9.10    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan or Confirmation Order shall constitute a rejection of any contract for insurance or a waiver of any rights of the Debtors or Reorganized Debtors under any insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of

Action that the Debtors or the Liquidating Trustee or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

### 9.11    Withholding and Reporting Requirements

In connection with the Plan and all distributions made hereunder, the Reorganized Debtors and the Liquidating Trustee, as applicable, shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtors and the Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### ARTICLE X
### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
### AND UNLIQUIDATED CLAIMS

### 10.1    Expunging of Certain Claims

All Claims marked or otherwise designated as "contingent," "unliquidated" or "disputed" on the Debtors' Schedules and for which no proof of claim has been timely filed, shall be deemed Disallowed Claims and such claims shall be expunged as of the Confirmation Date without the necessity of filing a claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

### 10.2    Objections to Claims

The Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims after the Effective Date.  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court.

Objections to Claims must be filed before the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion without notice or hearing.

### 10.3    Estimation of Claims

The Debtors or the Liquidating Trustee (or their authorized representatives), as applicable, may, at any time, request that the Bankruptcy Court estimate any disputed, contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether a previous objection has been made to such Claim or whether the Bankruptcy Court has previously ruled on any objection, and the Bankruptcy Court retains jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection.

In the event the Bankruptcy Court estimates any disputed, contingent or unliquidated Claim, the estimated amount of such Claim will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

**10.4    Distributions Pending Allowance of Disputed Claim**

Subject to any requirement that a Claimant provide a release under this Plan, within ten (10) days of filing an objection to a Claim, the Liquidating Trustee shall pay the undisputed portion of such Disputed Claim plus interest, if any, owed under applicable non-bankruptcy law; *provided, however*, such Distribution shall not be made any earlier than fourteen (14) days after the Effective Date.

**10.5    Disputed Claims Reserves**

One or more Disputed Claims Reserves shall be established for the purpose of effectuating distributions to holders of Disputed Claims, including by way of illustration but not limitation, Pride, pending the allowance or disallowance of such Claims in accordance with the Plan.  The applicable Disputed Claims Reserves shall be withheld from the property to be distributed to particular classes under the Plan pending the resolution of Disputed Claims.

The amount to be set aside in the Disputed Claims Reserves for each Disputed Claim shall be equal to the lesser of (a) the full amount of the Disputed Claim as filed or listed by the Debtors in their schedules of assets and liabilities, (b) [100%] of the amount estimated by an order of the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or (c) the amount agreed to by the holder of a Disputed Claim and the Debtors, the Reorganized Debtors or the Liquidating Trustee.

**10.6    Late Filed Claims**

Claims filed after the applicable Bar Date shall not be included on the Claims Register unless the Bankruptcy Court, after notice and hearing, enters a final order authorizing the claimant to file the Claim after the applicable Bar Date.  The Debtors or Liquidating Trustee, as the case may be, may object to such a Claim by the later of the Claims Objection Deadline or thirty (30) days after the entry of an order authorizing such a Claim to be filed after the applicable Bar Date.  Any late filed Claim so authorized shall only be entitled to Distributions under the Plan if it becomes an Allowed Claim.

**10.7    Distributions After Allowance**

Payments and Distributions shall be made to each holder of a Disputed Claim to the extent that the Disputed Claim becomes an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs.

Within thirty (30) days after entry of a Final Order of the Bankruptcy Court that allows some or all of a Disputed Claim, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall distribute to the holder of such Allowed Claim the distribution (if any) that

90441977.7

would have been made to such holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the Cash or Hercules Common Stock that was reserved on account of such Disputed Claim shall be subject to re-distribution to other holders of Allowed Claims and Interests in accordance with the provisions of the Plan.

### 10.8    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and any distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors or the Liquidating Trustee (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan hereby preserves the right of the Debtors and the Liquidating Trustee, as applicable, to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

## ARTICLE XI
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

### 11.1    Professional Fee Claims

Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after the Professional Fee Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Fee Claim and the Reorganized Debtors or Liquidating Trustee may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

On the Effective Date, the Liquidating Trustee shall fund an escrow account in an amount equal to the aggregate amount of outstanding fee applications not ruled upon by the Bankruptcy Court as of the Effective Date, plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed as of the Effective Date.  Such escrow account shall be used to pay the remaining Professional Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court.  When all Professional Fee Claims have been paid in full, amounts remaining in such escrow account, if any, shall be transferred into the general funds of the Liquidating Trust to be used in accordance with the Liquidating Trust Agreement.

Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Reorganized Debtors and the Liquidating Trustee its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within 30 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or

other entities for compensation or reimbursement of expenses must be filed and served on the requesting Professional no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 11.2    Administrative Claims

The Confirmation Order will establish an Administrative Claims Bar Date for filing of all Administrative Claims (but not including Professional Fee Claims or claims for the expenses of the members of any Committee or Administrative Claims), which date will be thirty (30) days after the Effective Date.  Holders of Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities, must submit a requests for payment of such Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from recovering on account of such Claim.  A notice prepared by the Debtors will set forth such date and constitute good and sufficient notice of the Administrative Claims Bar Date.  The Liquidating Trustee and holders of Allowed Claims and Interests shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.  Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code are required to file proof of such a claim on or before the Bar Date.

### 11.3    Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the Debtors' businesses (other than Claims of Governmental Units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims.  Such Administrative Claims, unless objected to, shall be paid in Cash in the ordinary course of business, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

### 11.4    Administrative Tax Claims

All Administrative Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, will be paid on the later of (i) thirty (30) days following the Effective Date; (ii) thirty (30) days following the entry of a Final Order of the Bankruptcy Court allowing such Administrative Tax Claim or (iii) pursuant to the provisions of, and at the time provided in section 505(b)(2) of the Bankruptcy Code.

## ARTICLE XII
## LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

### 12.1    Generally

On the Effective Date the Liquidating Trust will be created and, except as otherwise provided in the Plan, the Liquidating Trust Assets shall be transferred to and vest in the Liquidating Trust to be administered by the Liquidating Trustee for the benefit of the beneficiaries of the Liquidating Trust.  The beneficiaries of the Liquidating Trust are the holders of Allowed Claims against the Debtors and Allowed Interests in Seahawk.

### 12.2    Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement on behalf of the Liquidating Trust.  The Reorganized Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust.

### 12.3    Purpose of the Liquidating Trust

The Liquidating Trust shall exist after the Effective Date, with all the powers of a trust under applicable Texas law.   The Liquidating Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

On and after the Effective Date, the Liquidating Trust will own the Liquidating Trust Assets and shall act as necessary to liquidate the Liquidating Trust Assets and to enhance or preserve the value of the Liquidating Trust Assets.

### 12.4    Appointment and Powers of the Liquidating Trust Board

Prior to the Effective Date, three (3) individuals shall be selected to serve on the Liquidating Trust Board in the following manner:  (i) if, on the Confirmation Date, the Cash and the Hercules Common Stock (based on the Hercules Common Stock Value calculated as of the Confirmation Date) have a value sufficient to pay all Allowed Claims in full and provide for a return to holders of Interests, then one member of the Liquidating Trust Board shall be selected by the Creditors' Committee and the remaining two members shall be selected by the Equity Committee and after the earlier of the payment of all Allowed Claims in full or the establishment of sufficient reserves to pay off all Allowed and Disputed Claims in full, the Liquidating Trust Board member appointed by the Creditors' Committee shall resign and a replacement member shall be appointed by the remaining two members of the Liquidating Trust Board; (ii) if, on the Confirmation Date, the Cash and the Hercules Common Stock (based on the Hercules Common Stock Value calculated as of the Confirmation Date) have a value that is insufficient to pay all Allowed Claims in full and provide for a return to holders of Interests, then all three members of the Liquidating Trust Board shall be selected by the Creditors' Committee.  Any action which is required or permitted to be taken by the Liquidating Trust Board pursuant to the Liquidating

Trust Agreement shall be taken by the vote of a majority of the members of the Liquidating Trust Board.

The Liquidating Trustee shall be required by the Liquidating Trust Agreement to consult with and report to the Liquidating Trust Board.  However, the Liquidating Trustee shall not be required to act upon any direction or recommendation given by the Liquidating Trust Board, except with respect to (i) the Liquidating Trust's selection of counsel to prosecute the Pride Causes of Action and Causes of Action belonging to the Estates arising out of the Macondo Well blowout described in the Disclosure Statement, (ii) any settlement or resolution of causes or action against insiders or allowance of claims of insiders, or (iii) any settlement of causes of action or allowance of claims where the amount in controversy exceeds [$250,000], and (iv) to the extent the Liquidating Trust Board exercises its right to replace the Liquidating Trustee.

### 12.5     Appointment and Powers of the Liquidating Trustee

Prior to the Confirmation Hearing, the Debtors will identify the individual or entity proposed to act as the initial Liquidating Trustee under the Liquidating Trust.  The Equity Committee, after consultation with the Debtors and Creditors' Committee, will select the Liquidating Trustee, subject to the Debtors' and Creditors' Committee's right to object to the individual or entity proposed by the Equity Committee with such objection to be determined by the Bankruptcy Court.

The Trustee will serve from and after the Effective Date until a successor is duly elected or appointed by the Liquidating Trust Board.  The Liquidating Trustee shall receive title to the Liquidating Trust Assets transferred by the Reorganized Debtors to the Liquidating Trust on the Effective Date.

Pursuant to the Liquidating Trust Agreement, the Liquidating Trustee shall have the power and authority to perform the following acts, among others:

(a)     accept the Liquidating Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(b)     fund or arrange for the funding of the Plan and administration of the Reorganized Debtors as may be necessary to pay obligations to holders of Allowed Claims and Allowed Interests under the Plan;

(c)     act as the Plan Agent in respect of the Reorganized Debtors;

(d)     file, settle, compromise, withdraw, or litigate to judgment any objections to Claims;

(e)     file, settle, compromise, withdraw, or litigate to judgment any motions, applications, adversary proceedings, contested matters and other litigation matters, whether filed or commenced by the Debtors after the Petition Date or by the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtors to recover property in Avoidance Actions, or the prosecution of any Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

90441977.7

-36-

(f) inform the Reorganized Debtors when Claims and Interests have been Allowed so that the Escrow Agent, acting on behalf of the Reorganized Debtors, may make Distributions of Hercules Common Stock to the holders of such Allowed Claims and Interests;

(g) pay and discharge any costs, expenses, fees or obligations of the Escrow Agent incurred by the Reorganized Debtors in connection with the Distributions of Hercules Common Stock in accordance with the Plan;

(h) distribute Liquidating Trust Assets to Beneficiaries, as defined in the Liquidating Trust Agreement in accordance with the terms of the Liquidating Trust Agreement;

(i) perfect and secure his/her right, title and interest to any and all Liquidating Trust Assets;

(j) reduce all of the Liquidating Trust Assets to his possession and conserve, protect, collect and liquidate or otherwise convert all Liquidating Trust Assets, with the exception of the New Common Stock of Reorganized Seahawk, into Cash;

(k) distribute the net proceeds of Liquidating Trust Assets as specified herein;

(l) release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets;

(m) pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidating Trust Assets, and to protect the Liquidating Trust and the Liquidating Trustee from liability;

(n) deposit Liquidating Trust funds and draw checks and make disbursements thereof;

(o) employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Liquidating Trustee may deem necessary. The Liquidating Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice. The fees and expenses of all such professionals shall be charges as expenses of the Liquidating Trust and shall be paid upon approval of the Liquidating Trustee;

(p) employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Liquidating Trust Assets;

(q) exercise any and all powers granted the Liquidating Trustee by any agreements or by Texas common law or any statute that serves to increase the extent of the powers granted to the Liquidating Trustee hereunder;

(r) take any action required or permitted by the Plan or the Liquidating Trust Agreement;

(s) execute obligations, whether negotiable or non-negotiable;

90441977.7

       (t)     sue and be sued;

       (u)     settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Liquidating Trust;

       (v)     waive or release rights of any kind;

       (w)     appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

       (x)     negotiate, renegotiate or enter into any contract or agreements binding the Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Liquidating Trustee to be advisable in connection with the performance of his/her duties;

       (y)     borrow such sums of money at any time and from time to time for such periods of time upon such terms and conditions from such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and secure such loans with any of the Trust Assets, so long as the terms of any such borrowing provide that no recourse shall be had to the Liquidating Trustee, or any Reorganized Debtors or Beneficiary on any such debt; and

       (z)     in general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

### 12.6    Payment of Expenses Incurred by the Liquidating Trust

The Liquidating Trustee, including any successor Liquidating Trustee, may commit the Liquidating Trust to pay the Liquidating Trustee, from the Liquidating Trust Assets, reasonable compensation, as approved by the Liquidating Trust Board, for its services rendered and reimbursement of expenses incurred. Professionals retained by the Liquidating Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred. The payment of the fees and expense of the professionals retained by the Liquidating Trust shall be made in the ordinary course of business from the Liquidating Trust Assets.

### 12.7    Exculpation; Indemnification

The Liquidating Trustee shall not be liable for actions taken or omitted in his capacity as trustee of the Liquidating Trust, except those acts arising out of fraud, willful misconduct, or gross negligence. The Liquidating Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his actions or inactions in his capacity as Liquidating Trustee, except for any actions or inactions involving his own fraud, willful misconduct, or gross negligence. Any indemnification claim of the Liquidating Trustee shall be satisfied from the assets of the Liquidating Trust.

90441977.7

The Liquidating Trust shall, to the fullest extent permitted by Texas law, indemnify and hold harmless the Liquidating Trustee, the Liquidating Trust Board, and agents, representatives, attorneys, professionals and employees of the Liquidating Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorney's fees and costs, arising out of or due to their actions or omissions with respect to the Liquidating Trust or the implementation or administration of the Liquidating Trust Agreement, if the Indemnified Party acted in good faith and in a manner reasonably believed to be in (or not opposed to) the best interests of the Liquidating Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

### 12.8     Retention of Funds Prior to Distribution

The Liquidating Trustee shall collect all Cash constituting Liquidating Trust Assets and, pending distribution, shall deposit such Cash with a FDIC-insured financial institution that has banking services.  The Liquidating Trustee will deposit Cash so that it is adequately insured. Notwithstanding the foregoing, the Liquidating Trustee may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the United States Trustee's Office, provided that the Liquidating Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills.  The Liquidating Trustee shall hold all such funds until they are distributed pursuant to the Plan.

The Liquidating Trustee will not be required to post a bond or be audited or monitored except as otherwise expressly provide in the Liquidating Trust Agreement.  Forty-five (45) days after the end of each calendar year of the Liquidating Trust and forty-five (45) days after termination of the Liquidating Trust, the Trustee will file with the Bankruptcy Court an unaudited written report and account showing (i) the assets and liabilities of the Liquidating Trust at the end of such year or upon termination; (ii) any changes in the Liquidating Trust Assets that have not been previously reported, and (iii) any material action taken by the Liquidating Trustee in the performance of his duties under the Liquidating Trust Agreement that has not been previously reported.

### 12.9     Distributions to Liquidating Trust Beneficiaries

The Liquidating Trustee, within a reasonable period after receipt of Available Cash sufficient to make a Distribution, may distribute such Available Cash, to the beneficiaries of the Liquidating Trust, after deducting any costs and expenses associated with operation of the Liquidating Trust, as provided by this Plan.

### 12.10   Representation of Liquidating Trust

The professionals employed by the Liquidating Trust are expressly authorized to simultaneously represent any party on any matter not directly adverse to the Liquidating Trust.

### 12.11   Termination of the Liquidating Trust

The Liquidating Trust shall remain and continue in full force and effect until the earlier of five (5) years from the Effective Date or the date on which (1) all Liquidating Trust Assets have been distributed or abandoned and all Hercules Common Stock has been distributed by the Escrow Agent on behalf of the Reorganized Debtors, (2) all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid, and (3) all remaining income and proceeds of the Liquidating Trust Assets have been distributed in accordance with the provisions of the Plan; provided, however, that if the complete liquidation of the Liquidating Trust Assets and satisfaction of all remaining obligations, liabilities and expenses of the Liquidating Trust pursuant to the Plan has not been completed prior to five (5) years from the Effective Date, the Liquidating Trustee may, for good cause shown, seek the approval of the Bankruptcy Court for an extension of the termination date of the Liquidating Trust for a specified period of time in order to complete the purpose of the Liquidating Trust as set forth in the Plan and the Liquidating Trust Agreement.

On the termination date of the Liquidating Trust, the Liquidating Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination.  Upon termination and complete satisfaction of its duties under the Liquidating Trust Agreement, the Liquidating Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Liquidating Trustee.

### 12.12   Resignation of the Liquidating Trustee

The Liquidating Trustee may resign at any time by giving written notice to the Liquidating Trust Board and such resignation shall be effective upon the date provided in such notice.  In the case of the resignation of the Liquidating Trustee, a successor Liquidating Trustee shall thereafter be appointed by the Liquidating Trust Board, whereupon such resigning Liquidating Trustee shall convey, transfer and set over to such successor Liquidating Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then unconveyed or otherwise undisposed of and all other assets then in his possession the Liquidating Trust Agreement.  Without further act, deed or conveyance, a successor Liquidating Trustee shall be vested with all the rights, privileges, powers and duties of the Liquidating Trustee, including the authority to act as the Plan Agent, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of his predecessor(s).  Each succeeding Liquidating Trustee may in like manner resign and another may in like manner be appointed in his place.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 13.1   Conditions Precedent to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 13.4 of the Plan:

(a)      The Bankruptcy Court shall have approved a Disclosure Statement Order that is a Final Order in a form and substance acceptable to the Debtors and the Committees.

90441977.7

-40-

(b)     The Confirmation Order shall be in form and substance to the Debtors and the Committees.

**13.2     Conditions Precedent to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.4 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Committees.

(b)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(c)     The Debtors shall have established, or made provisions with the proposed Liquidating Trustee to establish, the Reserves required under the Plan.

(d)     There shall not be in effect on the Effective Date any (i) order entered by any court of competent jurisdiction, (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity, or (iii) applicable law in effect staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

(e)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

(f)     All conditions to the consummation of the transactions contemplated by the Plan shall have been satisfied or waived.

(g)     The Debtors shall have filed on the docket of the Bankruptcy Court a Notice of Effective Date.

**13.3     Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.4     Waiver of Conditions**

Each of the conditions set forth in Sections 13.1 and 13.2 of the Plan, other than 13.1 (b) and 13.2 (a) may be waived in whole or in part by written consent of the Debtors and the Committees.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

90441977.7

### 13.5     Revocation, Withdrawal, Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file any subsequent plan of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIV
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 14.1     Compromise and Settlement

Except as provided in Section 14.2, it is not the intent of the Debtors that confirmation of the Plan shall, in any manner, alter or amend any settlement and compromise between the Debtors and any Person that has been approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent that there is any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Liquidating Trustee, as applicable, may compromise and settle Claims against the Debtors and claims that they have against other Persons.  The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date.

After the Effective Date, the Liquidating Trustee may compromise and settle any Claims against the Debtors or the Liquidating Trust and claims he or she may have against other Persons without approval from the Bankruptcy Court.

### 14.2     Satisfaction of Claims

The rights afforded in the Plan and the payment of Claims and Interests herein shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, Assets, properties, or interests in property.

Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, settled, discharged, and released in full.  Neither Purchaser, nor any of its successors or assigns, including any Assets, properties or interests of

90441977.7

Debtors and its successors and assigns, shall be responsible for any pre-Closing Date obligations of the Debtors, except those expressly assumed by Purchaser.

Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors, the Liquidating Trustee, their respective successors or assigns, or their Estates, Assets, properties, or interests in property, any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

Additionally, under the Plan, the transfer of the Purchased Assets to the Purchaser, the vesting of the Hercules Common Stock in the Reorganized Debtors and the transfer of the Liquidating Trust Assets to the Liquidating Trust shall be free and clear of any and all liens, claims, encumbrances and interests, with any such liens, claims, encumbrances and interests attaching to the proceeds of those assets in the same priority as they existed with respect to those assets.

**14.3    Exculpation and Limitation of Liability**

Notwithstanding any other provision of the Plan to the contrary, no holder of a Claim or Interest, no Entities who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of any of the foregoing, shall have any cause of action or right of action, whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtors (including their past and present directors, officers and employees but only to the extent they served in such capacity after the Spin-off Date), the Reorganized Debtors (including their directors, officers and employees), the Liquidating Trust, the Liquidating Trustee, legal, financial or restructuring advisors of the Debtors, the Reorganized Debtors and the Liquidating Trustee, their respective successors or assigns, or their Estates, assets, properties, or interests in property, for any act or omission in connection with, relating to, or arising out of, these Chapter 11 Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Debtors, the Plan or the property sold pursuant to the APA or to be distributed under the Plan.

**14.4    Good Faith**

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**14.5    Discharge of Liabilities**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors (including their past and present directors, officers and employees but only to the extent they served in such capacity after the Spin-off Date), the Debtors' Estates, and the Liquidating Trustee and their respective successors or assigns, legal, financial or restructuring advisors, and their assets, properties, or interests in property shall be discharged from all Claims and Causes of

90441977.7

Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Interests shall be precluded from asserting against the Debtors, the Liquidating Trustee, and their respective successors or assigns, or their Estates, assets, properties, or interests in property, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date for any act or omission in connection with, relating to, or arising out of, these Chapter 11 Cases, the pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Debtors, the Plan or the property sold pursuant to the APA or to be distributed under the Plan.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE DEBTORS (INCLUDING THEIR PAST AND PRESENT DIRECTORS, OFFICERS AND EMPLOYEES BUT ONLY TO THE EXTENT THEY SERVED IN SUCH CAPACITY AFTER THE SPIN-OFF DATE), THE LIQUIDATING TRUSTEE, THE LEGAL, FINANCIAL AND RESTRUCTURING ADVISORS TO THE DEBTORS AND THE LIQUIDATING TRUSTEE AND THEIR RESPECTIVE SUCCESSORS OR ASSIGNS, OR THEIR ESTATES, ASSETS, PROPERTIES, OR INTERESTS IN PROPERTY, SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE, OR IN PART, ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE DEBTORS, THE PLAN OR THE PROPERTY SOLD PURSUANT TO THE APA OR TO BE DISTRIBUTED UNDER THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE LIQUIDATING TRUST OR THE PURCHASER OR THEIR RESPECTIVE SUCCESSORS OR ASSIGNS, OR THEIR ESTATES, ASSETS, PROPERTIES, OR INTERESTS IN PROPERTY.

### 14.6    Permanent Injunction

Except as otherwise provided in the Plan or prior orders of the Bankruptcy Court, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Purchaser, the Liquidating Trust or each of their respective successors or assigns, or their Estates, assets, properties, or interests in property, on account of any such Claims or Interests:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding to enforce such Claim; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order regarding such Claim; (c) creating, perfecting or enforcing any lien or encumbrance relating to such Claim; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors based on such Claim; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with

the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan or under the APA.

### 14.7    Releases by the Debtors and their Estates

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the transactions contemplated by the Plan, on and after the Effective Date, the Debtors, and their Estates, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of the Released Parties from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, and their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or their respective Affiliates or Estates ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, against any of the Released Parties arising from or relating to, directly or indirectly from, in whole or in part, the Debtors, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any of the Debtors and any of the Released Parties (and the acts or omissions of any other Released Party in connection therewith), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, including the APA, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date. Notwithstanding the foregoing, nothing in this Section 14.7 shall release any of the Released Parties or other Person included within this release from liability for (i) any act or omission by such of the Released Parties or other individual that is found by a court of law in a final, non-appealable judgment to constitute fraud, willful misconduct, or gross negligence, or (ii) any obligation for any amounts owed by the Released Parties for loans made to them by the Debtors. Notwithstanding the foregoing, nothing in this Section 14.7 shall release the parties to the APA from any obligation under the APA that survived the Closing or limit the rights of the parties to the APA in any dispute arising out of the APA.

### 14.8    Release by Purchaser

In consideration of the release set forth in Section 14.7 above, on and after the Effective Date, Purchaser, on behalf of itself and its subsidiaries and affiliates shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys and other representatives; (iii) legal, financial and restructuring advisors of the Debtors; and (iv)

the Liquidating Trust, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative Claims asserted or assertable against the Debtors, their Estates, and the Liquidating Trust whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that Purchaser, its subsidiaries and affiliates or any Entity claiming by or through Purchaser or its subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, including any claims under the APA.

### 14.9    Releases by Holders of Claims and Interests

**Except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, in consideration of the Distributions made under the Plan, holders of Claims and Interests, for themselves and on behalf of their respective successors and assigns, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors and their respective successors or assigns, and their Estates, Assets, properties, or interests in property, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, existing or hereafter arising, in law, equity or otherwise, that such Entity ever had, now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert (whether individually or collectively or directly or derivatively), against any of the Debtors and their respective successors or assigns, or their Estates, assets, properties, or interests in property, arising from or relating to, directly or indirectly, in whole or in part, the Debtors, the Debtors' Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements among any two or more of any of the Debtors and their respective successors or assigns, or their Estates, assets, properties, or interests in property (and the acts or omissions of any of the Debtors and their respective successors or assigns, or their Estates, assets, properties, or interests in property, in connection therewith), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence, including the management and operation of the Debtors, taking place on or before the Effective Date.**

### 14.10   Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtors or the Liquidating Trustee may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on

account of such Allowed Claim (before such distribution is made), any Claims, rights, and Causes of Action of any nature that the Reorganized Debtors or the Liquidating Trustee, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure of the Reorganized Debtors or the Liquidating Trustee to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtors or of the Liquidating Trustee of any such Claims, rights, and Causes of Action that the Reorganized Debtors or the Liquidating Trust may possess against such holder.  In no event shall any holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action, except as set forth in the Plan, of the Reorganized Debtors or the Liquidating Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code.

### 14.11   Recoupment

In no event shall any holder of a Claim or Interest be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Reorganized Debtors or the Liquidating Trust, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any asserted right of recoupment.

### 14.12   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created by the Debtors pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any Assets of the Debtors that are transferred to Purchaser or the Liquidating Trust shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall attach to the Sale Proceeds.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtors' property or assets are encumbered by mortgages, security interests or Liens of any nature for which any holder of such mortgages, security interests or Liens does not have an Allowed Claim against such Debtor, such mortgages, security interests or Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Debtors or the Liquidating Trustee, as applicable, in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature.  If such holder fails to execute such documents, the Debtors or the Liquidating Trustee, as applicable, is authorized to execute such documents on behalf of such

90441977.7

holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

### 14.13   Satisfaction of Subordination Rights

All Claims against the Debtors and all rights and Claims between or among holders of Claims relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights (if any), shall be deemed satisfied by the Distributions under the Plan to holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date.

Distributions to the holders of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holders of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

### 14.14   Rights of Defendants in Avoidance Actions

Notwithstanding any other provision in the Plan, if a defendant in an Avoidance Action brought by the Debtors, Reorganized Debtors or the Liquidating Trustee is ordered to pay the Debtors' Estates or the Liquidating Trust on account of that Cause of Action and that defendant, thereafter, pays the amount ordered, then that defendant shall be entitled to a Claim for the amount so paid, unless the Bankruptcy Court orders otherwise.  Any Claim allowed under this section shall be added to the Claims Register and shall be entitled to treatment and distribution under the Plan as a Class 4 Allowed General Unsecured Claim.

### ARTICLE XV
### RETENTION OF JURISDICTION

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(b)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Disclosure Statement and Plan and all contracts, instruments, and other agreements executed in connection with the Disclosure Statement and Plan;

(c)     hear and determine any disputes regarding the interpretation or implementation or breach of the APA;

(d)     hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e)     issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(f)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(g)     hear and determine any matters arising in connection with or relating to the Disclosure Statement, the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(h)     enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Chapter 11 Cases;

(i)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(j)     hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtors and to enter or enforce any order requiring the filing of any such Claim before a particular date;

(k)     hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced after the Petition Date by the Debtors in which the Reorganized Debtors or the Liquidating Trustee have substituted in as a party including proceedings with respect to the rights and claims of the Debtors to recover property in Avoidance Actions, or the prosecution of any Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

(l)     hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced by the Reorganized Debtors or the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtors to recover property in Avoidance Actions, or the prosecution of any Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

(m)     hear and determine all applications, Claims, adversary proceedings and contested matters pending as of the Effective Date; and

(n)     enter a final decree closing the jointly-administered Chapter 11 Cases.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1     Amendments and Modification

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.

After the Confirmation Date and prior to "substantial consummation" of the Plan, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 16.2     Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or ACH transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

### 16.3     Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Liquidating Trust, and all other parties-in-interest in these Chapter 11 Cases.

### 16.4     Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

### 16.5     Dissolution of Committees

On the Effective Date, any and all Committees appointed under the Bankruptcy Code, shall be dissolved and the members of any such Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

### 16.6    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall be deemed an admission by the Debtors with respect to any matter set forth in the Plan, including, without limitation, liability on any Claim.

### 16.7    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Disclosure Statement and Plan and any agreements, documents, and instruments executed in connection with the Disclosure Statement and Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) provided, however, that corporate governance matters relating to the Debtors not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

### 16.8    Subordination

The right of the Debtors to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim or subordinated Interest at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Distributions shall be made on account of a Subordinated Claim or Subordinated Interest.

### 16.9    Plan Supplements

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplements.  Holders of Claims or Interests may obtain a copy of the Plan Supplements upon written request to counsel for the Debtors or may view Plan Supplements online any time through the Bankruptcy Court's PACER System at *www.txs.uscourts.gov* or at the website of the Debtors' Claims, Notice and Balloting Agent, Kurtzman Carson Consultants, LLC, *www.kccllc.net/seahawk.*.  The Debtors may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

### 16.10    Notices

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Seahawk Drilling, Inc.
c/o _____, Liquidating Trustee of the Seahawk Liquidating Trust
[ADDRESS]

90441977.7

If to the Liquidating Trustee:

_____, Liquidating Trustee of the Seahawk Liquidating Trust
[ADDRESS]
[CONTACT INFO]

with a copy to:

Fulbright & Jaworski L.L.P.
Attn:  Berry D. Spears, Esq.
     Johnathan C. Bolton, Esq.
1301 McKinney, Suite 5100
Houston, Texas 77010
Facsimile:  (713) 651-5151

### 16.11   Severability of Plan Provisions

If, before the Confirmation Order, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

### 16.12   U.S. Trustee Quarterly Reports

After the Confirmation Date, the Liquidating Trustee will file with the Bankruptcy Court, and serve on the U.S. Trustee, quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidating Trustee will pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. §1930(a)(6).

### 16.13   Default under the Plan

Except as otherwise provided for in this Plan, in the event of an alleged default by the Debtors under the Plan, any party alleging such default shall provide written notice of the default (the "Plan Default Notice") to the Debtors and Debtors' counsel at the addresses set forth in Section 16.10 of the Plan.  The Debtors shall have thirty (30) days from receipt of the Default Notice to cure any actual default that may have occurred.

The Debtors reserve the right to dispute that an alleged default has occurred and shall notify the party alleging such default that the Debtors contend no default has occurred, with such notice to be sent within the thirty (30) day time period following receipt of the Default Notice. In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default.

90441977.7

In the event the Debtors fail to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under applicable law.

Dated:  May 20, 2011

Respectfully Submitted,

**SEAHAWK DRILLING, INC. AND ITS SUBSIDIARIES THAT ARE ALSO DEBTORS AND DEBTORS-IN-POSSESSION IN THE CHAPTER 11 CASES**

By:    /s/ James R. Easter
      James R. Easter
      President and Chief Executive Officer

90441977.7

**Plan Schedule I:        Retained Causes of Action**

(to be provided)

**Plan Schedule II:**

**List of Assumed and Assigned Executory Contracts and Unexpired Leases**

(to be provided)

**Plan Schedule III:    Liquidating Trust Agreement**

(to be provided)

**Plan Schedule IV:**

**List of Litigation and Other Contingent Unsecured Claims**

(to be provided)

90441977.7