UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Seahawk Drilling, Inc., *et al*., | § | Case No. 11-20089-RSS |
| | § | |
| Debtors. | § | Jointly Administered |

**DEBTORS' MOTION FOR (i) ORDER AUTHORIZING REJECTION OF UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY WITH PETRO REAL ESTATE RENTALS, L.L.C. NUNC PRO TUNC, (ii) DETERMINATION THAT PETRO VIOLATED THE AUTOMATIC STAY BY REPOSSESSING AND RELETTING THE PREMISES POST-PETITION, AND (iii) DETERMINATION THAT NO AMOUNTS ARE DUE FROM DEBTORS IN CONNECTION WITH SUCH REJECTION**

**NOTICE UNDER COMPLEX CASE ORDER**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 21, 2011, AT 10:00 A.M., AT THE UNITED STATES BANKRUPTCY COURT, 1133 NORTH SHORELINE, 2ND FLOOR, CORPUS CHRISTI, TEXAS 78401. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Seahawk Drilling, Inc. ("**Seahawk**") and its above-captioned affiliated debtors (collectively, the "**Debtors**") file this Motion For (i) Order Authorizing Rejection of Unexpired

Lease of Nonresidential Real Property with Petro Real Estate Rentals, L.L.C. Nunc Pro Tunc, (ii) Determination that Petro Violated the Automatic Stay By Repossessing and Reletting the Premises Post-Petition and (iii) Determination that No Amounts are Due From Debtors in Connection with Such Rejection (the "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND PROCEDURAL STATUS

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of Debtors' chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. On February 11, 2011 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). Pursuant to this Court's Order Authorizing Joint Administration Pursuant to Federal Rule of Bankruptcy Procedure 1015, the Debtors' cases are being jointly administered. *See* Dkt. No. 38.

3. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## BACKGROUND FACTS

A. **The Broussard Lease.**

4. On or about October 23, 2009, Seahawk executed a commercial lease with Petro Real Estate Rentals, L.L.C. ("**Petro**"), a limited liability company organized under the laws of the State of Louisiana, domiciled at 105 Lafferty Drive, Broussard, LA 70518, with its principal place of business at 1338 Petroleum Parkway, Broussard, Louisiana 70518 (the "**Seahawk Broussard Lease**"). A true and correct copy of the Seahawk Broussard Lease is attached hereto as **Exhibit A**.

5.      Under the Seahawk Broussard Lease, Seahawk leased a certain real property located in St. Martin's Parish, Louisiana and certain improvements thereon, including a seven thousand five hundred (7,500) square foot warehouse (the "**Existing Warehouse**"), one thousand five hundred (1,500) square feet of covered area, and an approximately one acre yard (the "**Yard**"), together with rights of ingess and egress.  The Seahawk Broussard Lease also provided for additional improvements consisting of an additional warehouse and office building (the "**New Warehouse and Office Building**") with approximately four thousand (4,000) square feet of warehouse space for storage and equipment and approximately three thousand (3,000) square feet of finished office space  The Existing Warehouse, the Yard and the New Warehouse and Office Building shall collectively be referred to as the  "**Leased Premises.**"

6.      As of the Phase 3 delivery date of May 1, 2010, Seahawk began paying rent of $10,600 per month for the Leased Premises.  The Debtors have complied with all terms of the Seahawk Broussard Lease, including payment of monthly rent through May 2011.  A true and correct copy of the canceled check is attached hereto as **Exhibit B.**  Article 2 of the Seahawk Broussard Lease provides for an initial term beginning on the Phase 1 Delivery Date and ending on the day immediately preceding the fifth anniversary of the Phase 3 Delivery Date, which date was on or about May 1, 2010.

**B.      The Sale of the Debtors' Assets to Hercules**.

7.      On February 11, 2011, the Debtors entered into an Asset Purchase Agreement (the "**APA**") with Hercules Offshore, Inc. ("**Hercules**").[1]  The executed APA contemplated the acquisition by Hercules or one or more of its subsidiaries ("**Purchasers**") of substantially all of the assets and jackup rigs of the Debtors (the "**Purchased Assets**") through a sale pursuant to

---

[1] The summary description of the APA set forth herein is qualified in its entirety by reference to the terms of the APA itself.

section 363 of the Bankruptcy Code (the "**Transaction**").  On April 27, 2011, the Debtors closed the Transaction with the Purchasers.  The Seahawk Broussard Lease with Petro was not assumed and assigned or otherwise transferred to the Purchasers in the Transaction.  Further, on or about May 10, 2010, pursuant to the APA and on behalf of the Debtors, Hercules paid by check number 42698 the amount of $6924.99 for three (3) prepetition invoices due to Petro for taxes and assessments, common area maintenance and repair in connection with the Seahawk Broussard Lease.  True and correct copies of these three invoices are attached hereto as **Exhibit C**.

C.   **Petro's Breach of the Seahawk Lease Agreement.**

8.   On information and belief, after the closing of the Transaction, Petro entered into a new lease agreement with Hercules for all or a portion of the same Leased Premises pursuant to a lease agreement, effective May 1, 2011 (the **"Hercules Broussard Lease"**).  A true and correct copy of the Hercules Broussard Lease is attached hereto as **Exhibit D**.

9.   The Hercules Broussard Lease provides for a base rent in the amount of $15,900 per calendar month for six (6) months from May 1 through October 31, 2011 which term may be extended on 90 days written notice to the Landlord prior to expiration of the initial term.  The monthly lease payments under the Hercules Broussard Lease are over $5,000 more per month than the monthly lease payments under the Seahawk Broussard Lease.

10.   By entering into the Hercules Broussard Lease during the term of the existing Seahawk Broussard Lease before it has been assumed or rejected by the Debtors, Petro materially breached the terms of the Seahawk Broussard Lease.  The Debtors notified Petro of its breach of the terms of the Seahawk Broussard Lease by letter dated May 27, 2011 and therein exercised their rights under article 34 of the Seahawk Broussard Lease to terminate the lease based on Petro's material breach.

**RELIEF REQUESTED**

11. By this Motion, the Debtors request entry of an order, pursuant to section 365(a) of the Bankruptcy Code and Bankruptcy Rule 6007, authorizing the rejection of the Seahawk Broussard Lease *nunc pro tunc* to the date of this Motion. Based on Petro's breach of the Seahawk Broussard Lease and its reletting of a portion of the Leased Premises, the Seahawk Broussard Lease no longer has any value to the Debtors. Accordingly, the Debtors seek to reject the Seahawk Broussard Lease under section 365(a) of the Bankruptcy Code.

12. The Debtors also request that the Court find that Petro's prior breach of the Seahawk Broussard Lease negates any claims of Petro arising from the Debtors' rejection of the Seahawk Broussard Lease under applicable law. The Debtors specifically reserve the right to seek monetary damages and reasonable attorney's fees from Petro based on its breach of the Seahawk Broussard Lease.

**BASIS FOR RELIEF**

**A.    Petro's Actions Violated the Automatic Stay.**

13. The Seahawk Broussard Lease is a valuable asset of the estate. *See In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2nd Cir. 1988) ("The courts are in agreement that unexpired leasehold interests, including subleases, constitute property of the bankrupt estate."). Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.*; 11 U.S.C. § 362(a)(3). The Seahawk Broussard Lease has not been assumed or rejected. By exercising control over the premises and reletting the premises prior to rejection of the Seahawk Broussard Lease, Petro has violated the automatic stay provisions of the Bankruptcy Code.

**B.      Petro's Breach of the Seahawk Broussard Lease Entitled the Debtors to Terminate the Lease.**

14.     The Seahawk Broussard Lease provides, in pertinent part, that:

> If the Lessor violates or fails to comply with any of the covenants, conditions and obligations of this Lease and said violation continues for thirty (30) days after written notice thereof is given by Lessee to Lessor, provided that if such violation or failure cannot be remedied within thirty (30) days with the exercise of reasonable diligence, then Lessor will have such longer period as necessary to cure the violation provided that Lessor commences the cure within thirty (30) days after written notice by Lessee, and diligently continues the cure thereafter to completion, then Lessee will have the right at its option, (x) to terminate this Lease by written notice to Lessor….

*See* Seahawk Broussard Lease, art. 34.1.

15.     The Debtors sent written notice to Petro on or about May 26, 2011 exercising their right to terminate the lease based on Petro's material breach. Since Petro has already leased all or a portion of the Leased Premises to Hercules, the cure provision is futile.

**C.      Rejection of the Broussard Lease is an Exercise of the Debtors' Sound Business Judgment.**

16.     Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *See also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *Cameron v. Pfaff Plumbing & Heating, Inc.*, 966 F.2d 414, 415 (8th Cir. 1992). "[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000) (citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984)) (alteration in original); *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) (Section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which

have not been completely performed."); *In re Mirant Corp.*, 318 B.R. 100, 104 (N.D. Tex. 2004) (same).

17. The Debtors have terminated the Seahawk Broussard Lease by letter dated May 26, 2011 and, out of an abundance of caution, seek to reject the Seahawk Broussard Lease *nunc pro tunc* to the date of this Motion, in order to avoid having to pay rent for June 2011 and thereafter.

18. Courts evaluate a debtor's proposed assumption or rejection of an executory contract or unexpired lease under the business judgment standard. *See Group of Institutional Investors v. Chicago, Milwaukee St. Paul & Pacific RR Co.,* 318 U.S. 523, 550 (1943) ("the question . . . is one of business judgment"); *Official Comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elect. Power Co.(In re Mirant),* 378 F.3d 511, 524 n. 5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate."); *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F. 2d 1303, 1309 (5th Cir. 1985) ("court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code"); *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to reject a given contract should be left to trustee's (or debtor-in-possession's) sound business judgment."); *In re Pisces Energy, LLC*, 2010 WL 5141272, at *1 (Bankr. S.D. Tex. Jan. 6, 2010) (approving debtor's rejection of contracts under the business judgment standard).

19. The Debtors' rejection of the Seahawk Broussard Lease is consistent with the Debtors' business judgment. Due to Petro's actions, the Debtors are currently receiving no benefits under the Seahawk Broussard Lease, the Debtors cannot seek to assume and assign the

Seahawk Broussard Lease to a third party, and the Debtors' obligations under the lease constitute unnecessary losses to their estates. Accordingly, rejection of the Broussard Lease *nunc pro tunc* to the date of this Motion is in the best interest of all parties-in-interest in these chapter 11 cases and will benefit the Debtors' bankruptcy estates.

20.     Bankruptcy courts have authority to order retroactive rejection of a lease. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bank. N.D. Tex. 2003) (authorizing retroactive rejection to the later of the date of the rejection motion or the date the premises were vacated); *In re Amber's Stores, Inc.*, 193 B.R. 819, 826-27 (Bankr. N. D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving . . . rejection of a non-residential real property lease retroactively to an earlier date"); *In re Romacorp, Inc.*, 2006 WL 6544088, at *4 (Bankr. N.D. Tex. Feb. 2, 2006) (citing opinions from multiple jurisdictions approving retroactive rejection of leases). Accordingly, the Debtors respectfully request this Court to deem the rejection of the Seahawk Broussard Lease as of the date of this Motion.

**D.     Petro's Prior Breach of the Seahawk Broussard Lease Negates Any Claim For Rejection Damages.**

21.     Once a Debtor rejects an unexpired lease, the Lessor's recovery against the estate will be restricted to a claim for breach of contract damages under applicable state law, which claim is subject to the cap imposed by § 502(b)(6) of the Bankruptcy Code. *In re Mr. Gatti's, Inc.*, 162 B.R. 1004, 1013 (Bankr. W.D. Tex. 1994). The Bankruptcy Code does not address how to calculate a lessor's damages after rejection of an unexpired lease; consequently, the Court must look to state law to determine how to calculate breach of contract damages. *Unsecured Creditors' Committee of Highland Superstores, Inc. v. Strobeck Real Estate, Inc.* (*In re Highland Superstores, Inc.*), 154 F.3d 573, 579 (6th Cir. 1998); *see also Butner v. United States*, 440 U.S. 48, 55 (1979) (explaining that state law should be applied in bankruptcy proceedings to the

extent that it does not conflict with the Bankruptcy Code). This is because Congress has decided to leave "the determination of property rights in the assets of the bankruptcy estate to state law." *Id* at 59.

22. The Seahawk Brousssard Lease is governed by Louisiana law. Under Louisiana law, a lessor whose breach of the lease forms the basis of cancellation of the lease cannot recover rent for the unexpired terms of the lease. *Associates Commercial Corp. v. Bayou Management, Inc.*, 426 So.2d 672, 675 (La.App. 1st Cir. 1983). Accordingly, Petro is not entitled to any rent from the termination of the Seahawk Broussard Lease.

23. Assuming arguendo, a lessor is entitled to any such damages, it is black-letter law that, following rejection, a lessor has a duty to mitigate its damages, s*ee In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229, 231 (Bankr. D. N.D. 1992), and if the lessor has relet the premises at a higher rent, it generally will have no section 502(b)(6) claim. *See In re Timber Lodge Steakhouse, Inc.*, 377 B.R. 604 (Bankr. D. Minn. 2007)

24. In this case, despite knowledge of the Debtors' bankruptcy case, Petro did not wait until the Seahawk Broussard Lease was rejected and Petro did not file a motion with the Bankruptcy Court seeking an order compelling the Debtors to assume or reject the Seahawk Broussard Lease before confirmation of their chapter 11 plan. Instead, Petro exercised inappropriate self-help remedies in re-taking possession of the Leased Premises in violation of the automatic stay. 11 U.S.C. § 362(a)(3).

25. The undisputed fact is that Petro rented the property to Hercules, who now occupies the same property that is the subject of the Seahawk Broussard Lease. A surrender by operation of law arises from a condition of fact that is voluntarily assumed and that is incompatible with the existence of a landlord-tenant relationship. *See In re Timber Lodge*

*Steakhouse, Inc.*, 377 B.R. 604 (Bankr. D. Minn. 2007). Thus, if a landlord accepts a third party as a tenant in place of a prior lessee, in effect this constitutes an acceptance of the surrender of the leased property and a consequent termination of the prior lease by operation of law. *Id.*, (citing 25 Williston on Contracts § 66:86 (4th ed.)) By executing the Hercules Broussard Lease and accepting Hercules as a tenant, the Seahawk Broussard Lease has terminated by operation of law.

26. In the alternative, the Debtors have terminated the Seahawk Broussard Lease based on Petro's material breach of the contract. An executory contract or lease remains enforceable against the non-debtor party, even before a debtor has assumed or rejected it. *In re Feyline Presents, Inc.*, 81 B.R. 623 (Bankr. D. Colo. 1988). The Seahawk Broussard Lease was enforceable against Petro following the Debtors' chapter 11 filing.

27. As a result of the Debtors' termination of the Seahawk Broussard Lease, whether by operation of law or by the Debtors, the lease is no longer in force and effect and Petro is not entitled to any rejection damages as a result of the rejection of the Seahawk Broussard Lease.. Out of an abundance of caution, however, the Debtors' rejection of the Seahawk Broussard Lease will confirm that Petro has no claims that are enforceable against the Debtors' estates under the Seahawk Broussard Lease.

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that this Court enter its order (i) granting the relief requested herein; (ii) authorizing the Debtors to reject the Seahawk Broussard Lease *nunc pro tunc* to the date of this Motion; (iii) determining that Petro has no damages as a result of the Debtors' rejection of the Seahawk Broussard Lease; and (iv) providing other relief the Court deems just and equitable.

Dated:  May 27, 2011

        Respectfully submitted,

        **FULBRIGHT & JAWORSKI L.L.P.**

        By:  */s/ Johnathan C. Bolton*
           Berry D. Spears
           State Bar No. 18893300
           Johnathan C. Bolton
           State Bar No. 24025260
           Susan H. Lawhon
           State Bar No. 12036520
        1301 McKinney, Suite 5100
        Houston, Texas 77010-3095
        Telephone: (713) 651-5151
        Facsimile:  (713) 651-5246
        bspears@fulbright.com
        jbolton@fulbright.com

        and

        **JORDAN, HYDEN, WOMBLE,**
        **CULBRETH & HOLZER P.C.**
        Shelby A. Jordan
        State Bar No. 11016700
        Nathaniel Peter Holzer
        State Bar No. 00793971
        500 N. Shoreline Blvd., Suite 900
        Corpus Christi, Texas 78401-0341
        Telephone: (361) 653-6624
        Facsimile:  (361) 888-5555
        sjordan@jhwclaw.com
        pholzer@jhwclaw.com

        **ATTORNEYS FOR THE DEBTORS AND**
        **THE DEBTORS-IN-POSSESSION**