

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**ENTERED**
**03/30/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| SEAHAWK DRILLING, INC., *et al* | § | CASE NO: 11-20089 |
| | § | |
| Debtor(s) | § | CHAPTER 11 |

### MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT REGARDING DEBTORS' OBJECTION SEEKING DISALLOWANCE OF THE PROOF OF CLAIM FILED BY ARENA OFFSHORE, L.P.
**[Order relates to docket nos. 1601 and 1646]**

On this day came on for consideration Seahawk Liquidating Trust's (the "Trust") Motion for Summary Judgment Regarding Debtors' Objection Seeking Disallowance of the Proof of Claim Filed by Arena Offshore, L.P. seeking dismissal of the contractual indemnity claim filed by Plaintiffs, Arena Offshore, LP ("Arena") and its insurer, St. Paul Surplus Lines Insurance Company ("St. Paul") (collectively, the "Plaintiffs"), and the Cross Motion for Summary Judgment filed by the Plaintiffs. The Court, having considered the summary judgment evidence and having heard the arguments of counsel, finds that there are no genuine issues of material fact and the indemnity agreement upon which Plaintiffs base their claim is void and unenforceable pursuant to the Louisiana Oilfield Indemnity Act, La. R.S. 9:2780. Accordingly, summary judgment is proper pursuant to Fed. R. Bankr. P 7056, as made applicable by Fed. R. Bankr. P. 9014.

### I. BACKGROUND

1. The underlying litigation that gave rise to this contractual indemnity claim involved Joseph Castille, an employee of Pride Offshore, Inc. ("Pride") (predecessor to Seahawk Drilling, Inc.). Mr. Castille filed suit against Kevin Gros Offshore, LLC ("Kevin Gros Offshore") in the

United States District Court for the Western District of Louisiana on January 29, 2008, seeking to recover for injuries he allegedly sustained on February 19, 2007, on the deck of M/V MADD HUNTER, a vessel chartered by Arena Offshore, LP ("Arena") and alleged to be owned and operated by Kevin Gros Offshore. The incident in question occurred while Mr. Castille was working aboard the vessel while it was positioned next to an Arena-owned fixed platform located off the coast of Louisiana on the Outer Continental Shelf.

2. At the time of Mr. Castille's accident, Pride was performing workover operations on Arena's fixed platform pursuant to an Offshore Daywork Drilling Contract dated June, 29, 2006. Pride did not provide the services of a vessel in connection with its work for Arena. The parties have stipulated that Pride did not have operational control over the vessel on which Mr. Castille was injured. The parties have stipulated that the Pride/Arena contract is non-maritime in nature as it deals with platform services.

3. Following the accident, Kevin Gros demanded that Arena defend and indemnify it for Mr. Castille's claim based on the provisions of a Master Time Charter Agreement entered into between Arena and Kevin Gros Consulting on June 7, 2004. Arena agreed to defend and indemnify Kevin Gros pursuant to the charter agreement. There is no dispute that the charter agreement is a maritime contract.

4. After agreeing to indemnify Kevin Gros, Arena entered into a settlement with Joseph Castille and paid him $850,000 in exchange for dismissal of his lawsuit. Arena thereafter demanded that Pride indemnify it for the $850,000 settlement figure plus Arena's attorney fees pursuant to the aforesaid Pride/Arena contract. Specifically, the Pride/Arena contract contains an indemnity provision which purports to require Pride to indemnify Arena for claims made by Pride employees "without regard to the cause or causes of any claim, including, without

limitation … the negligence … of the indemnified party." As discussed below, Louisiana law governs Plaintiffs' contract claim and the Louisiana Oilfield Indemnity Act operates in this instance to void the subject indemnity provision.

## II. DISCUSSION

### A. Standard Governing Motions for Summary Judgment

5. An objection to a proof of claim is a contested matter pursuant to Fed. R. Bankr. P. 3007 and 9014. Fed. R. Bankr. P. 9014(c), provides that Fed. R. Bank. P. 7056 applies to contested matters. Fed. R. Bankr. P. 7056 incorporates by reference Fed. R. Civ. P. 56 regarding motions for summary judgment.

6. Pursuant to Fed. R. Civ. P. 56(c), made applicable to this contested matter pursuant to Fed. R. Bankr. P. 9014(c) and 7056, summary judgment is proper where are no genuine issues of material fact in dispute. *See, e.g., Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986); *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir. 2000). Conclusory allegations, unsubstantiated assertions, or a mere "scintilla of evidence" will not defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

7. Summary judgment is proper if the depositions, answers to interrogatories, admissions, and affidavits show there are no genuine issues about any material fact and the movant is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317 at 322; *Baton Rouge Oil & Chem Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment is appropriate when, after considering the pleading, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c); *Bulko v. Morgan Stanley DW, Inc.*, 450 F.3d 622, 624 (5th Cir. 2006). Federal Rule of Civil Procedure 56(e) provides in part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of the adversary party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."

8. The Statement of Uncontested Material Facts in Support of Motion for Summary Judgment and Memorandum in Support Regarding Debtors' Objection Seeking Disallowance of the Proof of Claim Filed by Arena Offshore L.P. (Claim No. 448) [Docket No. 1062], sets forth the uncontested material facts which support the entry of summary judgment against the Plaintiffs as a matter of law.

**B. The Outer Continental Shelf Lands Act**

9. The Outer Continental Shelf Lands Act ("OCSLA") is the principal law governing offshore oil and gas operations conducted on the "Outer Continental Shelf," or "OCS." 43 U.S.C. § 1331, *et seq*. Through OCSLA, the United States has laid claim to and exercised jurisdiction over those submerged lands located on the OCS. *Id*. The OCS includes those lands located beyond the limit of state jurisdiction, i.e., beyond three miles from the Louisiana coastline. *Id*. Fixed platforms erected on the OCS are considered extensions of the seabed for purposes of OCSLA's jurisdictional reach and they are essentially treated as artificial islands. *Id. at* § 1333(a)(2)(A). In this case, Plaintiffs have stipulated that jurisdiction exists under OCSLA. The undisputed facts show that this dispute arises out of a contract calling for platform services on Arena's fixed platform located off the coast of Louisiana on the OCS.

10. The importance of OCSLA being applicable in this case is that it provides a comprehensive choice-of-law scheme that dictates which body of law will govern OCS contract

and tort disputes. 43 U.S.C. § 1333(a)(2)(A).  Generally, the Act incorporates the law of the adjacent state as "surrogate" federal law.  *Id*. As discussed below, the OCSLA choice-of-law analysis requires application of Louisiana law to this contract dispute.  As further discussed below, the indemnity provision violates Louisiana's public policy and is void and unenforceable pursuant to the Louisiana Oilfield Indemnity Act.

**C. Louisiana law governs this dispute.**

11. In *Union Texas Petroleum Corp. v. PLT Engineering*, 895 F.2d 1043, 1047 (5th Cir. 1990), the Fifth Circuit Court of Appeals articulated the following three-part test to be used in determining whether adjacent state law will apply as surrogate federal law under OCSLA: (1) the controversy must involve a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) federal maritime law must not apply "of its own force"; and (3) the state law must not be inconsistent with federal law.

12. With regard to the first prong – OCSLA situs – the Fifth Circuit's recent decision in *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) provides guidance. In *Grand Isle*, the Fifth Circuit held that the location of the underlying personal injury does not determine whether the OCSLA situs requirement is satisfied in contractual indemnity disputes.  *Id*. Instead, the court held that a "focus-of-the-contract" approach should be applied. *Id*. This approach "looks to where the contract contemplates that most of the work will be performed."  *Id*. In this case, it is undisputed that the majority if not all of the work performed by Pride under the contract occurred on Arena's platform (a situs covered by OCSLA), not on a vessel. Thus, the OCSLA situs requirement is satisfied.  As the *Grand Isle* case instructs, the fact that the underlying personal injury giving rise to the contract dispute occurred on a vessel is of no moment.

13. The second prong of the "*PLT* test" – whether maritime law applies "of its own force" – is simply an analysis of whether the contract in question falls within admiralty jurisdiction. In this case, the parties have stipulated that the contract is non-maritime in nature. The principal obligation of the contract is the provision of services on a fixed platform relative to an oil and gas well. Courts have repeatedly held that such contracts pertaining to a fixed oil and gas platform are non-maritime in nature. *See, e.g.*, *Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir. 1988); *In re Broussard Bros, Inc.*, 2004 WL 1900519 (E.D. La. Aug. 20, 2004). Accordingly, maritime law does not apply of its own force.

14. The third prong of the *PLT* test is also satisfied in this case. The Fifth Circuit has held that this prong will be satisfied as long as the adjacent state law is not inconsistent with federal statutory law. *See, e.g.*, *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1130 (5th Cir. 1986). It is well settled that the Louisiana Oilfield Indemnity Act (discussed below) is not inconsistent with any federal statutory law. *Id.*

15. The Court therefore finds that Louisiana law will govern this dispute. *See, e.g.*, *Jackson v. Tenneco Oil*, 623 F.Supp. 1452, 1455 (E.D. La. 1985) ("Louisiana law governs a platform owner's right to seek contractual indemnity for injuries sustained by non-employees on fixed platforms on the outer continental shelf.").

**D. The indemnity agreement is void under Louisiana Law.**

16. The Louisiana Oilfield Anti-Indemnity Act ("LOIA") voids any provision in a contract that pertains to an oil and gas well that requires defense and/or indemnification for death or bodily injury on a "regardless of fault" basis, i.e., without regard to whether there is negligence or fault on the part of the indemnitee. La. R.S. 9:2780(A); *see also Roberts v. Energy Development Corp.,* 104 F.3d 782, 784 (5th Cir.1997) ("The LOIA therefore nullifies indemnity

agreements which protect the principal against its own fault at the expense of the contractor ...").

In this regard, the Act provides in pertinent part as follows:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

- - La. R.S. 9:2780(B)

17.  Arena argues that the indemnity agreement falls outside the LOIA prohibition because Kevin Gros was not an independent contractor directly responsible to Arena. To support its position, Arena alleges that its charter agreement was with C & G Boats, a boat broker who then hired Kevin Gros. Arena's position in this regard is not supported by the summary judgment evidence. Arena acknowledged that C & G Boats was acting as a boat broker. A broker is an intermediary whose job is to "bring parties together to bargain." *See, e.g.*, *Thomas v. Commissioner of Internal Revenue*, 254 F.2d 233, 236 (5th Cir. 1958). Under the law, brokers are treated as agents of both parties, rather than independent contractors. *See, e.g.*, LA. CODE CIV. PROC. ANN. art. 3000 (West 2011); *Buckhorn Partners, LLC v. Taylors Int'l Serv., Inc.*, 2010 WL 1285448, at *11 (W.D. La. 2010); *Turk v. Fame Modeling and Talent Agency, Inc.*, 652 So.2d 1043, 1045 (La. App. 4 Cir. 1995). It is fundamental that an agent acting for two principals binds those parties together. *Id.*; *see also* LA. CODE CIV. PROC. ANN. art. 3000 (West 2011). Thus, Arena's contention that there was "no direct contractual relationship" or no "direct responsibility" between Arena and Kevin Gros is without merit as a matter of law. The summary judgment evidence demonstrates that Kevin Gros was directly responsible to Arena at the time of

the accident. Arena cannot circumvent the LOIA by hiding behind its agent broker. To sanction the legal fiction that Arena is attempting to create would have the effect of rendering the LOIA meaningless.

18. As noted above, the indemnity provision invoked by Arena requires that its contractor, Pride, defend and indemnify it "regardless of fault." This provision falls squarely within the class of agreements prohibited by the LOIA. *Id*.; *see also Durant v. Chevron U.S.A., Inc*., 594 F.Supp. 527, 529 (E.D. La. 1984) (noting that agreements between parties to contracts affecting the energy industry are absolutely void when they provide for indemnity against the indemnitee's sole or concurrent fault). The indemnity provision is void in its entirety, regardless of whether Seahawk is at fault. *See, e.g., Meloy v. Conoco, Inc.,* 504 So.2d 833, 836-37 (La. 1987) (rejecting the argument that the LOIA allows indemnification for the proportionate fault of the indemnitor and holding that the LOIA "totally" and "completely" voids prohibited indemnity clauses). Accordingly, the provision is void and unenforceable as a matter of law.

## CONCLUSION

For the reasons set forth above, the Court finds that Seahawk's Motion for Summary Judgment should be granted, disallowing all of Plaintiffs' claims and Plaintiffs' Cross Motion for Summary Judgment should be denied.

**IT IS SO ORDERED.**

SIGNED 03/30/2012.

_____
Richard S. Schmidt
United States Bankruptcy Judge